*FILED*

Page 2

07 DEC 28 PM 4:13

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: ___

## MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District Southern District of California |
|---|---|
| **Name** (under which you were convicted):<br>Hilario Guzman-Gonzalez | **Docket or Case No.:**<br>06CR2557-001JM |
| **Place of Confinement:**<br>FCI Florence, P.O. Box 6000,Florence,CO.81226 | **Prisoner No.:**<br>00190-298 |
| UNITED STATES OF AMERICA | **Movant** (include name under which you were convicted) |
| Plaintiff/Respondent      v. | Hilario Guzman-Gonzalez Movant/Petitioner |

### MOTION    '07 CV 2431 JM

1. (a) Name and location of court that entered the judgment of conviction you are challenging: _____
   U.S.D.C. for the Southern District of California
   880 Front Street
   San Diego,CA. 92101      (Honorable Jeffrey T. Miller)
   (b) Criminal docket or case number (if you know): __06CR2557-001JM__

2. (a) Date of the judgment of conviction (if you know): __March 9, 2007__

   (b) Date of sentencing: __March 9, 2007__

3. Length of sentence: __60 months__

4. Nature of crime (all counts): __21 U.S.C. §841 (Marijuana)__

   _____
   _____
   _____
   _____
   _____

5. (a) What was your plea? (Check one)

   (1) Not guilty ☐      (2) Guilty ☒      (3) Nolo contendere (no contest) ☐

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to? _____
   _____N/A_____
   _____
   _____
   _____

6. If you went to trial, what kind of trial did you have? (Check one)    Jury ☐      Judge only ☐

7.  Did you testify at a pretrial hearing, trial, or post-trial hearing?     Yes ☐     No ☒

8.  Did you appeal from the judgment of conviction?     Yes ☐     No ☒

9.  If you did appeal, answer the following:

(a) Name of court: _____ N/A _____

(b) Docket or case number (if you know): _____ N/A _____

(c) Result: _____ N/A _____

(d) Date of result (if you know): _____ N/A _____

(e) Citation to the case (if you know): _____ N/A _____

(f) Grounds raised: _____ N/A _____

_____

_____

_____

_____

_____

_____

(g) Did you file a petition for certiorari in the United States Supreme Court?     Yes ☐     No ☒

If "Yes," answer the following:

(1) Docket or case number (if you know): _____ N/A _____

(2) Result: _____ N/A _____

_____

(3) Date of result (if you know): _____ N/A _____

(4) Citation to the case (if you know): _____ N/A _____

(5) Grounds raised: _____ N/A _____

_____

_____

_____

_____

_____

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications concerning this judgment of conviction in any court?

Yes ☐     No ☒

11. If your answer to Question 10 was "Yes," give the following information:

(a) (1) Name of court: _____ N/A _____

(2) Docket or case number (if you know): _____ N/A _____

(3) Date of filing (if you know): _____ N/A _____

(4) Nature of the proceeding: ___N/A_____

(5) Grounds raised: _____N/A_____

_____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?    Yes ☐  No ☒

(7) Result: __N/A_____

(8) Date of result (if you know): _____N/A_____

(b) If you filed any second motion, petition, or application, give the same information:

   (1) Name of court: ____N/A_____

   (2) Docket or case number (if you know): _____N/A_____

   (3) Date of filing (if you know): __N/A_____

   (4) Nature of the proceeding: ____N/A_____

   (5) Grounds raised: _____N/A_____

_____

_____

_____

_____

_____

_____

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?    Yes ☐  No ☒

(7) Result: _____N/A_____

(8) Date of result (if you know): _____N/A_____

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

   (1) First petition:    Yes ☐  No ☒

   (2) Second petition:    Yes ☐  No ☒

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not: <u>My attorney was unaware of these issues and thus ineffective for failing to raise them at an earlier stage.</u>

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the <u>facts</u> supporting each ground.

**GROUND ONE:** <u>(See below)</u>

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.): <u>Whether Public Law 80-772, Act of June 25, 1948, ch.645, Section 1, 62 Stat. 683 et seq, is unconstitutional and void because H.R.3190 never passed both Houses as required by Article I, Section 7, Clause 2.</u>

<u>(See attached Suporting Brief)</u>

(b) Direct Appeal of Ground One:

(1) If you appealed from the judgment of conviction, did you raise this issue?
Yes ☐    No ☒

(2) If you did not raise this issue in your direct appeal, explain why: <u>My attorney was ineffective and unaware of the issue.</u>

(c) Post-Conviction Proceedings:

(1) Did you raise this issue in any post-conviction motion, petition, or application?
Yes ☐   No ☒

(2) If your answer to Question (c)(1) is "Yes," state:
Type of motion or petition: <u>N/A</u>

Name and location of the court where the motion or petition was filed: <u>N/A</u>

Docket or case number (if you know): _____ N/A _____

Date of the court's decision: _____ N/A _____

Result (attach a copy of the court's opinion or order, if available): ____ N/A _____

_____

_____

(3) Did you receive a hearing on your motion, petition, or application?

    Yes ☐  No ☒

(4) Did you appeal from the denial of your motion, petition, or application?

    Yes ☐  No ☒

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

    Yes ☐  No ☒

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: _____ N/A _____

_____

Docket or case number (if you know): _____ N/A _____

Date of the court's decision: _____ N/A _____

Result (attach a copy of the court's opinion or order, if available): ____ N/A _____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: ____ N/A _____

_____

_____

_____

_____


GROUND TWO: _____ (See Below) _____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

_Whether permitting post-adjournment legislative business pursuant to H.Con.Res.219_
_violated Quorum, bicameral and presentment requirements of Article I of the_
_Constitution._

_____

_____ (See attached supporting brief) _____

_____

_____

_____

**(b) Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐    No ☒

(2) If you did not raise this issue in your direct appeal, explain why: __Attorney was__ __ineffective for failing to raise the issue.__

**(c) Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐    No ☒

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: ___N/A___

Name and location of the court where the motion or petition was filed: _____

___N/A___

Docket or case number (if you know): ___N/A___

Date of the court's decision: ___N/A___

Result (attach a copy of the court's opinion or order, if available): _____

___N/A___

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐    No ☒

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐    No ☒

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

Yes ☐    No ☒

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: ___N/A___

Docket or case number (if you know): ___N/A___

Date of the court's decision: ___N/A___

Result (attach a copy of the court's opinion or order, if available): _____

___N/A___

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:  Attorney was unaware of these issues and thus ineffective for failing to raise the issue at an earlier stage.

GROUND THREE: _____ (see below) _____

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.): Whether post-adjournment signing of H.R. 3190 by single officers of the Houses and presentment to and approval thereof by the President pursuant to H.Con.Res.219 violated provisions of Article I of the Constitution.

(See attached supporting brief)

(b) Direct Appeal of Ground Three:

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐   No ☒

(2) If you did not raise this issue in your direct appeal, explain why: Attorney was unaware of the issue and thus ineffective for failing to raise it at an earlier stage.

(c) Post-Conviction Proceedings:

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐   No ☒

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: ____N/A____

Name and location of the court where the motion or petition was filed: ___N/A___

Docket or case number (if you know): ____N/A____

Date of the court's decision: ____N/A____

Page 9

Result (attach a copy of the court's opinion or order, if available): ____N/A____

_____

_____

(3) Did you receive a hearing on your motion, petition, or application?

    Yes ☐   No ☒

(4) Did you appeal from the denial of your motion, petition, or application?

    Yes ☐   No ☒

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

    Yes ☐   No ☒

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: ____N/A____

_____

Docket or case number (if you know): ____N/A____

Date of the court's decision: ____N/A____

Result (attach a copy of the court's opinion or order, if available): ____N/A____

_____

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: __Attorney was unaware of the issue thus ineffective for failing to raise it at an earlier stage.__

_____

_____

_____

**GROUND FOUR:** _____(see below)_____

GROUND FIVE: _____

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

GROUND FOUR: Whether a purported bill signed by the officers of both Houses of congress and presented to the President post-adjournment and in the absence of quorums,which was not certified as truly enrolled nor the enrolled bill in fact a clear violation of title 1,U.S.C. §106, House Rules and Precedents null and void. GROUND SIX: Whether the District court Order committing Petitioner to Executive custody pursuant to Section 3231 of the unconstitutional Public Law 80-772 were issued ultra vires, are unconstiutional and coram non judice, and his imprisonment is unlawful.

(see attached supporting brief)

**(b) Direct Appeal of Ground Four:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐  No ☒

(2) If you did not raise this issue in your direct appeal, explain why: <u>Attorney was unaware</u> <u>of the issue thus ineffective for failing to raise it at an earlier.</u>

**(c) Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐  No ☒

(2) If your answer to Question (c)(1) is "Yes," state:

Type of motion or petition: <u>N/A</u>

Name and location of the court where the motion or petition was filed: <u>N/A</u>

Docket or case number (if you know): <u>N/A</u>

Date of the court's decision: <u>N/A</u>

Result (attach a copy of the court's opinion or order, if available): <u>N/A</u>

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐  No ☒

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐  No ☒

(5) If your answer to Question (c)(4) is "Yes," did you raise this issue in the appeal?

Yes ☐  No ☒

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed: <u>N/A</u>

Docket or case number (if you know): <u>N/A</u>

Date of the court's decision: <u>N/A</u>

Result (attach a copy of the court's opinion or order, if available): <u>N/A</u>

Page 11

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue: _____ Attorney failed to raise the issue.

_____

_____

_____

_____

13. Is there any ground in this motion that you have <u>not</u> previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them: All of the issues brought in this motion are being raised for the first time, as trial counsel failed to raise them at an earlier stage.

_____

_____

_____

_____

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the judgment you are challenging?     Yes ☐  No ☒
If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised. _____ N/A _____

_____

_____

_____

_____

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

(a) At preliminary hearing: _____ N/A _____

(b) At arraignment and plea: _____ N/A _____

(c) At trial: _____ N/A _____

(d) At sentencing: _____ N/A _____

Page 12

(e) On appeal: _____ N/A _____

_____

(f) In any post-conviction proceeding: _____ N/A _____

_____

(g) On appeal from any ruling against you in a post-conviction proceeding: _____
_____ N/A _____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?    Yes ☐ No ☒

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?    Yes ☐ No ☒

(a) If so, give name and location of court that imposed the other sentence you will serve in the future: _____ N/A _____

(b) Give the date the other sentence was imposed: ___ N/A _____

(c) Give the length of the other sentence: _____ N/A _____

(d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?    Yes ☐ No ☒

18. **TIMELINESS OF MOTION:** If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*    This Motion is filed timely.

_____

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of —

(1) the date on which the judgment of conviction became final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Therefore, movant asks that the Court grant the following relief:  The Petitioner is seeking immediate release from is unlawful incarceration.

or any other relief to which movant may be entitled.

N/A

**Signature of Attorney (if any)**

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on _____ 12-18-07  (month, date, year).

Executed (signed) on  12-18-07  (date).

Hilario Guzman Gonzalez

**Signature of Movant**

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.  N/A

IN FORMA PAUPERIS DECLARATION
U.S.D.C. for Southern District of California
[Insert appropriate court]
* * * * *

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF CALIFORNIA

HILARIO GUZMAN-GONZALEZ,

     Petitioner,

v.

UNITED STATES OF AMERICA,

     Respondent.

HONORABLE JEFFREY T. MILLER

Civil Case No._____

---

### BRIEF IN SUPPORT OF MOTION UNDER §2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

A.  Whether Public Law 80-772, Act of June 25, 1948, CH.645, Section 1, 62 Stat.683 et seq, is unconstitutional and void because H.R.3190 never passed both Houses as required by Article I, Section 7, Clause 2.

B.  Whether permitting post-adjournment legislative business pursuant to H.Con.Res.219 violated the Quorum, Bicameral and Presentment requirements of Article I of the Constitution.

C.  Whether post-adjournment signing of H.R.3190 by single officers of the Houses and presentment to and approval thereof by the President pursuant to H.Con.Res.219 violated provisions of Article I of the Constitution.

D.  Whether a purported bill signed by the officers of both Houses of Congress and presented to the President post-adjournment and in absence of quorums, which was not certified as truly enrolled nor the enrolled bill in fact, a clear violation of Title 1, U.S.C., §106, House Rules and Precedents prohibiting such acts, rendered the bill signed into Public Law 80-772 null and void.

E.  Whether the District Court order committing Petitioner to Executive custody pursuant to Section 3231 of the unconstitutional Public Law 80-772 were issued ultra vires, are unconstitutional and coram non judice, and his imprisonment is unlawful.

1

## I.   PRAYER FOR RELIEF

The Petitioner requests that this Court grant this Motion and declare unconstitutional and void ab inition: (1) Public Law 80-772 which purported to enact Title 18, United States Code, Act of June 25, 1948, Ch.645, 62 Stat. 683 et seq., and (2) more specifically Section 3231 thereof, 62 Stat.826, which purported to confer upon "the district courts of the United States.... original jurisdiction....of all offenses against the laws of the United States." These legislative Acts violated the Quorum, Bicameral and/or Presentment Clauses mandated respectively by Article I, §5, Cl.1, and Article I, §7, Cls.2 and 3, of the Constitution of the United States.  The Federal Court which rendered judgment and ordered commitment of the Petitioner, under Section 3231, lacked jurisdiction and , therefore, the judgment and commitment order is void ab initio.  To imprison the Petitioner under void judgment and commitment order is unconstitutional and unlawful.  As such, the Petitioner must be discharged from his illegal incarceration immediately.


## II.   CONSTITUTIONAL AND STATUTORY PROVISIONS INVOLVED

Article I, §1, commands and declares that "[a]ll legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives."

Article I, §5, Cl.1, commands, in relevant part, that "a Majority of each [House of Congress] shall constitute a Quorum to do Business," expecting therefrom permission to "adjourn from day to day" and "to compel attendence of its Members, in such Manner, and under such Penalties as each House may provide."

Article I, §7, Cl.2, commands, in relevant part, that "[e]very Bill

2

which shall have passed both Houses, shall, before it becomes a Law, be presented to the President of the United States."

Article I, §7, Cl.3, commands, in relevant part, that "[e]very.... Resolution... to which the Concurrence of the Senate and House of Representatives may be necessary...shall be presented to the President of the United States; and before the same shall take Effect, shall be approved by him, or being disapproved by him, shall be repassed by two thirds of the Senate and House of Representatives according to the Rules and Limitations prescribed in the case of a Bill."

Title 1, U.S.C., §106, Act of July 30, 1947, Ch.388, Title I, Ch.2, §106, 61 Stat.634, Pub.L. 80-278, provides, in relevant part, that "[w]hen [a] bill....shall have passed both Houses, it shall be printed and shall then be called the enrolled bill...and shall be signed by the presiding officers of both Houses and sent to the President of the United States."

## III.  STATEMENT OF THE FACTS

The Petitioner has been convicted, sentenced, and committed into Executive custody by order of a united States District Court acting pursuant to the grant of original jurisdiction purportedly created by Public Law 80-772, Title 18, U.S.C. §3231.  By virtue of the commitment order, the Petitioner has been committed into the custody of the Attorney General and the Bureau of Prisons.

The text of the bill, H.R.3190 as amended, which became Public Law 80-772 (enacting Title 18, U.S.C., and especially §3231), was passed only by the Senate and never passed by the House of Representatives.  Moreover, that bill was never certified as enrolled, and was surreptitiously signed

3

by the Speaker of the House and President pro tempore of the Senate under
purported authority of a concurrent resolution agreed to by a Congress denounced
by President Truman as a "'body dominated by men with a dangerous lust for
power and privilege,'" 27 Encyclopedia Americana 175 (2005), without quorums
of the respective House sitting.  Finally, that bill was mistakenly signed
by the President of the United States after it was misrepresented to him by
solitary Officers as a bill passed by both Houses, which was impossible since
no Congress was in session.

For those reasons, Public Law 80-772 which purportedly enacted Title
18, U.S.C., Act of June 25, 1948, Ch.645, 62 Stat.683 et seq. and Section
3231 thereof, 62 Stat.826, purporting to confer upon "the district courts
of the United States...original jurisdiction...of all offenses against the
laws of the United States" violates Article I, §5, Cl.1, and Article I, §7,
Cls.2 and 3, and therefore unconstitutional and void ab initio.  The respective
District Court, which acted against the Petitioner, did so without jurisdiction,
the judgment and commitment order is void ab initio, and the imprisonment
thereunder is fundamentally unconstitutional and unlawful.


1.    **H.R.3190 In The First Session Of The 80th Congress**

H.R.3190 was introduced and committed to the Committee of the entire
House of Representatives on the State of the Union of the First Session of
the 80th Congress entitled "Crimes And Criminal Procedures."  See House Report
No.304 (April 24, 1947), p.1 (App.67).  See also 94 Cong.Rec.D556-D557 (Daily
Digest)(charting H.R.3190)(App.65-66).  H.R.3190 differed from "five...bills
which ...preceded it...[because] it constitute[d] a revision, as well as a
codification, of the Federal laws relating to crimes and criminal procedures."

4

<u>93 Cong.Rec.5048-5049 (May 12, 1947)(App.45-46)</u>. The bill was intended (1) to revise and compile **all** of the criminal law, (2) to "restate[ ]" and "consolidate [ ]" "existing statutes," (3) to "repeal" "obsolete, superseded, redundant, and repetitious statutes," (4) to coordinate the Criminal Code with the "Federal Rules of Criminal Procedure" formerly enacted, and (5) to "clarify and harmonize" penalties of the "many acts" passed by Congress which were found to be "almost identical." (Id.)  "The bill was ordered to be engrossed and read a third time, was read a third time, and passed" the House on May 12, 1947, id.; <u>Journal of the House of Representatives ("House Journal"), May 12, 1947, pp.343-344 (App.4-5)</u>; <u>94 Cong.Rec.D556-D557</u> (showing H.R.3190's only passage by the House of Rep. on May 12, 1947), sent to the Senate and there "referred...to the Committee on the Judiciary." <u>93 Cong.Rec.5121, May 13, 1947 (App.47)</u>; <u>Journal of the Senate ("Senate Journal"), May 13, 1947, p.252 (App.10)</u>.[1]

As passed and enrolled by the  House of Representatives H.R.3190 included at section 3231, Subtitled "District Courts," the following text:

> Offenses against the United States shall be cognizable in the district courts of the United States, but nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several states under the laws thereof.

H.R.3190 as passed by the H. of Rep., <u>p.367 (App.110)</u>.  See <u>United States</u>

---

[1]The Senate Journal for May 13, 1947, was approved by the Senate on May 14, 1947, <u>Senate Journal, p.259 (App.11)</u>, and the House Journal for May 12, 1947, was approved by the House on May 13, 1947.  <u>House Journal, p.346 (App.6)</u>.  The Journals of the two Houses are admissible as evidence when properly certified.  28 U.S.C. §1736.  See also House Doc. No.355, 59th Cong., (G.P.O. 1907)("Certified extracts of the Journal are admitted as evidence in the courts of the United States.")<u>(App.85)</u>. Cf. Fed.R.Evid. Rule 902(5); See 28 U.S.C. §2072(a) and (b).

v. Sasscer, 558 F.Supp.33, 34 (D.MD.1982).

On July 27, 1947, Congress adjourned without the Senate passing H.R.3190. See 93 Cong.Rec.10439 (July 26, 1947)(App.48-49). On November 17, 1947, Congress reconvened pursuant to a Presidential proclamation.  Yet, Congress again "adjourned sine die on December 19, 1947," without the Senate passing H.R.3190. Kennedy v. Sampson,511 F.2d 430, 444 Appendix n.4 (D.C. Cir.1974).

###     2.     H.R.3190 In Second Session Of The 80th Congress

The Senate Committee on the Judiciary reported amendments to H.R.3190 on June 14, 1948, under Sen.Rep.No.1620.  94 Cong.Rec.8075 (June 14, 1948)(App. 50); Senate Journal , June 14, 1948, p.452 (App.34).[2]  Sen.Rep.No.1620 contained "a large volume of amendments" and "the new Federal Rules of Criminal Procedure [were] keyed to the bill and [were] reflected in part II of [the new proposed] Title 18."  Heralding that, upon passage of the amended bill, "[u]ncertainty will be ended," the Senate wanted "the amendments adopted en bloc," including a new jurisdictional section for Title 18.  94 Cong.Rec.8271 (App.51).  The report contained only the proposed amendments.  See Sen.Rep.No.1620, pp.1 & 4 (App.103-104).

"[T]he amendments were considered and agreed to en bloc" and then "ordered to be engrossed."  94 Cong.Rec.8721-8722 (June 18, 1948)(App.51-52), Senate Journal, June 18, 1948, p.506 (H.R.3190, "as amended," passed the Senate) (App.37).  It was moved that "the Senate insist upon its amendments" by the House (94 Cong.Rec. at 8722); and "[o]rdered that the Secretary request the

---

[2]The Senate approved its Journal for June 14, 1948.  Senate Journal June 15, 1948, pp.461-462 (App.35-36).

concurrence of the House of Representatives in the amendments." <u>Senate Journal</u>, supra, p.506; <u>House Journal, June 18, 1948, p.688 (App.16)</u>.

The House received the proposed amendments. The Clerk "read the Senate amendments" collectively into the record with which the House concurred. <u>94 Cong.Rec.8864-8865 (June 18, 1948)(App.53-54)</u>; <u>House Journal, June 18, 1948, p.704</u> (the "said Senate amendments were concurred in")(App.17). Although "[t]he House agreed to the amendments to ...H.R.3190," <u>Senate Journal, June 18, 1948, p.510 (App.38)</u>, no action was taken on H.R.3190 as amended.[3] The Journal of the House of Representatives is devoid of any vote on H.R.3190 itself on June 18, 1948, and thereafter through adjournment on June 20, 1948. Moreover, the official historical chart of H.R.3190 clearly shows the only passage by the House of Representatives occurring on May 12, 1947, and specifically references volume 93, p.5048 of the Congressional Record as the recorded date the House passed the bill. <u>94 Cong.Rec.D556-D557 (Daily Digest)</u>.

3. **Congress Agreed By Resolution To Continue Legislative Business By A Single Officer Of Each House During Adjournment**

On June 19, 1948, the House submitted and agreed to concurrent resolutions H.Con.Res.218 and 219 and requested concurrence by the Senate, <u>House Journal, June 19, 1948, pp.771-772 (App.19-20)</u>; <u>Senate Journal, June 18, 1948, p.577 (App.39)</u>. "[T]he Senate [then] passed without amendment these concurrent resolutions of the House."[4] <u>94 Cong.Rec.9349 (App.57)</u>. H.Con.Res.218

---

[3]The House approved the Journal for June 18, 1948, House Journal, p.714 (June 19, 1948, approving Journal for "Legislative day of...June 17, 1948" i.e., calander day of June 18, 1948)(App.18); id. at p.669 (showing Friday, June 18, 1948, as "legislative day of Thursday, June 17, 1948")(App.15),and the Senate approved its Journal for June 18, 19, and 20, 1948. Senate Journal, July 26, 1948, p.593 (App.44).

"provid[ed] adjournment of the two Houses of Congress until December 31, 1948,"

id; See Concurrent Resolutions, Second Session, Eightieth Cong., H.Con.Res.218,

June 20, 1948, 62 Stat. 1435-1436 (App.105-106).   H.Con.Res.219 "authoriz[ed]

the signing of enrolled bills following adjournment," 94 Cong.Rec.9349,

specifically resolving:

> That notwithstanding the adjournment of the two Houses
> until December 31, 1948, the Speaker of the House of
> Representatives and the President pro tempore of the
> Senate be, and they are hereby, authorized to sign
> enrolled bills and joint resolutions duly passed by
> the two Houses and found truly enrolled.

See Concurrent Resolutions, supra, H.Con.Res.219 June 20, 1948, 62 Stat.1436.

Congress adjourned on June 20, 1948, pursuant to H.Con.Res.218.   94

Cong.Rec.9348, 9169 (App.55-56);House Journal, June 20, 1948, p.775; Senate

Journal, June 20, 1948, p.578 (App.40).   Both Houses reconvened on July 26,

1948, pursuant to a proclamation of President Truman.   Senate Journal, July

26, 1948, p.593   (showing reconvention); House Journal, July 26, 1948, pp.792-

793 (same).[5]

4.    Post-Adjournment Signing Of H.R.3190 By Single Officers
      Of The Houses And Presentment To And Approval Thereof
      By The President Pursuant To H.Con.Res.219

With both Houses adjourned, with no quorum, disassembled and dispersed,

---

[4]The House sat from June 19 through June 20, 1928, adjourning at 6:56
a.m., House Journal, June 19, 1948, p.775 (App.21), and approved the Journal
of the 19th House Journal, July 26, 1948, pp.792-793 (reconvention by Presidential
Proclamation)(App.28-29).

[5]The House Journal for July 26, 1948, was approved, House Journal,
July 27, 1948, p.797 (App.30), and the Senate Journal for July 26, 1948, was
approved.  Senate Journal, July 27, 1948, p.593 (App.44).

Mr.LeCompte, the Chairman of the Committee on House Administration reported that that Committee had found H.R.3190 "truly enrolled." House Journal, legislative day of June 19, 1948, p.776 (recorded under heading "BILLS AND JOINT RESOLUTIONS ENROLLED SUBSEQUENT TO ADJOURNMENT")(App.22).[6] He attached his certificate of enrollment to the **original** H.R.3190 passed by the House on May 12, 1947. See H.R.3190, certified after adjournment as "truly enrolled" (as certified by Richard H.Hunt, Director, Center for Legislative Archives, The National Archives, Washington D.C.)(App.107-113). Although never certified as truly enrolled, the Speaker and President pro tempore respectively signed the Senate's amended H.R.3190 on June 22 and 23, 1948. 94 Cong.Rec.9353-9354 (App.58-59); House Journal legislative day June 19, 1948, p.777 (App.23); Senate Journal, legislative day June 18, 1948, pp.578-579 (App.40-41). National Archives & Records Adm. Cert., H.R.3190 signed by House and Senate officers and President Truman (App.114-117). The Senate's amended H.R.3190 was then presented by the Committee on House Administration to President Truman, on June 23, 1948,[7] at 12:23 p.m. E.D.T., 94 Cong.Rec.9364-9367 (App.61-64); House Journal, legislative day of June 19, 1948, pp.778, 780-782 (App.24, 25-27); Senate Journal, legislative day of June 18, 1948, pp.579, 583 (App.41,43). National Archives & Records Adm. Cert., H.R.3190, supra; 94 Cong.Rec.D557 (Daily Digest).

---

[6]Mr.LeCompte's announcement was reported upon reconvention by the President's Proclamation on July 26, 1948. 94 Cong.Rec.9363 (App.60).

[7]That same day President Truman signed into law Public Law 80-773 enacting into positive law Title 28, United States Code. Act of June 25, 1948, Ch.646, §1, 62 Stat.869. That Act positively repealed the former criminal jurisdiction granted to the district courts. id., §39 et seq, 62 Stat.991 et seq. (positive repeal listing former 28 U.S.C. §41, ¶2 in schedule of repealed statutes).

5.    The Signatories Of H.R.3190 Knew The Enacting Clause
      Was False When Signed

Public Law 80-772 stated that the enactment proceeded "by the Senate
and House of Representatives of the United States of America in Congress
assembled."  See National Archives & Records Adm. Cert. H.R.3190 as signed
into P.L.80-772, supra.  Each signatory knew that neither "House" legislatively
existed at that time, and that the legislative process had ceased within the
terms of Article I, Sections 5 and 7 on June 20, 1948.

## IV.    REASONS FOR GRANTING THIS MOTION

A.    Public Law 80-772 Is Unconstitutional And Void Because H.R.
      3190 Never Passed Both Houses As Required By Article I,
      Section 7, Clause 2

Although "[a]ll legislative Powers herein granted shall be vested in
a Congress of the United States, which shall consist of a Senate and a House
of Representatives," (Art.I, §1, U.S. Const.), "when [Congress] exercises
its legislative power, it must follow the 'single, finely wrought and exhaustively
considered procedures' specified in Article I." Metropolitan Washington Airports
Authority v. Citizens For Abatement of Aircraft Noise, Inc., 501 U.S. 252,
274 (1991)(quoting INS v. Chadha, 462 U.S. at 951).  Article I establishes
"just how those powers are to be exercised." INS v. Chadha, 462 U.S. at 945.

An act of Congress "does not become a law unless it follows each and
every procedural step chartered in Article I, §7, Cl.2, of the Constitution."
Landgraf v. USI Film Products, 51 U.S. 244, 263 (1994)(citing INS v. Chadha,
462 U.S. at 946-951 (emphasis added)); Clinton, 524 U.S. at 448 (noting
requisite "steps" taken before bill may "'become a law'" and holding that
a procedurally defective enactment cannot "'become a law' pursuant to the

10

procedures designed by the Framers of Article I, §7, of the Constitution").

The Constitution requires "three procedural steps": (1) a bill containing its **exact text** was approved by a majority of the Members of the House of Representatives, (2) the Senate approved **precisely the same text**; and (3) that **text** was signed into law by the President.  "If one paragraph of that text had been ommitted at **any one of those three stages**, [the] law [in question] would not have been validly enacted."[8]  Clinton, 524 U.S. at 448 (emphasis added).  Between the second and third "procedural steps," the bill "...shall... be presented to the President..."  Article I, §7, Cl.2.

The text of H.R.3190 passed by the House of Representatives was the text as it existed on the date of passage -i.e., May 12, 1947.  Whereas, the text of the bill passed by the Senate on June 18, 1948, was H.R.3190 "as amended." Senate Journal, June 18, 1948, p.506. Thus, the text of the bills passed by the respective Houses was grossly different and neither bill ever "became a law." Clinton, 524 U.S. at 448.

B.    Permitting Post-Adjournment Legislative Business Pursuant
      To H.Con.Res.219 Violated The Quorum, Bicameral and
      Presentment Requirements Of Article I of the Constitution

After Congress adjourned on June 20, 1948, pursuant to H.Con.Res.219,

---

[8]"All legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives." Art.I, §1 of the Constitution.
    "...[A] Majority of each [House] shall constitute a quorum to do Business ..." Art.I, §5, Cl.1.
    "Every Bill which shall have passed [both Houses], shall, before it becomes a law, be presented to the President of the United States; If he approves he shall sign it..." Art.I, §7, Cl.2.
    "Every.... Resolution...to which the Concurrence of [both Houses] may be necessary (except on a question of Adjournment) shall be presented to the President of the United States; and before the same shall take Effect, shall be approved by him..." Art.I, §7, Cl.3.

a single officer of each House of Congress signed a bill purporting to be H.R.3190 on June 22-23, 1948, 94 Cong.Rec.9354; House journal, legislative day of June 19, 1948, p.777; Senate Journal, legislative day of June 18, 1948, pp.578-579, and presented that bill to the President, who signed it on June 25, 1948.  94 Cong.Rec.9365-9367.  Thus, the post-adjournment signature "provision [of H.Con.Res.219] was an important part of the legislative scheme," leading to the enactment of Public Law 80-772, without which it would never have "become a Law."  Bowsher v. Synar, 478 U.S. 714, 728 (1986).  Public Law 80-772 falsely stated it was "enacted" while both Houses were "in Congress assembled," when in fact Congress was not in session.  See National Archives & Records Adm. Cert., H.R.3190 as signed into P.L.80-772.

The bill signed was the Senate's amended H.R.3190 -a bill never certified as "truly enrolled," compare P.L.80-772, Enactment Clause & signature pages with H.R.3190, certified as "truly enrolled," supra, and H.Con.Res.219 never authorized the signing of unenrolled bills after adjournment.  See H.Con.Res. 219, supra, 62 Stat.1436.

Article I, §5, Cl.1 mandates a quorum of both Houses of Congress "to do business."  This constitutional requirement has been enforced by practice, Rules of the House, custom, Supreme Court holdings, and duly enacted statutes.

1 U.S.C. §101 requires every "enacting clause of all Acts of Congress" to state: "Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled.'"  Although the bill after passage by "both Houses" must be "enrolled" following which it "shall be signed by the presiding officers of both Houses and sent to the President of the United States,"[9] 1 U.S.C. §106, the actual procedure is regulated by House rules and established practice.  Following passage the "chairman of the Committee

on House Administration...affixes to the bills a certificate that the bill has been found truly enrolled,"[10] House Doc. No.769, supra. Stages of a Bill, §983, No.16 p.[483](App.70), after which the "enrolled bill is first laid before the House of Representatives and signed by the Speaker...after which it is transmitted to the Senate and signed by the President of that body." Id., No.17, p.[484](App.80).

The Supreme Court in Marshall Field & Co v. Clark, 143 U.S. 649 (1892), defined the essence of this procedure:

> **The signing** by the Speaker of the House of Representatives, and, by the President of the Senate, **in open session**, of an **enrolled bill is an official attestation by the two Houses** of such bill as one that has passed Congress. It is a **declaration by the two Houses**, through their presiding officers, **to the President**, that a bill, thus attested, has received, in due form, **the sanction of the legislative branch** of the government, and that it is delivered to him in obedience to the constitutional requirement that all bills which pass Congress shall be presented to him.

143 U.S. at 672 (emphasis added).  1 U.S.C. §106 codified this implicit constitutional requirement.  Reading 1 U.S.C. §§101 and 106 together requires that all acts must occur at least through presentment to the President while

---

[9] 1 U.S.C. §106 contains an exception for enrollment "[d]uring the last six days of a session," but no exception for enrolling, signing or presenting a bill to the President otherwise than during the sitting of both Houses.

[10] Formerly, the "Chairman of the Committee on Enrolled Bills" performed this critical task in the legislative business of enacting a bill, which has always required the enrolled bill to be "placed before the House and signed by the Speaker." See House Doc. No.355, 59th Cong., 2nd Session., Hinds' Precedents of the House of Representatives, Ch.XCI, §3429, notes 3 & 5, p.311 (G.P.O. 1907)(App.92). See House Doc. No.769, supra, Preface, p.[VI]("The rulings of the Speakers of the House and of the Chairman of the Committee of the Whole are to the rules of the House what the decisions of the courts are to the statutes...[which are] embodied in the monumental work[s] of Hinds and Canon.")(App.71).

Congress is in session. That the enrolled bill must be "layed before the House" prior to signing by the Speaker and then "transmitted to the Senate" before the signing by the President of that body concludes that the respective Houses must be in session during this transaction.[11]

An "adjournment terminates the legislative existence of Congress." Pocket Veto Case, 279 U.S. at 681. "'Th[e] expression, a "house," or "each house," [when] employed...with reference to the faculties and powers of the two chambers...always means...the constitutional quorum, assembled for the transaction of business, and capable of transacting business.'" 279 U.S. at 683. quoting I Curtis Constitutional History of the United States, 486 n.1. Moreover, the term "'House'" means "the House in session," 279 U.S. at 682, and "'as organized and entitled to exert legislative power,' that is, the legislative bodies 'organized conformably to law for the purpose of enacting legislation.'"Id. (quoting Missouri Pacific Railway Co. v. Kansas, 248 U.S. 276, 281 (1919)). See also House Doc.No.355, supra, Hinds' Precedents, §2939, p.87 ("'The House is not a House without a quorum'")(App.87).

No "attestation" or "declaration by the two houses...to the President," Field & Co., 143 U.S. at 672, that H.R.3190 had "passed" Congress during the adjournment was possible because no such "houses" constitutionally existed. See also United States National Bank of Oregon v. Independent Insurance Agents of America, 508 U.S. 439, 455 n. 7 (1993)(noting that the rule established

---

[11] "[T]he Constitution has left it to Congress to determine how a bill is to be authenticated as having passed" and "the courts accept as passed all bills authenticated in the manner provided by Congress." United States v. Munoz-Flores, 495 U.S. 385, 391 n.4 (1990)(citing Field & Co. v. Clark, 143 U.S. 649 (1892); in which case the Court established the so-called "enrolled bill rule" -a rule not applicable in this case, but a ruling that supports Petitioner's claims.)

in Field & Co., 143 U.S. at 672, made statutory by 1 U.S.C. §106 turned upon "the 'enrolled bill,' signed in open session by the Speaker of the House of Representatives and the President of the Senate"). Longstanding precedence of the House affirms this. House Doc.No.355, supra, Hinds' Precedents, Vol.IV, §2951, pp.90-91 (upon "disclos[ure]...that there is not a quorum..., [t]he House thereby becomes constitutionaly disqualified to do further business") (excepting from disqualification the exceptions stated in Art.I, §5, Cl. 1) (emphasis added)(App.88-89); id., §3458, p.322 ("The Speaker may not sign an enrolled bill in the absence of a quorum.")(App.93); id. at §3486, pp.332-333 (recognizing enrollment and presentment to the President to be legislative business required to be completed before adjournment)(App.95-96); id. at §3487, p.333 n. 3 (presentment to the President is legislative "business" which must be completed before adjournment)(App.96); id. at §4788, p.1026 ("The presentation of enrolled bills" to the President of the United States is a "transact[ion]" of "business" of the "House.")(App.100).

   Once a bill has passed the House of Representatives it must be printed as an "engrossed bill" which then "shall be signed by the Clerk of the House... sent to the other House, and in that form shall be dealt with by that House and its officers, and, if passed, returned signed by said Clerk." 1 U.S.C. §106. In the immediate case H.R.3190 was passed by the House of Representatives on May 12, 1947, engrossed and sent to the Senate and there referred to the Senate's Committee on the Judiciary. See 93 Cong.Rec.5048-5049, 5121; Senate Journal, May 13, 1947, p.252. However, it was not dealt with nor passed "in that form."

   Instead, amendments were proposed which were "agreed to en bloc," read into the record and "ordered to be engrossed." 94 Cong.Rec.8721-8722.

Then, "the [amended] bill was read the third time and passed." 94 Cong.Rec. 8722; Senate Journal, June 18, 1948, p.506. The House then concurred in the amendments en bloc. 94 Cong.Rec. 8864-8865; House Journal, June 18, 1948, p.704.[12]

"The House in which a bill originates enrolls it," House Doc.No.769, supra, Stages of a Bill,No.15, p.[483](App.79), and, in the case of House bills, the "chairman of the Committee on House Administration...affixes to the bills examined a certificate that the bill has been found truly enrolled," id., No.16, p.[483], after which it is "laid before the House...signed by the Speaker [then] transmitted to the Senate and signed by the President of that body." Id, No.17, p.[484]. Unequivocally, "[t]he Speaker may not sign an enrolled bill in the absence of a quorum." House Doc.No. 355, supra, Hinds' Precedents, §3458, p.322. Cf., id., §2939, p.87 ("The House is not a House without a quorum.").

The constitutional "quorum" issue is precluded from the Field & Co.'s "enrolled bill rule" by its terms -i.e., "[t]he signing ...in open session, of an enrolled," 143 U.S. at 672 (emphasis added), which in any case only applies in "the absence of [a] constitutional requirement binding Congress." United States v. Munoz-Flores, supra, 495 U.S. at 391 n.4. Moreover, just as "§7 gives effect to all of its Clauses in determining what procedures the Legislative and executive branches must follow to enact a law," id., 495 U.S. 386 (emphasis by Court), so too does Article I, §5, Cl.1 "provid[e] that no law could take effect without the consurrence of the prescribed majority of

---

[12] This contravenes the procedures of the House of Representatives for the 80th Congress. "When a bill with Senate amendments comes before the House, the House takes up each amendment by itself..." House Doc.No.769, Stages of a Bill in the House, §983, No.13, p.[483].

the Members of both Houses," INS v. Chadha, 462 U.S. at 949-950, as to all

legislative "Business," Cf. United States v. Ballin, 144 U.S. 1, 3-5 (1892)

(to determine whether constitutionally mandated quorum was present for legislative

action the Court "assume[s]" the Journals of the Houses are to be considered

to decide the issue).

The bill signed by the Officers of the Houses presented to and signed

by the President of the United States was the Senate's amended bill, which

never passed the House. H.Con.Res. 219 only "authorized [the] sign[ing] [of]

enrolled bills...duly passed by the two Houses and found truly enrolled,"

H.Con.Res. 219, supra, 62 Stat. 1436, voiding the signatures on the amended

bill.[13]

Having not been enrolled, certified as truly enrolled, or signed by

the Speaker of the House with a quorum present, the bill was rendered

constitutionally void. House Doc.No. 769, supra, Constitution of the United

States, §55, p.[19]("[w]hen action requiring a quorum was taken in the

ascertained absence of a quorum...the action was null and void")(App.74);

House Doc.No.355, supra, Hinds' Precedents, §§3497 & 3498, pp.344-345 (such

a bill is "not in force" and is "not a valid statute")(App.97-98). Cf.,id.,

Hinds' Precedents, §2962, p.94 (to vacate legislative act "the absence of

a quorum should appear from the Journal")(App.90).

---

[13] On July 26, 1948, "Mr.LeCompte, from the Committee on House
Administration, reported that that committee had examined and found" that
H.R.3190 had been "truly enrolled." 94 Cong.Rec. 9363. The version of H.R.3190
certified as "truly enrolled" by Mr.LeCompte, is the House version passed
on May 12, 1947, with the text of the original §3231 -the text of which was
never passed by the senate -to which his certified enrollment is attached.
(App.107-113). The statutory mandate after final passage and printing to "call
[]" the bill in such final form "the enrolled bill," 1 U.S.C. §106, Act of
July 30, 1947, Ch. 388, Ch.2, 61 Stat.634, is determined by the certificate
"affixed to the bill," House Doc.No. 769, Stages of a Bill, supra, No.16,
all of which is required before the "sign[ing] by the presiding officers of
both Houses and sen[ding] to the President of the United States." 1 U.S.C. §106.

Art. I, § 7, mandates that a bill that has passed both Houses "'shall before it becomes a Law, be presented to the President of the United States...,'" Art.I,§7,Cl.2; INS v. Chadha,462 U.S. at 945, which "can **only** contemplate a presentment by the Congress in some manner, [because]...[a]t that point the bill is necessarily in the hands of the Congress." United States v. Kapsalis, 214 F.2d 677, 680 (7th Cir. 1954), cert.denied, 349 U.S. 906 (1955)(emphasis added). Thus, presentment is clearly part of the legislative procedure required as essential to enactment of a bill as law. INS v. Chadha, 462 U.S. at 945, 947, 951; La Abra Silver Mining Co. v. United States, 175 U.S. 423, 454(1899)("**After a bill has been presented** to the President, **no further action is required by Congress** in respect of that bill, unless it be disapproved by him...")(emphasis added). See House Doc.No.355, supra, Hinds' Precedents, Vol.IV, §4788, p.1026 (recognizing that "the presentation of enrolled bills" to the President is a "transact[ion]" of "business" of "the House");id., §3486, p.332 (recognizing presentment required prior to adjournment); id., §3487, p.333 note 3 (when bill is enrolled or signed by presiding officers "too late to be presented to the President before adjournment" signing and presentment must continue at next session as a "resumption of [legislative] business"). Clearly presentment is part of the constitutionally mandated "Business," Art.I,§5,Cl.1, to be "exercised in accord with [the] single, finely wrought and exhaustively considered, procedure" prescri[bed]...in Art.I,§§1, 7." INS v. Chadha, 462 U.S. at 951.

The "draftsmen" of the Constitution "took special pains to assure these [legislative] requirements could not be circumvented. During the final debates on Art.I, §7,Cl.2, James Madison expressed concern that it might easily be evaded by the simple expedient of calling a proposal a 'resolution' or 'vote'

18

rather than a 'bill.' As a consequence, Art.I,§7,Cl.3,...was added." INS
v. Chadha, 462 U.S. at 947 (citing 2 Farrand, supra, 301-302, 304-305).

    Whether actions authorized under a resolution are "an exercise of
legislative powers depends not on their form but upon 'whether they contain
matter which is properly to be regarded as legislative in its character and
effect.'" INS v. Chadha, 462 U.S. at 952 (quoting S.Rep.No.1335, 54th Cong.,
2d Sess., 8 (1897)). "If the power is legislative, Congress must exercise
it in conformity with the bicameralism and presentment requirements of Art.I,§7."
Metropolitan, 501 U.S. at 276. See also Bowsher v. Synar, 478 U.S. at 756
(Stevens, J.,concurring)("It is settled, however, that if a resolution is
intended to make a policy that will bind the nation, and thus is 'legislative
in its character and effect,' S.Rep.No.1335, 54th Cong., 2d Sess., 8(1897)
-then the full Article I requirements must be observed. For 'the nature or
substance of the resolution, and not its form, controls the question of its
disposition. Ibid.").

    "'Congress,'" of course, "'cannot grant to an officer under its control
what it does not possess.'" Metropolitan, 501 U.S. at 275 (quoting Bowsher
v. Synar, 478 U.S.at 726). Congress does not possess the "'capab[ility] of
transacting business'" and is not "'entitled to exert legislative power,'"
when its "legislative existence" has been "terminate[d]" by an "adjournment."
Pocket Veto Case, 279 U.S. at 681-683 (citations omitted). "The limitation
-of the power of less than a quorum is absolute," House Doc.No. 355, supra,
Hinds' Precedents, Vol.V, Ch.CXL, §6686, p.851 (App.102), and includes the
signing of an enrolled bill by the Speaker of the House, id., Vol.IV,Ch.XCI,
§3458, p.322, and presentment to the President of the United States. id.,CH.
XCII, §§3486,3487 & 3497, pp.332,333 note 3, 344 & 345 (App.95-98). Wright

v. United States, 302 U.S. 583, 600 (1938)(Stone,J., concurring)("The house of Congress, being collective bodies, transacting their routine business by majority action are capable of acting only when in session and by formal action recorded in their respective journals, or by recognition, through such action, of an established practice.")  Thus, "Congress," as defined by the Constitution and the Supreme Court, never "presented" any version of H.R.3190 to the President of the United States.

Whether the action taken under H.Con.Res. 219 was an "exercise of legislative power" depends upon whether it was essentially "legislative in purpose and effect." INS v. Chadha, 462 at 952.  "In short, when Congress '[takes] action that ha[s] the purpose and effect of altering the legal rights, duties, and relations of persons...outside the Legislative Branch,' it must take that action by the procedures authorized in the Constitution." Metropolitan, 501 U.S. at 276, quoting INS v. Chadha, 462 U.S. at 952-955.  "If Congress chooses to use a [] resolution...as a means of expediting action, it may do so, if it acts by both houses and presents the resolution to the President," Consumer Energy Council of America v. F.E.R.C., 673 F.2d 425, 476 (D.C. Cir. 1982), aff'd mem. sub nom., Process Gas Consumers Group v. Consumer Energy Council of America, 463 U.S. 1216 (1983).

The inescapable conclusion as to the "purpose and effect" of H.Con.Res. 219 was to enact a **bill** the text of which at the time of adjournment on June 20, 1948, had not passed by both Houses, enrolled, certified as "truly enrolled," or signed by the officers of the Houses or presented to the President of the United States with quorums sitting.  In other words, H.Con.Res. 219 unconstitutionally permitted post-adjournment legislative business to proceed without Congress and upon an unpassed bill.  Congress did not follow the

20

procedures mandated by Art.I, §7, Cl.2 and attempted to supersede the quorum requirements of Art.I, §5,Cl.1 via a concurrent resolution to carry forth legislative business with no legislature.  The 80th Congress surreptitiously provided a bill, the text of which had never passed either House "'mask[ed] under...[the] indirect measure,'" Metropolitan, supra, 501 U.S. at 277 (quoting Madison, The Federalist No.48, p.334 (J.Cooke 1961 ed.)), of a resolution purporting to authorize continuing legislative action during adjournment with no quorum and no Congress of an extra-congressional bill.  Public Law 80-772 did not "become a Law" as required by the constitutional procedures mandated under Article I, §5, Cl.1, and Article I, §7, Cls.2 and 3, and is unconstitutional and void ab initio.

"[W]hen action requiring a quorum was taken in the ascertained absence of a quorum...the action [is] null and void," House Doc.No. 769, supra, Constitution of the United States, §55, p.[19] (citing Hinds' Precedents, Vol.IV, §2964), and "a bill...not actually passed [although] signed by the President [is to be] disregarded [requiring] a new bill [to be] passed." House Doc.No. 769, §103, p.[34] (citing Hinds' Precedents, Vol.IV, §3498)(App.75).

   C.   The District Court Order Committing Petitioner To
        Executive Custody Pursuant To §3231 (Of Unconstitutional
        Public Law 80-772) Was Issued Ultra Vires, Is
        Unconstitutional And Coram Non Judice, And His
        Imprisonment Is Unlawful

"The challenge in this case goes to the subject-matter jurisdiction of the [respective district] court[s] and hence [their] power to issue order[s]." United States Catholic Conference v. Abortion Rights Mobilization, Inc., 487 U.S. 72, 77 (1988), committing Petitioner to imprisonment in Executive custody. Thus, the "question is, whether...[the district courts'] action is judicial

21

or extra-judicial, with or without the authority of law to render [the] judgment[s]," Rhode Island v. Massachusetts, 37 U.S. (12 Pet.) 657, 718 (1838), and to issue the commitment order.

Subject -matter jurisdiction means "'the court's statutory or constitutional power to adjudicate the case,'" United States v. Cotton, 535 U.S. 625, 630 (2002), quoting Steel Co. v. Citizens For A Better Environment, 523 U.S. 83, 89 (1998); Rhode Island v. Massachusetts, 37 U.S. (12 Pet.) at 718 ("Jurisdiction is the power to hear and determine the subject-matter in controversey between parties to a suit, to adjudicate or exercise any judicial power over them."); Reynolds v. Stockton, 140 U.S. 254, 268 (1891)("Jurisdiction may be defined to be the right to adjudicate concerning the subject matter in a given case."). "Subject-matter limitations on federal jurisdiction serve institutional interests by keeping the federal courts within the bounds the Constitution and Congress have prescribed." Ruhgras AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999).[14]

---

[14] "Federal courts are courts of limited jurisdiction...Jurisdiction of the lower federal courts is further limited to those subjects encompassed within a statutory grant of jurisdiction." Insurance Corp. of Ireland Ltd. v. Compagnie des Bauxite de Guinea, 456 U.S. 694, 701 (1982); Kline v. Burke Constr.Co., 260 U.S. 226, 234 (1922)(all lower federal courts "derive[] [their] jurisdiction wholly from the authority of Congress"); United States v. Hudson & Goodwin, 11 U.S. 32, 33 (1812)(federal "courts possess no jurisdiction over crimes and offenses...except what is given to them by the power that created them"); Hudson & Goodwin, 11 U.S. at 33-34. See also , e.g., United States v. Wiltberger, 18 U.S. 76, 95-105 (1820)("the power of punishment is vested in the legislative, not the judicial department," criminal statutes are to be construed strictly, "probability" cannot serve to "enlarge a statute" and an offense not clearly within the terms of a statute precludes federal court jurisdcition).

"'Without jurisdiction the court cannot proceed at all in any cause... and when it ceases to exist, the only function of the court is that of announcing the fact and dismissing the casue.'" Steel Co. v. Citizens, 523 U.S. at 94, quoting Ex parte McCardle, 74 U.S. (7.Wall.) 506, 514 (1869); Willy v. Coastal Corp., 503 U.S. 131, 137 (1992)("lack of subject-matter jurisdiction...precludes further adjudication"). The Supreme Court has asserted over and over that "[t]he requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" Steel Co., 523 U.S. at 94-95, quoting Mansfield, C. & L.M.R. Co. v. Swan, 111 U.S. 379, 382 (1884); See also Insurance Corp. of Ireland,Ltd., 456 U.S. at 702.

Because subject-matter jurisdiction "involves a court's power to hear a case, [and thus] can never be forfeited or waived...correction [is mandatory] whether the error was raised in district court" or not.  United States v. Cotton, 535 U.S. at 630 (citation omitted); Steel Co.,523 U.S. at 94-95 (citing cases).  When a district court did "not have subject-matter jurisdiction over the underlying action...[its] process[es] [are] void and an order of [punishment] based [thereupon]..must be reversed." United States Catholic Conf., 487 U.S. at 77; Willy v. Coastal Corp., 503 U.S. at 139 ("[T]he [punishment] order itself should fall with a showing that the court was without authority to enter the decree."); Ex parte Fisk, 113 U.S. 713, 718 (1885)("When ...a court of the United States undertakes, by its process...to punish a man... [respecting] an order which that court had no authority to make, the order itself, being without jurisdiction , is void, and the order punishing...is equally void.")

Habeas corpus review "is limited to the examination of the jurisdiction

23

of the court whose judgment of conviction is challenged." INS v. St.Cyr, 533 U.S. 289, 311-314 (2001); Bowen v. Johnston, 306 U.S. 19, 23 (1939). A "court 'has jurisdiction to render a particular judgment only when the offense charged is within the class of offenses placed by the law under its jurisdiction.'" 306 U.S. at 24 (emphasis added). If it is found that the court lacked jurisdiction to try petitioner, the judgment is void and the prisoner must be discharged. Ex parte Yarbrough, 110 U.S. 651, 654 (1884).

The Petitioner has established that the text of H.R.3190 signed by respective House officers and the President of the United States:(1) failed to pass the House of Representatives, and (2) that the legislative process continued after Congress adjourned by single officers of each House acting pursuant to H.Con.Res. 219 without quorums in either House, all of which violated Article I, section 5, Clause 1; Article I, Section 7, Clause 2, and/or Article I. Section 7, Clause 3 -and any of which rendered Public Law 80-772 unconstitutional and void ab initio. Marbury v. Madison, 5 U.S. 137, 180 (1803)("a law repugnant to the constitution is void; and...courts, as well as other departments, are bound by that instrument"). Therefore, because "the offense[s] charged... [were] placed by the law under [the] jurisdiction," of the respective district court below pursuant to 18 U.S.C. §3231 of Public Law 80-772, which is unconstitutional, and "void, the court was without jurisdiction and the prisoner must be discharged." Yarbrough, 110 U.S. at 654. Since Public Law 80-772 has never been enacted as required by Article I, Section 5, Clause 1, and Article I, Section 7, Clauses 2 and 3 thereof, rendering void ab initio the jurisdiction by which the district court acted to convict, enter judgment, and order the Petitioner imprisoned in Executive custody, the district court's actions were "'ultra vires,'" Ruhrgas AG, 526 (quoting Steel Co., 523 U.S.

24

at 101-102), and "coram non judice." <u>Rhode Island v. Massachusetts</u>, 37 U.S. (12 Pet.) at 720.

The conviction and judgment thereupon "being without jurisdiction, is void, and the order punishing....is equally void." <u>Ex parte Fisk</u>, 113 U.S. at 718; <u>United States Cath. Conf.</u>, 487 U.S. at 77; <u>Willy v. Coastal Corp.</u>, 503 U.S. at 139. This is precisely the office and function of habeas corpus -i.e., to "examine...the jurisdiction of the court whose judgment of conviction is challenged," <u>Bowen v. Johnston</u>, 306 U.S. at 23, and where, as here, the court was clearly "without jurisdiction...the prisoner...must be discharged." <u>Ex parte Yarbrough</u>, 110 U.S. at 654. See also <u>Ex parte Lange</u>, 85 U.S. (18 Wall.) 163, 166 (1874).

## CONCLUSION

For the reasons stated above, the Petitioner prays that this Court grant this motion and that he be immediately discharged from his unlawful imprisonment.

The Petitioner also declares under penalty of perjury that the facts stated or alleged herein are true and correct pursuant to 28 U.S.C. §1746.

Executed this 18 day of December, 2007.

Hilario Guzman Gonzalez

Hilario Guzman-Gonzalez
Federal Correctional Inst.
P.O. Box 6000
Florence, CO. 81226-6000

# NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

## To all to whom these presents shall come. Greeting:

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf, under the seal of the National Archives of the United States, that the attached reproduction(s) is a true and correct copy of documents in his custody.

| SIGNATURE | | |
|---|---|---|
| NAME Richard H. Hunt | | DATE 05/11/07 |
| TITLE Director Center for Legislative Archives | | |
| NAME AND ADDRESS OF DEPOSITORY The National Archives Washington, D.C. 20408 | | |

NA FORM APR 85 1407-A

# JOURNAL

OF THE

# HOUSE OF REPRESENTATIVES

# OF THE UNITED STATES

## EIGHTIETH CONGRESS
## FIRST SESSION

BEGUN AND HELD AT THE CITY OF
WASHINGTON  :  : JANUARY 3, 1947

IN THE ONE HUNDRED AND SEVENTY-FIRST YEAR
OF THE INDEPENDENCE OF THE UNITED STATES



Prepared under the direction of
John Andrews, Clerk of the House of Representatives, by Eugene F. Sharkoff, Journal Clerk
and Raymond P. Johnson, and Thomas H. Cleary, Assistant Journal Clerks

UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1947

# JOURNAL

OF THE

# HOUSE OF REPRESENTATIVES

## CONGRESS OF THE UNITED STATES

Begun and held at the Capitol, in the city of Washington, in the District of Columbia, on Friday, the 3d day of January, in the year of our Lord nineteen hundred and forty-seven, being the *first session* of the EIGHTIETH CONGRESS, held under the Constitution of the Government of the United States, and in the one hundred and seventy-first year of the Independence of the United States.

### FRIDAY, JANUARY 3, 1947

On which day, being the day fixed by the Constitution of the United States, as amended, for the meeting of Congress, Ralph R. Roberts, Doorkeeper of the House of Representatives, at the hour of 12 o'clock noon, called the House to order, and proceeded to call the roll of Members-elect by States, when the following Members-elect had been received, when the following Members-elect answered:

[Roll No. 1]

*From the State of—*

**ALABAMA**

Boykin, Grant, Andrews, Hobbs, Rains, Jarman, Battle, Manasco

Harless

**ARIZONA**

Murdock

**ARKANSAS**

Gathings, Mills, Trimble, Cravens, Hays, Norrell, Harris

**CALIFORNIA**

Lea, Engle, Johnson, Havenner, Welch, Miller, Allen, Anderson, Gearhart, Elliott, Bramblett, Nixon, Poulson, McDonough, Jackson, King, Bradley, Holifield, Hinshaw, Sheppard, Phillips, Fletcher

**COLORADO**

Carroll, Hill, Chenoweth, Rockwell

**CONNECTICUT**

Miller, Seely-Brown, Foote, Lodge, Patterson, Sadlak

**DELAWARE**

Boggs

**FLORIDA**

Peterson, Price, Sikes, Smathers, Hendricks, Rogers

**GEORGIA**

Preston, Cox, Pace, Camp, Davis, Vinson, Lanham, Wheeler, Wood, Brown

**IDAHO**

Goff, Sanborn

**ILLINOIS**

Dawson, Vail, Busbey, Gorski, Sabath, O'Brien, Owens, Gordon, Twyman, Church, Reed, Mason, Allen, Johnson, Chiperfield, Dirksen, Arends, Jenison, McMillen, Simpson, Howell, Price, Vursell, Clippinger, Bishop, Stratton

**INDIANA**

Madden, Halleck, Grant, Gillis, Harness, Johnson, Landis, Mitchell, Wilson, Springer

**IOWA**

Martin, Talle, Gwynne, LeCompte, Cunningham, Dolliver, Jensen, Hoeven

**KANSAS**

Cole, Scrivner, Meyer, Rees, Hope, Smith

**KENTUCKY**

Gregory, Clements, Morton, Chelf, Spence, Chapman, Meade, Bates, Robsion

**LOUISIANA**

Hébert, Boggs, Brooks, Passman, Larcade, Allen

**MAINE**

Hale, Smith, Fellows

**MARYLAND**

Miller, Meade, D'Alesandro, Fallon, Sasscer, Beall

**MASSACHUSETTS**

Heselton, Olason, Philbin, Donohue, Rogers, Bates, Lane, Goodwin, Gifford, Herter, Kennedy, McCormack, Wigglesworth, Martin

**MICHIGAN**

Sadowski, Michener, Shafer, Hoffman, Jonkman, Blackney, Wolcott, Crawford, Engel, Woodruff, Bradley, Bennett, Coffin, Youngblood, Dingell, Lesinski, Dondero

**MINNESOTA**

Andresen, August H., O'Hara, MacKinnon, Devitt, Judd, Knutson, Andersen, H. Carl, Blatnik, Hagen

**MISSISSIPPI**

Rankin, Whitten, Whittington, Abernethy, Winstead, Colmer, Williams

**MISSOURI**

Arnold, Schwabe, Cole, Bell, Reeves, Bennett, Short, Banta, Cannon, Zimmerman, Bakewell, Ploeser, Karsten

**MONTANA**

Mansfield, D'Ewart

**NEBRASKA**

Curtis, Buffett, Stefan, Miller

**NEVADA**

Russell

**NEW HAMPSHIRE**

Merrow, Cotton

**NEW JERSEY**

Wolverton, Hand, Auchincloss, Mathews, Eaton, Case, Thomas, Canfield, Towe, Hartley, Sundstrom, Kean, Norton, Hart

**NEW MEXICO**

Fernandez, Lusk

**NEW YORK**

Macy, Hall, Leonard W., Latham, McMahon, Ross, Nodar, Delaney, Pfeifer, Keogh, Somers, Heffernan, Rooney, O'Toole, Rayfiel, Celler, Buck, Coudert, Marcantonio, Klein, Bloom, Javits, Powell, Lynch, Rabin, Buckley, Potts, Gwinn, Gamble, St. George, LaPevre, Kearney, Byrne, Taylor, Kilburn, Fuller, Riehlman, Hall, Edwin Arthur, Taber, Cole, Keating, Wadsworth, Andrews, Elsaesser, Butler, Reed

**NORTH CAROLINA**

Bonner, Kerr, Barden, Cooley, Folger, Durham, Clark, Deane, Doughton, Jones, Bulwinkle, Redden

**NORTH DAKOTA**

Lemke, Robertson

**OHIO**

Elston, Hess, Burke, Jones, Clevenger, McCowen, Brown, Smith, Ramey, Jenkins, Brehm, Vorys, Weichel, Huber, Griffiths, Carson, McGregor, Lewis, Kirwan, Feighan, Crosser, Bolton, Bender

3

United States or of any State or any sub-division thereof, for such copies or information furnished for official use in connection with the official duties of such officers or agencies.

H. R. 2353. A bill to authorize the patenting of certain public lands to the State of Montana or to the Board of County Commissioners of Hill County, Mont., for public-park purposes.

Page 3, lines 12 and 13, strike out " (1) that the lands shall be used for park and recreational purposes; (2) ".

Page 3, line 11, strike out all following "provide", and all of line 12 before "that".

Page 3, line 3, after "Interior", strike out the semicolon, insert a period and strike out balance of bill.

Ordered, That the Clerk request the concurrence of the Senate in said bills, severally.

The Committee of the Whole House on the State of the Union was discharged from further consideration of the bill of the Senate (S. 64) granting the consent of Congress for the construction of a dam across Dan River in North Carolina, when said bill was considered and read twice, ordered to be read a third time, and read a third time by title, and passed.

Ordered, That the Clerk notify the Senate thereof.

The Committee of the Whole House on the State of the Union was discharged from further consideration of the bill (H. R. 1465) to relieve collectors of customs of liability for failure to collect certain special tonnage duties and light money, and for other purposes.

When said bill was read by title.

On motion of Mr. TRIMBLE, by unanimous consent, the Committee on the Judiciary was discharged from further consideration of the bill of the Senate (S. 132) to relieve collectors of customs of liability for failure to collect certain special tonnage duties and light money, and for other purposes, when said bill was considered and read twice, ordered to be read a third time, was read a third time by title, and passed.

Ordered, That the Clerk notify the Senate thereof.

By unanimous consent, the bill H. R. 1465, a similar House bill, was laid on the table.

The Committee of the Whole House on the State of the Union was discharged from further consideration of the bill (H. R. 2076) to limit the time within which the General Accounting Office shall make final settlement of the monthly or quarterly accounts of fiscal officers, and for other purposes.

When said bill was read by title.

On motion of Mr. TRIMBLE, by unanimous consent, the bill of the Senate (S. 273) to limit the time within which the General Accounting Office shall make final settlement of the monthly or quarterly accounts of fiscal officers, and for

other purposes, was taken from the Speaker's table, considered and read twice, ordered to be read a third time, was read a third time by title, and passed.

Ordered, That the Clerk notify the Senate thereof.

By unanimous consent, the bill H. R. 2076, a similar House bill, was laid on the table.

The Committee of the Whole House on the State of the Union was discharged from further consideration of the bill (H. R. 2238) to amend section 327 (h) of the Nationality Act of 1940.

When said bill was read by title.

On motion of Mr. TRIMBLE, by unanimous consent, the bill of the Senate (S. 460) to amend section 327 (h) of the Nationality Act of 1940, was taken from the Speaker's table, considered and read twice, ordered to be read a third time, was read a third time by title, and passed.

Ordered, That the Clerk notify the Senate thereof.

By unanimous consent, the bill H. R. 2238, a similar House bill, was laid on the table.

The Committee of the Whole House on the State of the Union was discharged from further consideration of the bill (H. R. 1999) to authorize additional allowances of good time and the payment of compensation to prison inmates performing exceptionally meritorious or outstanding services.

When said bill was read by title.

On motion of Mr. TRIMBLE, by unanimous consent, the bill of the Senate (S. 534) to authorize additional allowances of good time and the payment of compensation to prison inmates performing exceptionally meritorious or outstanding services, was taken from the Speaker's table, considered and read twice, ordered to be read a third time, was read a third time by title, and passed.

Ordered, That the Clerk notify the Senate thereof.

By unanimous consent the bill H. R. 1999, a similar House bill, was laid on the table.

The bill (H. R. 797) to change the name of the Lugert-Altus irrigation project in the State of Oklahoma to the W. C. Austin project was read by title.

On motion of Mr. TRIMBLE, by unanimous consent, the bill of the Senate (S. 214) to change the name of the Lugert-Altus irrigation project in the State of Oklahoma to the W. C. Austin project, was taken from the Speaker's table, considered and read twice, ordered to be read a third time, was read a third time by title, and passed.

Ordered, That the Clerk notify the Senate thereof.

By unanimous consent, the bill H. R. 797, a similar House bill, was laid on the table.

The Committee of the Whole House on the State of the Union was discharged

from further consideration of the bill (H. R. 1467) to amend the act entitled "An act to punish acts of interference with the foreign relations, the neutrality, and the foreign commerce of the United States, to punish espionage, and better to enforce the criminal laws of the United States, and for other purposes," of June 15, 1917, as amended, and the Alien Registration Act, 1940, to increase the penalties for violation of such acts.

When said bill was considered and read twice.

Mr. SPRINGER submitted the following amendments, which were agreed to:

Page 1, line 4, after "follows:", insert Strike the word "six" where it appears in section 1 (a) and substitute in lieu thereof the word "seven;".

Page 1, line 4, strike out "Renumber" and insert renumber.

The bill, as amended, was ordered to be engrossed and read a third time, was read a third time by title and passed.

Ordered, That the Clerk request the concurrence of the Senate in said bill.

The Committee of the Whole House on the State of the Union was discharged from further consideration of the bill (H. R. 2083) to codify and enact into positive law, title 17 of the United States Code, entitled "Copyrights."

When said bill was considered and read twice.

The following amendments, recommended by the Committee on the Judiciary, were agreed to:

Page 21, line 19, strike out "June 3" and insert June 18.

Page 34, line 9, strike out comma after "Puerto Rico" and "and the couris of first instance of the Philippine Islands".

Page 34, line 18, strike out "bill in equity" and insert complaint.

Page 39, line 22, strike out "March 2, 1913" and insert July 1, 1909.

Mr. ROBSION submitted the following amendment, which was agreed to:

Page 41, lines 8 and 9, strike out "and not exceeding $1 per annum for the catalogs issued during the year for any one class of subjects".

The bill, as amended, was ordered to be engrossed and read a third time, was read a third time by title and passed.

Ordered, That the Clerk request the concurrence of the Senate in said bill.

The Committee of the Whole House on the State of the Union was discharged from further consideration of the bill (H. R. 3190) to revise, codify, and enact into positive law title 18 of the United States Code, entitled "Crimes and Criminal Procedure."

When said bill was considered and read twice.

Mr. WALTER submitted the following amendment, which was agreed to:

Page 434, line 11, after "of", strike out "three" and insert five.

The bill, as amended, was ordered to be engrossed and read a third time, was read a third time by title, and passed.

Ordered, That the Clerk request the concurrence of the Senate in said bill.

### BILLS PASSED OVER

By unanimous consent, bills of the following titles were severally passed over without prejudice and retain their places on the Consent Calendar:

S. 26. An act to make criminally liable persons who negligently allow prisoners in their custody to escape.

S. 321. An act to amend section 17 of the Pay Readjustment Act of 1942, so as to increase the pay of cadets and midshipmen at the service academies, and for other purposes.

H. R. 174. A bill to amend section 26, title I, chapter 1, of the act entitled "An act making further provision for a civil government for Alaska, and for other purposes," approved June 6, 1900 (31 Stat. 321), as amended by the act of May 31, 1938 (52 Stat. 588).

H. R. 673. A bill to repeal certain provisions authorizing the establishing of priorities in transportation by merchant vessels.

H. R. 966. A bill to amend section 14 of the Veterans' Preference Act of June 27, 1944 (58 Stat. 387).

H. R. 2229. A bill to amend the act of June 25, 1938, relating to the appointment of postmasters under civil service.

H. R. 2759. A bill to amend the Interstate Commerce Act, as amended, so as to provide limitations on the time within which actions may be brought for the recovery of undercharges and overcharges by or against common carriers by motor vehicle, common carriers by water, and freight forwarders.

H. R. 3214. A bill to revise, codify, and enact into law title 28 of the United States Code entitled "Judicial Code and Judiciary."

### BILLS OBJECTED TO

One objection being made to the consideration of the bill (H. R. 1556) to provide basic authority for the performance of certain functions and activities of the Bureau of Reclamation, said bill was passed over on the Consent Calendar, under the rule.

Three objections being made to the consideration of the joint resolution (H. Res. 152) relating to the marketing of Virginia sun-cured tobacco under the Agricultural Adjustment Act of 1938, as amended, said bill was stricken from the Consent Calendar.

Motions severally made to reconsider the votes whereby each bill and joint resolution on the Consent Calendar was disposed of today were, by unanimous consent, severally laid on the table.

### COMMITTEE ON ARMED SERVICES

Mr. ALLEN of Illinois, from the Committee on Rules, called up the following resolution (H. Res. 141):

Resolved, That the Committee on Armed Services, acting as a whole or by subcommittee, is authorized and directed to conduct thorough studies and investigations relating to matters coming within the jurisdiction of such committee under rule XI (1) (c) of the Rules of the House of Representatives, and for such purposes the said committee or any subcommittee thereof is authorized to sit and act during the present session of Congress at such times and places, whether the House is in session, has recessed, or has adjourned, to hold such hearings, and to require by subpena or otherwise the attendance and testimony of such witnesses and the production of such books, records, papers, and documents, as it deems necessary. Subpenas may be issued over the signature of the chairman of the committee, or by any member designated by such chairman, and may be served by any person designated by such chairman or member. The chairman of the committee or any member thereof may administer oaths to witnesses.

The committee shall report to the House of Representatives during the present session of Congress the results of its studies and investigations with such recommendations for legislation or otherwise as the committee deems desirable.

When said resolution was considered.

After debate,

On motion of Mr. ALLEN of Illinois, the previous question was ordered on the resolution to its adoption or rejection, and under the operation thereof, the resolution was agreed to.

A motion to reconsider the vote whereby said resolution was agred to was, by unanimous consent, laid on the table.

### COMMITTEE ON PUBLIC LANDS

Mr. ALLEN of Illinois, from the Committee on Rules, called up the following resolution (H. Res. 93):

Resolved, That the Committee on Public Lands (now comprised of the six former Committees on Insular Affairs, Territories, Public Lands, Irrigation and Reclamation, Mines and Mining, and Indian Affairs) may make investigations into any matter within its jurisdiction. For the purpose of making such investigations the committee, or any subcommittee thereof, is authorized to sit and act during the present Congress at such times and places within or outside the United States, whether the House is in session, has recessed, or has adjourned, to hold such hearings, and to require, by subpena or otherwise, the attendance and testimony of such witnesses and the production of such books, records, correspondence, memoranda, papers, and documents, as it deems necessary. Subpenas may be issued under the signature of the chairman of the committee or any member of the committee designated by him, and may be served by any person designated by such chairman or member.

When said resolution was considered.

After debate,

On motion of Mr. ALLEN of Illinois, the previous question was ordered on the resolution to its adoption or rejection, and, under the operation thereof, the resolution was agreed to.

A motion to reconsider the vote whereby said resolution was agreed to was, by unanimous consent, laid on the table.

### COMMITTEE ON INTERSTATE AND FOREIGN COMMERCE

Mr. ALLEN of Illinois, from the Committee on Rules, called up the following resolution (H. Res. 153):

Resolved, That, effective from January 3, 1947, the Committee on Interstate and Foreign Commerce, or any duly authorized subcommittee thereof, is authorized to continue the investigation begun under authority of House Resolution 318 of the Seventy-ninth Congress, and for such purposes shall have the same power and authority as that conferred by such House Resolution 318. The committee may from time to time make such preliminary reports to the House as it deems advisable; and shall, during the present Congress, report to the House the results of its investigation, together with such recommendations as it deems advisable. Any report submitted when the House is not in session shall be filed with the Clerk of the House.

When said resolution was considered.

After debate,

On motion of Mr. ALLEN of Illinois, the previous question was ordered on the resolution to its adoption or rejection, and, under the operation thereof, the resolution was agreed to.

A motion to reconsider the vote whereby said resolution was agreed to, was, by unanimous consent, laid on the table.

### ENROLLED BILLS SIGNED

Mr. LeCOMPTE, from the Committee on House Administration, reported that that committee had examined and found truly enrolled bills of the House of the following titles, which were thereupon signed by the Speaker:

H. R. 450. An act providing for the conveyance to the town of Marblehead, in the State of Massachusetts, of Marblehead Military Reservation for public use.

H. R. 1098. An act to authorize the segregation and expenditure of trust funds held in joint ownership by the Shoshone and Arapaho Tribes of the Wind River Reservation.

### ENROLLED SENATE JOINT RESOLUTION SIGNED

The SPEAKER announced his signature to an enrolled joint resolution of the Senate of the following title:

S. J. Res. 103. Joint resolution to permit United States common communications carriers to accord free communication privileges to official participants in the world telecommunications conferences to be held in the United States in 1947.

### LEAVE TO ADDRESS THE HOUSE

On motion of Mr. BENNETT of Missouri, by unanimous consent,

346

Secretary of War inactivating the United States Army post at Camp McCoy and requesting that steps be taken to prevent such order from taking effect; to the Committee on Armed Services.

PRIVATE BILLS AND RESOLUTIONS

Under clause 1 of rule XXII, private bills and resolutions were introduced and severally referred as follows:

By Mr. EBERHARTER:

H. R. 3424. A bill for the relief of Mrs. Mitsu Yajima; to the Committee on the Judiciary.

By Mr. EVINS:

H. R. 3425. A bill for the relief of the Lebanon Woolen Mills, Inc.; to the Committee on the Judiciary.

H. R. 3426. A bill for the relief of Mr. and and Mrs. Lem Motlow; to the Committee on the Judiciary.

H. R. 3427. A bill for the relief of Mrs. Mary H. Overall and Thomas I. Baker; to the Committee on the Judiciary.

By Mr. FOGARTY:

H. R. 3428. A bill granting an annuity to Emma June Wilbur; to the Committee on the Judiciary.

PETITIONS, ETC.

Under clause 1 of rule XXII, petitions and papers were laid on the Clerk's desk and referred as follows:

488. By Mr. BRADLEY of California: Petition of Mrs. C. D. Rasmussen, of Long Beach, Calif., and 226 other residents of the Eighteenth Congressional District of California, urging favorable consideration and support of S. 265, a bill to prevent the interstate transmission of advertising of all alcoholic beverages and the broadcasting of all such advertising by means of radio; to the Committee on Interstate and Foreign Commerce.

489. By Mr. BRAMBLETT: Petition of Elmer J. Grain, Monterey, Calif., and others, regarding immediate cashing of veterans' terminal-leave bonds; to the Committee on Veterans' Affairs.

490. By Mr. HOLMES: Petitions of residents of Walla Walla, Wash., urging passage of S. 265, a bill to prohibit transportation of alcoholic-beverage advertising and broadcasting alcoholic-beverage advertising over the radio; to the Committee on Interstate and Foreign Commerce.

491. By Mr. LEWIS: Petition of 94 residents of Cadiz and surrounding communities, in support of S. 265, a bill to prohibit the transportation of alcoholic-beverage advertising in interstate commerce and broadcasting of alcoholic-beverage advertising over the radio; to the Committee on Interstate and Foreign Commerce.

492. By Mr. McGREGOR: Petition of citizens of Mount Vernon, Ohio (Knox County), in behalf of passage of S. 265, a bill to prohibit the transportation of alcoholic-beverage advertising in interstate commerce and the broadcasting of alcoholic-beverage advertising over the radio; to the Committee on Interstate and Foreign Commerce.

493. By Mr. COTTON: Petition of the executive committee of the New Hampshire Bar Association, urging Congress to endorse H. R. 1639; to the Committee on Education and Labor.

494. By Mr. SMITH of Wisconsin: Resolution of May 8, 1947, by Kenosha Jewish Welfare Fund, Kenosha, Wis., calling upon the United States Government to take the initiative during the special meeting of the General Assembly of the United Nations in championing the program for Palestine, to insist that the Jewish people be accorded full representation in all deliberations regarding Palestine within the United Nations through the Jewish agency, and to bring weight to bear on the mandatory government to the end that an interim policy based upon the existing mandate be set in motion at once providing for immediate large-scale Jewish immigration into Palestine and the removal of discriminatory land restrictions in the Jewish national home; to the Committee on Foreign Affairs.

495. By Mr. WELCH: California State Senate Resolution No. 17, relative to the development of deposits of mineral ores in the United States; to the Committee on Public Lands.

496. Also, California State Senate Resolution No. 6, memorializing and petitioning the President and Congress of the United States to pass appropriate legislation to enable veterans who obtained guaranteed loans prior to December 28, 1945, to come within provisions of Public Law 268; to the Committee on Veterans' Affairs.

497. By the SPEAKER: Petition of officers and members of the Townsend conference from the Eighth District of the State of Massachusetts, petitioning consideration of their resolution with reference to endorsement of the Townsend plan, H. R. 16; to the Committee on Ways and Means.

498. Also, petition of members of Townsend Club, No. 2, Boston, Mass, petitioning consideration of their resolution with reference to endorsement of the Townsend plan; to the Committee on Ways and Means.

499. Also, petition of Donald F. Dooley, Janesville, Wis., and others, petitioning consideration of their resolution with reference to request for an impartial investigation of the Allis-Chalmers Manufacturing Co.'s behavior in an 11-month strike; to the Committee on Education and Labor.

TUESDAY, MAY 13, 1947

The House was called to order by the Speaker.

The Journal of the proceedings of Monday, May 12, 1947, was read and approved.

COMMUNICATION.

Executive and other communications, pursuant to clause 2, rule XXIV, were referred as follows.

675. A letter from the Director, Administrative Office of the United States Courts, transmitting a draft of a proposed bill to provide for the appointment of an additional circuit judge for the seventh judicial circuit; to the Committee on the Judiciary.

676. A letter from the Under Secretary of Agriculture, transmitting a report on the cooperation of the United States with Mexico in the control and eradication of foot-and-mouth disease; to the Committee on Agriculture.

677. A communication from the President of the United States, transmitting a revised estimate of appropriation for the fiscal year 1948 involving an increase of $8,650,000 for the Navy Department (H. Doc. No. 246); to the Committee on Appropriations and ordered to be printed.

CALENDAR WEDNESDAY BUSINESS DISPENSED WITH

On motion of Mr. HALLECK, by unanimous consent,

Ordered, That business in order for consideration on Wednesday, May 14, 1947, under clause 7, rule XXIV, the Calendar Wednesday rule, be dispensed with.

COMMITTEES GRANTED LEAVE TO SIT

By unanimous consent, committees were granted leave to sit during general debate in the House, as follows:

Committee on Interstate and Foreign Commerce, for today;

Committee on Banking and Currency, for today; and

Subcommittee No. 3 of the Committee on Merchant Marine and Fisheries, tomorrow.

BILLS PRESENTED TO THE PRESIDENT

Mr. LeCOMPTE, from the Committee of House Administration, reported that that committee did on May 12, 1947, present to the President, for his approval, bills of the House of the following titles:

H. R. 450. An act providing for the conveyance to the town of Marblehead, in the State of Massachusetts, of Marblehead Military Reservation, for public use.

H. R. 1098. An act to authorize the segregation and expenditure of trust funds held in joint ownership by the Shoshone and Arapaho Tribes of the Wind River Reservation.

STATE, JUSTICE, AND COMMERCE, AND JUDICIARY APPROPRIATION BILL, 1948

Mr. STEFAN moved that the House resolve itself into the Committee of the Whole House on the State of the Union for the consideration of the bill (H. R. 3311) making appropriations for the Departments of State, Justice, and Commerce, and the Judiciary, for the fiscal year ending June 30, 1948, and for other purposes.

Pending which,

On motion of Mr. STEFAN, by unanimous consent,

Ordered, That the time for general debate run on today, be equally divided

# NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

## To all to whom these presents shall come. Greeting:

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf, under the seal of the National Archives of the United States, that the attached reproduction(s) is a true and ~~ect~~ copy of documents in his custody.

| SIGNATURE | | |
|---|---|---|
| *[signature]* | | |
| NAME Richard H. Hunt | DATE 05/11/07 | |
| TITLE Director Center for Legislative Archives | | |
| NAME AND ADDRESS OF DEPOSITORY The National Archives Washington, D.C. 20408 | | |

NA FORM APR 85 1407-A

App.    7

# JOURNAL OF THE SENATE

OF THE

# UNITED STATES OF AMERICA

———

# FIRST SESSION

OF THE

# EIGHTIETH CONGRESS

BEGUN AND HELD AT THE CITY OF WASHINGTON
JANUARY 3, 1947, IN THE ONE HUNDRED
AND SEVENTY-FIRST YEAR OF THE
INDEPENDENCE OF THE
UNITED STATES



UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1948

# JOURNAL OF THE SENATE OF THE UNITED STATES OF AMERICA

Eightieth Congress, First Session    :    :    :    Beginning January 3, 1947

The FIRST SESSION of the EIGHTIETH CONGRESS commenced this day, conformably to the Constitution of the United States, and the Senate met in its Chamber at the city of Washington.

## FRIDAY, JANUARY 3, 1947

The office of President pro tempore being vacant by expiration of the term of Hon. KENNETH D. McKELLAR as Senator from the State of Tennessee.

The Secretary of the Senate (Hon. Leslie L. Biffle), under rule I, paragraph 2, called the Senate to order, and the Chaplain, Rev. Frederick Brown Harris, D. D., of Washington, D. C., offered prayer.

### SENATOR-ELECT FROM KENTUCKY

The Secretary laid before the Senate the credentials of JOHN SHERMAN COOPER, duly chosen a Senator by the qualified electors of the State of Kentucky on November 5, 1946, to fill the vacancy in the term ending January 3, 1949, caused by the resignation of Hon. Albert Benjamin Chandler; which were ordered to be placed on file.

### SENATOR-ELECT FROM IDAHO

The Secretary laid before the Senate the credentials of HENRY DWORSHAK, duly chosen a Senator by the qualified electors of the State of Idaho on November 5, 1946, to fill the vacancy in the term ending January 3, 1949, caused by the death of Hon. John Thomas; which were ordered to be placed on file.

### SENATOR-ELECT FROM VIRGINIA

The Secretary laid before the Senate the credentials of A. WILLIS ROBERTSON, duly chosen a Senator by the qualified electors of the State of Virginia on November 5, 1946, to fill the vacancy in the term ending January 3, 1949, caused by the death of Hon. Carter Glass; which were ordered to be placed on file.

### SENATOR-ELECT FROM ALABAMA

The Secretary laid before the Senate the credentials of JOHN SPARKMAN, duly chosen a Senator by the qualified electors of the State of Alabama on November 5, 1946, to fill the vacancy in the term ending January 3, 1949, caused by the death of Hon. John H. Bankhead; which were ordered to be placed on file.

### CREDENTIALS OF SENATORS-ELECT FOR 6-YEAR TERM

The credentials of the following Senators-elect, duly chosen by the qualified electors of their respective States for the term of 6 years beginning January 3, 1947, were laid before the Senate by the Secretary, and ordered to be placed on file:

Mr. RAYMOND E. BALDWIN, from the State of Connecticut;

Mr. THEODORE GILMORE BILBO, from the State of Mississippi;

Mr. OWEN BREWSTER, from the State of Maine;

Mr. JOHN W. BRICKER, from the State of Ohio;

Mr. HUGH BUTLER, from the State of Nebraska;

Mr. HARRY F. BYRD, from the State of Virginia;

Mr. HARRY P. CAIN, from the State of Washington;

Mr. DENNIS CHAVEZ, from the State of New Mexico;

Mr. TOM CONNALLY, from the State of Texas;

Mr. ZALES N. ECTON, from the State of Montana;

Mr. RALPH E. FLANDERS, from the State of Vermont;

Mr. SPESSARD L. HOLLAND, from the State of Florida;

Mr. IRVING M. IVES, from the State of New York;

Mr. WILLIAM E. JENNER, from the State of Indiana;

Mr. JAMES P. KEM, from the State of Missouri;

Mr. HARLEY M. KILGORE, from the State of West Virginia;

Mr. WILLIAM F. KNOWLAND, from the State of California;

Mr. WILLIAM LANGER, from the State of North Dakota;

Mr. HENRY CABOT LODGE, JR., from the State of Massachusetts;

Mr. GEORGE W. MALONE, from the State of Nevada;

Mr. EDWARD MARTIN, from the State of Pennsylvania;

Mr. JOSEPH R. McCARTHY, from the State of Wisconsin;

Mr. ERNEST W. McFARLAND, from the State of Arizona;

Mr. J. HOWARD McGRATH, from the State of Rhode Island and Providence Plantations;

Mr. KENNETH D. McKELLAR, from the State of Tennessee;

Mr. HERBERT R. O'CONOR, from the State of Maryland;

Mr. JOSEPH C. O'MAHONEY, from the State of Wyoming;

Mr. H. ALEXANDER SMITH, from the State of New Jersey;

Mr. EDWARD J. THYE, from the State of Minnesota;

Mr. ARTHUR H. VANDENBERG, from the State of Michigan;

Mr. ARTHUR V. WATKINS, from the State of Utah; and

Mr. JOHN J. WILLIAMS, from the State of Delaware.

### SENATOR-ELECT FROM CONNECTICUT

The Secretary laid before the Senate the credentials of RAYMOND E. BALDWIN, duly chosen a Senator by the qualified electors of the State of Connecticut on November 5, 1946, to fill the vacancy in the term ending January 3, 1947, caused by the death of Hon. Francis Maloney; which were ordered to be placed on file.

### SENATOR-DESIGNATE FROM VERMONT

The Secretary laid before the Senate the credentials of RALPH E. FLANDERS, duly appointed a Senator by the Governor of Vermont on November 1, 1946, to represent said State in the Senate of the United States for the term ending January 3, 1947, to fill the vacancy caused by the resignation of Hon. Warren R. Austin; which were ordered to be placed on file.

### SENATOR-ELECT FROM CALIFORNIA

The Secretary laid before the Senate the credentials of WILLIAM F. KNOWLAND, duly chosen a Senator by the qualified electors of the State of California on November 5, 1946, to fill the vacancy in the term ending January 3, 1947, caused by the death of Hon. Hiram W. Johnson; which were ordered to be placed on file.

### SENATOR-ELECT FROM OHIO

The Secretary laid before the Senate the credentials of KINGSLEY A. TAFT, duly chosen a Senator on November 5, 1946, by the qualified electors of the State of Ohio, to fill the vacancy in the term ending January 3, 1947, caused by the

3

(c) The expenses of the committee, which shall not exceed $ , shall be paid one-half from the contingent fund of the Senate and one-half from the contingent fund of the House of Representatives, upon vouchers signed by the chairman or vice chairman. Disbursements to pay such expenses shall be made by the Secretary of the Senate out of the contingent fund of the Senate, such contingent fund to be reimbursed from the contingent fund of the House of Representatives in the amount of one-half of disbursements so made.

FEDERAL LABOR RELATIONS ACT OF 1947

The Senate resumed the consideration of the bill (S. 1126) to amend the National Labor Relations Act, to provide additional facilities for the mediation of labor disputes affecting commerce, to equalize legal responsibilities of labor organizations and employers, and for other purposes.

The question being on agreeing to the amendment proposed by Mr. MURRAY (for himself and others) as a substitute for the bill, as amended,

Pending debate,

On motion by Mr. LANGER to further amend the bill by inserting on page 6, after line 24, provisions defining the terms "superintendent" and "assistant superintendent",

Pending debate,

MESSAGE FROM THE HOUSE

A message from the House of Representatives by Mr. Maurer, one of its clerks:

*Mr. President:* The House of Representatives has passed each without amendment the following bills of the Senate:

S. 64. An act granting the consent of Congress for the construction of a dam across Dan River in North Carolina;

S. 132. An act to relieve collectors of customs of liability for failure to collect certain special tonnage duties and light money, and for other purposes;

S. 214. An act to change the name of the Lugert-Altus irrigation project in the State of Oklahoma to the W. C. Austin project.

S. 273. An act to limit the time within which the General Accounting Office shall make final settlement of the monthly or quarterly accounts of fiscal officers, and for other purposes;

S. 460. An act to amend section 327 (h) of the Nationality Act of 1940; and

S. 534. An act to authorize additional allowances of good time and the payment of compensation to prison inmates performing exceptionally meritorious or outstanding services.

The House has passed the following bills in which it requests the concurrence of the Senate:

H. R. 84. An act to amend the Nationality Act of 1940, as amended;

H. R. 239. An act to further perfect the consolidation of the Lighthouse Service with the Coast Guard;

H. R. 1179. An act to aid in defraying the expenses of the Seventeenth Triennial Convention of the World's Woman's Christian Temperance Union to be held in this country in June 1947;

H. R. 1203. An act to provide compensation to persons performing the duties of postmasters at post offices of the fourth class during annual and sick leave of the postmasters;

H. R. 1237. An act to regulate the marketing of economic poisons and devices, and for other purposes;

H. R. 1362. An act to permit certain naval personnel to count all active service rendered under temporary appointment as warrant or commissioned officers in the United States Navy and the United States Naval Reserve, or in the United States Marine Corps and the United States Marine Corps Reserve, for purposes of promotion to commissioned warrant officer in the United States Navy or the United States Marine Corps, respectively;

H. R. 1371. An act to authorize the Secretary of the Navy to appoint, for supply duty only, officers of the line of the Marine Corps, and for other purposes;

H. R. 1412. An act to grant to the Arthur Alexander Post, No. 68, the American Legion, of Belzoni, Miss., all of the reversionary interest reserved to the United States in lands conveyed to said post pursuant to act of Congress approved June 29, 1938;

H. R. 1467. An act to amend the act entitled "An act to punish acts of interference with the foreign relations, the neutrality, and the foreign commerce of the United States, to punish espionage, and better to enforce the criminal laws of the United States, and for other purposes," of June 15, 1917, as amended, and the Alien Registration Act, 1940, to increase the penalties for violation of such acts;

H. R. 1565. An act to codify and enact into positive law, title 1 of the United States Code, entitled "General Provisions";

H. R. 1566. An act to codify and enact into positive law, title 6 of the United States Code, entitled "Flag and Seal, Seat of Government, and the States";

H. R. 1567. An act to codify and enact into positive law, title 6 of the United States Code, entitled "Official and Penal Bonds";

H. R. 1874. An act to amend the act entitled "An act to provide that the United States shall aid the States in the construction of rural post roads, and for other purposes," approved July 11, 1916, as amended and supplemented, and for other purposes;

H. R. 2054. An act to amend the act of April 14, 1930, to provide increased retired pay for certain members of the former Life Saving Service;

H. R. 2083. An act to codify and enact into positive law title 17 of the United States Code, entitled "Copyrights";

H. R. 2084. An act to codify and enact into positive law title 9 of the United States Code, entitled "Arbitration";

H. R. 2181. An act relating to institutional on-farm training for veterans;

H. R. 2237. An act to correct an error in section 342 (b) (8) of the Nationality Act of 1940, as amended;

H. R. 2331. An act to amend section 20a of the Interstate Commerce Act;

H. R. 2353. An act to authorize the patenting of certain public lands to the State of Montana or to the Board of County Commissioners of Hill County, Mont., for public-park purposes;

H. R. 2368. An act to amend paragraph 8 of part VII, Veterans Regulation No. 1 (a), as amended, to authorize an appropriation of $3,000,000 as a revolving fund in lieu of $1,500,000 now authorized, and for other purposes;

H. R. 2573. An act to authorize the Director of the United States Geological Survey to produce and sell copies of aerial or other photographs and mosaics, and photographic or photostatic reproductions of records, on a reimbursement of appropriations basis;

H. R. 2654. An act to authorize the Secretary of the Treasury to grant to the mayor and City Council of Baltimore, State of Maryland, a permanent easement for the purpose of installing, maintaining, and servicing a subterranean water main in, on, and across the land of the United States Coast Guard station called Lazaretto depot, Baltimore, Md.;

H. R. 3029. An act to provide for the acquisition of a site and for preparation of plans and specifications for a courthouse to accommodate the United States Court of Appeals for the District of Columbia and the District Court of the United States for the District of Columbia; and

H. R. 3190. An act to revise, codify, and enact into positive law title 18 of the United States Code, entitled "Crimes and Criminal Procedure."

HOUSE BILLS REFERRED

The bills this day received from the House of Representatives for concurrence were severally read the first and second times by unanimous consent.

*Ordered,* That the bills H. R. 84, H. R. 1467, H. R. 1565, H. R. 1566, H. R. 1567, H. R. 2083, H. R. 2084, H. R. 2237, and H. R 3190 be referred to the Committee on the Judiciary;

That the bills H. R. 239, H. R. 2054, H. R. 2331, and H. R. 2654 be referred to the Committee on Interstate and Foreign Commerce;

That the bill H. R. 1179 be referred to the Committee on Foreign Relations;

That the bill H. R. 1203 be referred to the Committee on Civil Service;

That the bill H. R. 1237 be referred to the Committee on Agriculture and Forestry;

That the bills H. R. 1362 and 1371 be referred to the Committee on Armed Services;

## MESSAGE FROM THE HOUSE

A message from the House of Representatives by Mr. Maurer, one of its clerks:

*Mr. President:* The House of Representatives insists upon its amendments to the bill (S. 938) to provide for assistance to Grece and Turkey; it agrees to the conference asked by the Senate on the disagreeing votes of the two Houses thereon, and has appointed Mr. EATON, Mr. MUNDT, Mr. JONKMAN, Mr. BLOOM, and Mr. KEE managers at the same on its part.

## RELIEF TO PEOPLE OF COUNTRIES DEVASTATED BY WAR

The Senate resumed the consideration of the joint resolution (H. J. Res. 153) providing for relief assistance to the people of countries devastated by war.

The question being on agreeing to the reported amendment, as amended, striking out all after the resolving clause and inserting in lieu thereof other words,

Pending debate,

## SENATORS EXCUSED FROM ATTENDANCE

The following-named Senators, on their own request, were excused from attendance upon the Senate for the periods indicated:

Mr. LANGER, for 1 week;

Mr. CAPEHART, until Monday next;

Mr. FLANDERS, for the balance of the week;

Mr. STEWART, for a few days; and

Mr. McCARRAN, for 2 weeks.

## EXECUTIVE BUSINESS

During legislative session, certain executive business was transacted by unanimous consent, as in executive session.

## RECESS

On motion by Mr. WHITE, at 7 o'clock and 43 minutes p. m.,

The Senate took a recess until 11 o'clock a. m. tomorrow.

## WEDNESDAY, MAY 14, 1947

*(Legislative day of Monday, April 21, 1947)*

The PRESIDENT pro tempore called the Senate to order at 11 o'clock a. m., and the Chaplain offered prayer.

## JOURNAL

On motion by Mr. WHITE, and by unanimous consent,

The Journal of the proceedings of Tuesday, May 13, 1947, was approved.

## MESSAGE FROM THE HOUSE

A message from the House of Representatives by Mr. Swanson, one of its clerks:

*Mr. President:* The Speaker of the House of Representatives having signed six enrolled bills, viz, S. 64, S. 132, S. 214, S. 273, S. 460, and S. 534, I am directed to bring the same to the Senate for the signature of its President.

The President of the United States has informed the House that he approved and signed the following acts:

On April 16, 1947:

H. R. 1943. An act to establish a permanent Nurse Corps of the Army and the Navy and to establish a Women's Medical Specialist Corps in the Army.

On April 25, 1947:

H. R. 731. An act to establish the Theodore Roosevelt National Memorial Park; to erect a monument in memory of Theodore Roosevelt in the village of Medora, N. Dak., and for other purposes.

On April 29, 1947:

H. R. 2404. An act to suspend certain import taxes on copper.

On May 1, 1947:

H. R. 2849. An act making appropriations to supply deficiencies in certain appropriations for the fiscal year ending June 30, 1947, and for other purposes.

## ENROLLED BILLS SIGNED

The Secretary reported that he had examined and found truly enrolled the following bills:

S. 64. An act granting the consent of Congress for the construction of a dam across Dan River in North Carolina;

S. 132. An act to relieve collectors of customs of liability for failure to collect certain special tonnage duties and light money, and for other purposes;

S. 214. An act to change the name of the Lugert-Altus irrigation project in the State of Oklahoma to the W. C. Austin project;

S. 273. An act to limit the time within which the General Accounting Office shall make final settlement of the monthly or quarterly accounts of fiscal officers, and for other purposes;

S. 460. An act to amend section 327 (h) of the Nationality Act of 1940; and

S. 534. An act to authorize additional allowances of good time and the payment of compensation to prison inmates performing exceptionally meritorious or outstanding services.

The PRESIDENT pro tempore thereupon signed the same.

## QUESTION OF QUORUM

Mr. WHITE raised a question as to the presence of a quorum;

Whereupon

The PRESIDENT pro tempore directed the roll to be called;

When

Eighty-four Senators answered to their names, as follows:

| | | |
|---|---|---|
| Aiken | Downey | Jenner |
| Ball | Dworshak | Johnson, Colo. |
| Barkley | Eastland | Johnston, S. C. |
| Brewster | Eaton | Kem |
| Bricker | Ellender | Kilgore |
| Bridges | Ferguson | Knowland |
| Brooks | Fulbright | Lodge |
| Buck | George | Lucas |
| Bushfield | Green | McCarthy |
| Butler | Gurney | McClellan |
| Byrd | Hatch | McFarland |
| Cain | Hawkes | McGrath |
| Capper | Hayden | McKellar |
| Chavez | Hickenlooper | McMahon |
| Connally | Hill | Magnuson |
| Cooper | Hoey | Malone |
| Cordon | Holland | Martin |
| Donnell | Ives | Maybank |

| | |
|---|---|
| Millikin | Robertson, Va. | Tydings |
| Moore | Robertson, Wyo. | Umstead |
| Morse | Russell | Vandenberg |
| Murray | Saltonstall | Watkins |
| Myers | Smith | Wherry |
| O'Conor | Sparkman | White |
| O'Daniel | Taft | Wiley |
| O'Mahoney | Taylor | Williams |
| Pepper | Thomas, Okla. | Wilson |
| Reed | Thye | Young |

A quorum being present,

## COMMITTEES AUTHORIZED TO SIT DURING THE SESSION OF THE SENATE

The following committees were authorized to sit during the session of the Senate, on today:

A subcommittee of the Committee on the Judiciary considering a nomination, and another subcommittee of the same committee considering S. 104; on the request of Mr. WILEY; and

The Committee on Rules and Administration; on the request of Mr. BROOKS.

## SENATORS EXCUSED FROM ATTENDANCE

Mr. CAIN and Mr. HATCH, on their own request, were excused from attendance upon the Senate for tomorrow.

## REPORT ON COOPERATION OF UNITED STATES WITH MEXICO IN CONTROL AND ERADICATION OF FOOT-AND-MOUTH DISEASE

The PRESIDENT pro tempore laid before the Senate a communication from the Under Secretary of Agriculture, transmitting, pursuant to law, a report on cooperation of the United States with Mexico in the control and eradication of foot-and-mouth disease, under the act of February 28, 1947, for the 30-day period ended April 29, 1947; which, with the accompanying report, was referred to the Committee on Agriculture and Forestry.

## TRANSFER OF NAVY VESSEL

The PRESIDENT pro tempore laid before the Senate a communication from the Secretary of the Navy, transmitting, pursuant to law, a report of the transfer of the U. S. S. *Texas* to the State of Texas under the provisions of section 1 of the act of August 7, 1946; which was referred to the Committee on Armed Services.

## EXPORT-IMPORT BANK OF WASHINGTON AUDIT REPORTS OF 1945 AND 1946

The PRESIDENT pro tempore laid before the Senate two communications from the Comptroller General of the United States, transmitting, pursuant to law, two audit reports of the Export-Import Bank of Washington for the fiscal years ended June 30, 1945, and 1946, respectively; which, with the accompanying reports, were referred to the Committee on Expenditures in the Executive Departments.

## SUPPLEMENTAL ESTIMATE OF APPROPRIATION

The PRESIDENT pro tempore laid before the Senate a communication from the President of the United States, together with a letter from the Acting Director of the Bureau of the Budget, transmitting, pursuant to law, supplemental estimates of appropriations for

## NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

### To all to whom these presents shall come. Greeting:

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf,
under the seal of the National Archives of the United States, that the attached reproduction(s) is a true and
copy of documents in his custody.

| SIGNATURE | |
|---|---|
| *[signature]* | |
| NAME | DATE |
| Richard H. Hunt | 05/11/07 |
| TITLE Director | |
| Center for Legislative Archives | |
| NAME AND ADDRESS OF DEPOSITORY | |
| The National Archives Washington, D.C. 20408 | |

NA FORM APR 85 1407-A

App. 12

# JOURNAL

OF THE

# HOUSE OF REPRESENTATIVES
# OF THE UNITED STATES

## EIGHTIETH CONGRESS
## SECOND SESSION

BEGUN AND HELD AT THE CITY OF
WASHINGTON : : JANUARY 6, 1948

IN THE ONE HUNDRED AND SEVENTY-SECOND YEAR
OF THE INDEPENDENCE OF THE UNITED STATES



Prepared for John Andrews, Clerk of the House of Representatives, by Eugene F. Sharkoff,
Journal Clerk; Raymond P. Johnson and Thomas Cleary, Assistants

UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1949

# JOURNAL
## OF THE
# HOUSE OF REPRESENTATIVES

### CONGRESS OF THE UNITED STATES

Begun and held at the Capitol, in the city of Washington, in the District of Columbia, on Tuesday, the 6th day of January, in the year of our Lord nineteen hundred and forty-eight, being the *second session* of the EIGHTIETH CONGRESS, held under the Constitution of the Government of the United States, and in the one hundred and seventy-second year of the Independence of the United States.

---

**TUESDAY, JANUARY 6, 1948**

On which day, being the day fixed by Public Law 358, Eightieth Congress, first session, approved August 4, 1947, and by the Constitution of the United States, as amended, for the meeting of Congress, JOSEPH W. MARTIN, Jr. (a Representative from the State of Massachusetts) the Speaker, called the House to order.

RESIGNATION OF MEMBER

The SPEAKER laid before the House the following communication, which was read, as follows:

DECEMBER 30, 1947.

Hon. JOSEPH W. MARTIN, JR.,
*Speaker, House of Representatives,*
*Washington, D. C.*

MY DEAR MR. SPEAKER: This is to advise you that I have this date tendered to the Governor of New York my resignation as Representative of the Twenty-fourth Congressional District of the State of New York in the Congress of the United States, such resignation to take effect as of midnight of December 31, 1947.

Sincerely yours,

BENJAMAN J. RABIN.

By direction of the Speaker, the roll of Members was called alphabetically, when the following Members answered to their names:

[Roll No. 1]

Abernethy
Albert
Allen, Calif.
Allen, Ill.
Almond
Andersen,
H. Carl
Anderson, Calif.
Andrews, Ala.
Angell
Arends
Arnold
Auchincloss
Bakewell
Banta
Barrett
Bates, Mass.

Battle
Beall
Beckworth
Bender
Bennett, Mo.
Bishop
Blackney
Bland
Bloom
Boggs, Del.
Bolton
Bonner
Bradley
Brehm
Brooks
Brophy
Brown, Ga.
Bryson

Buchanan
Buck
Buckley
Buffett
Bulwinkle
Burke
Burleson
Butler
Byrne, N. Y.
Byrnes, Wis.
Camp
Canfield
Cannon
Carroll
Case, N. J.
Chadwick
Chelf
Chenoweth

Church
Clason
Clevenger
Coffin
Cole, Kans.
Cole, Mo.
Cole, N. Y.
Collmer
Cooper
Corbett
Cotton
Coudert
Courtney
Cox
Crawford
Crosser
Crow
Cunningham
Dague
Davis, Ga.
Davis, Tenn.
Davis, Wis.
Dawson, Utah
Deane
Delaney
Dingell
Dirksen
Dolliver
Dondero
Donohue
Dorn
Doughton
Eaton
Eberharter
Ellis
Elsaesser
Engel, Mich.
Engle, Calif.
Evins
Fallon
Fellows
Fenton
Fisher
Flannagan
Fletcher
Folger
Foote
Forand
Fulton
Garmatz
Gary
Gathings
Gavin
Gearhart
Gillette
Goff
Goodwin
Gordon
Gore
Graham
Grant, Ind.
Griffiths
Gross
Gwinn, N. Y.
Gwynne, Iowa
Hagen
Hale

Hall,
Edwin Arthur
Hall,
Leonard W.
Halleck
Hand
Hardy
Harness, Ind.
Harrison
Hart
Hartley
Harvey
Havenner
Hays
Hedrick
Heffernan
Herter
Heselton
Hess
Hill
Hoffman
Holmes
Hope
Horan
Huber
Jackson, Calif.
Javits
Jenison
Jenkins, Ohio
Jensen
Johnson, Ill.
Johnson, Ind.
Johnson, Okla.
Jones, Ala.
Jones, N. C.
Jones, Wash.
Jonkman
Judd
Karsten, Mo.
Kean
Kearney
Kearns
Keating
Kee
Keefe
Kelley
Kennedy
Keogh
Kerr
Kilday
Kirwan
Klein
Knutson
Kunkel
Landis
Lane
Lanham
Latham
Lea
Lesinski
Lewis
Lichtenwalter
Lodge
Love
Lucas
Ludlow
Lusk

Lyle
Lynch
McConnell
McCowen
McCulloch
McDonough
McDowell
McGarvey
McGregor
McMahon
McMillan, S. C.
Mack
Macy
Madden
Mahon
Maloney
Manasco
Martin, Iowa
Mason
Mathews
Meade, Ky.
Meade, Md.
Merrow
Meyer
Michener
Miller, Conn.
Miller, Md.
Mills
Mitchell
Morgan
Morton
Muhlenberg
Multer
Murdock
Murray, Wis.
Nicholson
Nixon
Nodar
Norblad
Norrell
O'Brien
O'Hara
Owens
Pace
Passman
Patman
Patterson
Paden
Peterson
Pfeifer
Philbin
Phillips, Calif.
Phillips, Tenn.
Pickett
Plumley
Poage
Potter
Potts
Preston
Price, Fla.
Price, Ill.
Priest
Rains
Ramey
Rankin
Rayburn
Reed, N. Y.

Rees
Regan
Rich
Riley
Rizley
R: bertson
Robsion
Rockwell
Rogers, Fla.
Rogers, Mass.
Rohrbough
Rooney
Ross
Russell
Sadlak
St. George
Sanborn
Sarbacher
Sasscer
Schwabe, Okla.
Scoblick
Scott, Hardie
Scott,
Hugh D., Jr.

Scrivner
Sealy-Brown
Sheppard
Short
Sikes
Simpson, Pa.
Smathers
Smith, Kans.
Smith, Maine
Smith, Ohio
Smith, Va.
Smith, Wis.
Snyder
Somers
Spence
Stefan
Stigler
Stratton
Sundstrom
Taber
Talle
Teague
Thomas, N. J.
Thompson

Tibbot
Tollefson
Twyman
Vail
Van Zandt
Vinson
Vorys
Wadsworth
Weichel
Welch
Wheeler
Whitten
Wigglesworth
Williams
Wilson, Ind.
Wilson, Tex.
Winstead
Wolcott
Wood
Woodruff
Worley
Youngblood
Zimmerman

Thereupon the Speaker announced that 322 Members had answered to their names, a quorum.

COMMUNICATIONS

Executive and other communications, pursuant to clause 2, rule XXIV, were referred as follows:

1160. A letter from the Chairman of the Board of Directors of the Tennessee Valley Authority, transmitting the fourteenth annual report, covering the activities of the Authority during the fiscal year beginning July 1, 1946, and ending June 30, 1947; to the Committee on Public Works.

1161. A letter from the director, national legislative commission, the American Legion, transmitting the financial statement of the American Legion up to and including October 31, 1947; to the Committee on Veterans' Affairs.

1162. A letter from the Acting Secretary of the Navy, transmitting a report, as required by Public Law 313, Eightieth Congress, approved August 1, 1947, which authorized the creation of additional positions in the professional and scientific service; to the Committee on Post Office and Civil Service.

3

Page 48, strike out lines 8, 9, 10, and 11 and insert:

*(g) The term "organized unit" when used with respect to a Reserve component shall be deemed to mean a unit in which the members thereof satisfactorily participate in scheduled drills and training periods as prescribed by the Secretary of Defense.*

Page 49, strike out all of sections 22 and 23 and insert:

*Sec. 22. The Congress declares in accordance with our traditional military policy as expressed in the National Defense Act of 1916, as amended, that it is essential that the strength and organization of the National Guard, both ground and air, as an integral part of the first-line defenses of this Nation, be at all times maintained and assured. To this end it is the intent of the Congress that whenever Congress shall determine that units and organizations are needed for the national security in excess of those of the Regular components of the Ground Forces and the Air Forces, and those in active service under this Act, the National Guard of the United States, both ground and air, or such part thereof as may be necessary for a balanced force, shall be ordered to active Federal service and continued therein so long as such necessity exists.*

*Sec. 23. This Act shall be effective upon its enactment.*

The bill, as amended, was ordered to be engrossed and read a third time.

Mr. MARCANTONIO demanded the reading of the engrossed copy of said bill.

### RECESS

On motion of Mr. HALLECK, at 8 o'clock and 12 minutes p. m., the House stood in recess until 10 o'clock a. m. on Friday, June 18, 1948.

### FRIDAY, JUNE 18, 1948

*(Legislative day of Thursday, June 17, 1948)*

### AFTER RECESS

The SPEAKER called the House to order at 10 o'clock a. m.

### FURTHER MESSAGE FROM THE SENATE

A still further message from the Senate, by Mr. Frazier, its legislative clerk, announced that the Senate had passed, with amendments in which the concurrence of the House is requested, a bill of the House of the following title:

H. R. 6771. An act making appropriations for military functions administered by the National Military Establishment for the fiscal year ending June 30, 1949, and for other purposes.

The message also announced that the Senate insists upon its amendments to the foregoing bill, requests a conference with the House on the disagreeing votes of the two Houses thereon, and appoints Mr. GURNEY, Mr. BROOKS, Mr. REED, Mr. FERGUSON, Mr. BRIDGES, Mr. THOMAS of Oklahoma, Mr. HAYDEN, and Mr. RUSSELL to be the conferees on the part of the Senate.

The message also announced that the Senate had passed, with amendments in which the concurrence of the House is requested, a bill of the House of the following title:

H. R. 6248. An act to authorize the Secretary of Agriculture to stabilize prices of agricultural commodities; to amend section 22 of the Agricultural Adjustment Act, reenacted by the Agricultural Marketing Agreement Act of 1937; and for other purposes.

The message also announced that the Senate insists upon its amendments to the foregoing bill, requests a conference with the House on the disagreeing votes of the two Houses thereon, and appoints Mr. AIKEN, Mr. YOUNG, Mr. THYE, Mr. THOMAS of Oklahoma, and Mr. ELLENDER to be the conferees on the part of the Senate.

The message also announced that the Senate agrees to the report of the committee of conference on the disagreeing votes of the two Houses on the amendment of the House to a joint resolution (S. J. Res. 117) entitled "Joint resolution providing for acceptance by the United States of America of the Constitution of the International Labor Organization Instrument of Amendment, and further authorizing an appropriation for payment of the United States share of the expenses of membership and for expenses of participation by the United States."

### CORRECTION OF ROLL CALLS

On motion of Mr. BLATNIK, by unanimous consent, roll call No. 111 was corrected to show him voting in the negative.

On motion of Mr. DAVIS of Wisconsin, by unanimous consent, roll call No. 113 was corrected to show him present.

### FOOD, DRUG, AND COSMETIC ACT

Mr. LEONARD W. HALL submitted a conference report (Rept. No. 2400) on the disagreeing votes of the two Houses on the amendments of the Senate to the bill (H. R. 4071) to amend sections 301 (k) and 304 (a) of the Federal Food, Drug, and Cosmetic Act, as amended, together with a statement thereon for printing in the Record under the rule.

### MILITARY ESTABLISHMENT APPROPRIATIONS, 1949

On motion of Mr. ENGEL of Michigan, by unanimous consent, the bill (H. R. 6771) making appropriations for military functions administered by the National Military Establishment for the fiscal year ending June 30, 1949, and for other purposes, together with the amendments of the Senate thereto, was taken from the Speaker's table.

When, on motion of Mr. ENGEL of Michigan,

*Resolved,* That the House disagree to the amendments of the Senate to said bill and agree to the conference asked by the Senate on the disagreeing votes of the two Houses thereon.

Thereupon the Speaker announced the appointment of Messrs. ENGEL of Michigan, CASE of South Dakota, TIBBOTT, SCRIVNER, KERR, MAHON, and NORRELL managers on the part of the House at said conference.

*Ordered,* That the Clerk notify the Senate thereof.

### SELECTIVE SERVICE

The SPEAKER laid before the House the unfinished business, being the reading of the engrossed copy of the bill H. R. 6401.

Mr. MARCANTONIO withdrew his demand for the reading of the engrossed copy of said bill.

The bill was then read a third time by title.

Mr. PHILBIN moved to recommit the bill to the Committee on Armed Services.

On motion of Mr. ANDREWS of New York the previous question was ordered on the motion to recommit to its adoption or rejection.

The question being put, viva voce,

Will the House recommit said bill?

The SPEAKER announced that the nays had it.

Mr. MARCANTONIO objected to the vote on the ground that a quorum was not present and not voting.

A quorum not being present,

The roll was called under clause 4, rule XV.

When there appeared— Yeas\_\_\_\_ 125
Nays\_\_\_\_ 283

[Roll No. 118]

Those voting in the affirmative—

| | | |
|---|---|---|
| Allen, Ill. | Gillie | Morris |
| Andersen, | Granger | Murray, Wis. |
| H. Carl | Grant, Ind. | Nicholson |
| Andresen, | Griffiths | Nodar |
| August H. | Gross | O'Hara |
| Arnold | Gwynne, Iowa | O'Konski |
| Barta | Hagen | Pfeifer |
| Barden | Harness, Ind. | Philbin |
| Beall | Havenner | Powell |
| Bender | Heffernan | Rankin |
| Bishop | Hill | Reed, Ill. |
| Blatnik | Hoeven | Reed, N. Y. |
| Bloom | Hoffman | Rees |
| Bolton | Holifield | Rich |
| Bradley | Horan | Rockwell |
| Brehm | Hull | Rooney |
| Buffett | Isaacson | Sabath |
| Bushey | Jenison | Sadowski |
| Butler | Jenkins, Ohio | Schwabe, Mo. |
| Carson | Johnson, Ill. | Schwabe, Okla. |
| Chenoweth | Johnson, Ind. | Scoblick |
| Chiperfield | Jones, Wash. | Scott, Hardie |
| Cole, Mo. | Keefe | Scott, |
| Clevenger | Keogh | Hugh D., Jr. |
| Clippinger | Klein | Shafer |
| Cole, Mo. | Knutson | Short |
| Crosser | Landis | Simpson, Ill. |
| Crow | Lemke | Smith, Kans. |
| Cunningham | Lewis, Ohio | Smith, Ohio |
| Davis, Wis. | Love | Smith, Wis. |
| Dawson, Utah | McCowen | Snyder |
| Delaney | McCulloch | Somers |
| Dolliver | McGarvey | Stanley |
| Donohue | McGregor | Stefan |
| Doughton | Madden | Stevenson |
| Douglas | Maloney | Stratton |
| Elliott | Mansfield | Twyman |
| Ellis | Marcantonio | Vail |
| Elsaeasser | Martin, Iowa | Vursell |
| Feighan | Mason | Welchel |
| Folger | Miller, Conn. | Welch |
| Gallagher | Miller, Nebr. | Youngblood |
| | Mitchell | |

JOURNAL OF THE

hereupon, at my request, the Attorney General on March 19 instituted an action and obtained an injunction in the United States District Court for the Eastern District of Tennessee. This order enjoined both the Corporation and the Council, and all persons in active participation with them, from engaging in any strike or lock-out or from interfering with normal continuance of work, or from making any change in terms or conditions of employment other than by mutual agreement.

On March 24 I reconvened the Board of Inquiry. Negotiations between the parties continued, with the assistance of the Federal Mediation and Conciliation Service. On May 18 the Board of Inquiry submitted to me its second report, stating that the position of the parties remained unaltered and the dispute unsettled.

On June 1 and 2 National Labor Relations Board conducted a secret ballot of the employees to ascertain whether they wished to accept the final offer of settlement as stated and made by the employer. The employees, by a vote of 771 to 26, rejected the employer's last offer. On June 7 the National Labor Relations Board certified to the Attorney General the results of this election. On June 8 the employees at a union meeting took action looking to a possible stoppage if the injunction were lifted and if the employer unilaterally placed in effect the terms proposed in its final offer.

On June 10, pursuant to section 210 of the Labor Management Relations Act, the Attorney General moved the court to discharge the injunction. The injunction was discharged on June 11.

During this period, the parties continued negotiations, with the assistance of the Federal Mediation and Conciliation Service. On June 15 the parties reached agreement on the terms of a new contract.

All parties to this dispute and the Government agencies concerned complied with all legal and procedural requirements of title II of the Labor Management Relations Act, 1947.

A number of additional facts concerning this dispute are set forth in the first and second reports of the board of inquiry. Copies of these reports are transmitted to the Congress with this message.

Both parties are to be commended for achieving settlement of this dispute without an interruption of work.

The dispute at Oak Ridge has raised some question, nevertheless, as to the sufficiency of present collective-bargaining methods in atomic-energy installations.

This question is somewhat different from others which have arisen in the past. On the one hand, it is clear that the national security and the development of the beneficial arts and sciences are bound up with the progress of our atomic-energy program. Thus, every dispute which threatens to seriously impair that program imperils the national health and safety.

On the other hand, it is equally clear that the progress of our atomic-energy program requires the support and drive of broad sectors of the American economy. In order to encourage such support, the Atomic Energy Commission has lodged in its contractors a large measure of responsibility and authority. The progress of the program is equally dependent upon the full and willing support of the men and women who work in atomic-energy plants and laboratories.

Under these circumstances, it is imperative that the most successful techniques of the collective-bargaining process should be adopted for the atomic-energy program.

The objective should be twofold: The parties should continue to enjoy the maximum of voluntary action and freedom of choice; secondly, the public interest must be protected at all times.

I believe that special study should be given to the problem of peaceful and orderly settlement of labor disputes in Government-owned, privately operated atomic-energy installations, such as those at Richland, Wash.; Oak Ridge, Tenn.; Los Alamos, N. Mex.; the Argonne National Laboratory, Chicago, Ill.; and others.

I propose, therefore, to establish a commission composed of men having expert knowledge in the field of labor relations, to study this problem and to make such recommendations as they may find necessary. The commission should explore the question whether any special legislation should be enacted to protect the national interest without depriving management or labor organizations of the initiative and freedom necessary for the progress of our atomic-energy program. The commission should study ways and means of adapting to the atomic-energy program the best of our experience in the complex field of labor relations. The commission should concern itself also with special aspects of the problem, such as questions of bargaining representation, uniformity of working conditions and wages, and procedures for grievance handling.

The commission should concern itself, in short, with the broad code of conduct which should be observed by management and labor in their relations with each other in this vital program.

In appointing this commission I shall request the advice of the Atomic Energy Commission and the Joint Committee on Atomic Energy both as to the membership of the commission and the specific questions to be studied.

I believe that the report of this commission, which should be submitted as soon as possible, will be of great value in guiding contractors, labor organizations, and the Government in this new and vital field. I am confident that this is the best avenue to follow to achieve and maintain that proper balance between freedom and responsibility which is the tradition in all our economic relations, including those between management and labor.

HARRY S. TRUMAN.

THE WHITE HOUSE, June 18, 1948.

The message was referred to the Committee on Education and Labor and ordered to be printed.

MESSAGE FROM THE SENATE

A further message from the Senate by Mr. Carrell, one of its clerks, announced that the Senate had passed, with amendments in which the concurrence of the House is requested, bills of the House of the following titles:

H. R. 3190. An act to revise, codify, and enact into positive law, title 18 of the United States Code, entitled "Crimes and Criminal Procedure."

H. R. 6710. An act to amend the Act entitled "An act to expedite the provision of housing in connection with national defense, and for other purposes," approved October 14, 1940, as amended.

The message also announced that the Senate insists upon its amendment to the foregoing bill, requests a conference with the House on the disagreeing votes of the two Houses thereon, and appoints Mr. CAIN, Mr. BUCK, and Mr. FULBRIGHT to be the conferees on the part of the Senate.

The message also announced that the Senate agrees to the report of the committee of conference on the disagreeing votes of the two Houses on the amendment of the Senate to the bill (H. R. 2192) entitled "An act for the relief of the Massman Construction Company."

The message also announced that the Senate had passed without amendment bills and joint resolutions of the House of the following titles:

H. R. 333. An act for the relief of sundry residents of Alaska, veterans of World War II.

H. R. 371. An act for the relief of Jenness C. Thomas.

H. R. 564. An act for the relief of Sarah Lee Cregg.

H. R. 700. An act for the relief of Anthony Arancio.

H. R. 851. An act for the relief of Adney W. Gray.

H. R. 911. An act for the relief of Kam Fong Chun, Mr. and Mrs. Jose Dias, Joseph De Souza, Mr. and Mrs. Kenneth Ayres, and Jose Oducado.

H. R. 912. An act for the relief of Hiro Higa and Kana Higa.

H. R. 1220. An act for the relief of James Sigler and Frederick P. Vogelsland III.

H. R. 1409. An act for the relief of Frantisek Jiri Pavlik or Georg Pavlik.

H. R. 1490. An act for the relief of the United States Radiator Corp. of Detroit, Mich.

H. R. 1642. An act for the relief of Miss Rosella M. Kostenbader.

H. R. 1779. An act for the relief of the Winona Machine & Foundry Co., a corporation of Winona, Minn.

read a third time, was read a third time by title, and passed.

A motion to reconsider the vote whereby said bill was passed was, by unanimous consent, laid on the table.

Ordered, That the Clerk request the concurrence of the Senate in said bill.

### AMENDING SECTIONS 3108 AND 3250 OF INTERNAL REVENUE CODE

On motion of Mr. GRANT of Indiana, by unanimous consent, the Committee of the Whole House on the State of the Union was discharged from further consideration of the bill (H. R. 6800) to amend sections 3108 and 3250 of the Internal Revenue Code, and for other purposes.

When said bill was considered and read twice, ordered to be engrossed and read a third time, was read a third time by title, and passed.

A motion to reconsider the vote whereby said bill was passed was, by unanimous consent, laid on the table.

Ordered, That the Clerk request the concurrence of the Senate in said bill.

### CRIMES AND CRIMINAL PROCEDURE

On motion of Mr. REED of Illinois, by unanimous consent, the bill (H. R. 3190) to revise, codify, and enact into positive law, title 18 of the United States Code, entitled "Crimes and Criminal Procedure," together with the following amendments of the Senate thereto, was taken from the Speaker's table:

Page 3, following "13. Laws of States adopted for areas within Federal jurisdiction," insert 14. Applicability to Canal Zone.

Page 5, line 4, after "States", insert except the Canal Zone.

Page 8, after line 15 insert:

14. Applicability to Canal Zone.

In addition to the sections of this title which by their terms apply to and within the Canal Zone, the following sections of this title shall likewise apply to and within the Canal Zone: 6, 8, 11, 331, 371, 372, 474, 476, 479, 480, 481, 482, 483, 485, 488, 489, 490, 499, 502, 506, 594, 595, 598, 600, 601, 604, 605, 608, 611, 612, 703, 756, 791, 792, 793, 794, 795, 796, 797, 915, 917, 951, 953, 954, 956, 957, 958, 959, 960, 961, 962, 963, 964, 965, 966, 967, 1017, 1073, 1111, 1364, 1382, 1542, 1543, 1544, 1546, 1584, 1621, 1622, 1761, 1821, 1914, 2151, 2152, 2153, 2154, 2155, 2156, 2199, 2231, 2234, 2235, 2274, 2275, 2277, 2384, 2385, 2388, 2389, 2390, 2421, 2422, 2423, 2424, 3059, 3105, 3109.

Page 91, strike out "610. Contributions by national banks or corporations." and insert 610. Contributions or expenditures by national banks, corporations or labor organizations.

Page 104, strike out lines 4 to 21, inclusive, and insert:

610. Contributions by National Banks, Corporations or Labor Organizations

It is unlawful for any national bank, or any corporation organized by authority of any law of Congress, to make a contribution or expenditure in connection with any election to any political office, or in connection with any primary election or political convention or caucus held to select candidates for any political office, or for any corporation whatever, or any labor organization to make a contribution or expenditure in connection with any election at which Presidential and Vice Presidential electors or a Senator or Representative in, or a Delegate or Resident Commissioner to Congress are to be voted for, or in connection with any primary election or political convention or caucus held to select candidates for any of the foregoing offices, or for any candidate, political committee, or other person to accept or receive any contribution prohibited by this section.

Every corporation or labor organization which makes any contribution or expenditure in violation of this section shall be fined not more than $5,000; and every officer or director of any corporation, or officer of any labor organization, who consents to any contribution or expenditure by the corporation or labor organization, as the case may be, in violation of this section shall be fined not more than $1,000 or imprisoned not more than one year, or both.

For the purposes of this section "labor organization" means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exist for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rate of pay, hours of employment, or conditions of work.

Page 117, line 8, strike out all after "receiver," down to and including "System," in line 15.

Page 118, line 18, strike out all after "care," down to and including "Institution," in line 23.

Page 134, line 19, after "both," insert ; or if he negligently suffers such person to escape, he shall be fined not more than $500 or imprisoned not more than one year, or both.

Page 158, after line 12, insert While any foreign government is a member both of the International Monetary Fund and of the International Bank for Reconstruction and Development, this section shall not apply to the sale or purchase of bonds, securities, or other obligations of such government or any political subdivision thereof or of any organization or association acting for or on behalf of such government or political subdivision, or to making of any loan to such government, political subdivision, organization, or association.

Page 367, strike out lines 15 to 18, inclusive, and insert The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States.

Nothing in this title shall be held to take away or impair the jurisdiction of the courts of the several States under the laws thereof.

Page 415, line 10, after "Zone.", insert District of Columbia.

Page 415, after line 17, insert:

Nothing in this title, anything therein to the contrary notwithstanding, shall in any way limit, supersede, or repeal any such rules heretofore prescribed by the Supreme Court.

Page 416, after line 21, insert:

Nothing in this title, anything therein to the contrary notwithstanding, shall in any way limit, supersede, or repeal any such rules heretofore prescribed by the Supreme Court.

Page 448, lines 24 and 25, strike out "the Revised Statutes (1 U. S. C., sec. 1)" and insert Title 1 of the United States Code.

Page 456, strike out lines 3 to 21, inclusive.

Page 456, line 22, strike out "19" and insert 18.

Page 457, line 3, strike out "20" and insert 19.

Page 457, strike out lines 8 to 15, inclusive, and insert:

Sec. 20. This Act shall take effect September 1, 1948.

Page 457, line 16, strike out "22" and insert 21.

Page 463, about middle of page, strike out

| "July 3 | | 128 | 4, 5 | 40 | 756, 756 | 16 | 755,756" |
|---|---|---|---|---|---|---|---|

Page 467, below middle of page, strike out

| "June 20 | | 634 | 4 | 49 | 1556 | 16 | 705 |
| Do | | 635 | 1, 2 | 49 | 1557 | 22 | 242" |

and insert

| June 20 | | 636 | 1, 2 | 49 | 1557 | 22 | 242 |

Page 470, after

| "June 8 | | 178 | 1, 2, 3 | 59 | 234, 235 | 18 | 241, 241a, 242" |

insert:

| July 31 | | 539 | 9 | 49 | 516 | 31 | 801b |

Page 471, at the end of the schedule of repeals on this page, insert:

| 1917—Apr. 16 | 39 | | 61 | | 82 | 13 | 411 |
| May 16 | 73 | | 61 | | 91 | 10 | 443 |
| June 15 | 217 | | 61 | | 131 | 19 | 444 |
| June 15 | 220 | 50 | 61 | | 130 | 9 | 540 |

When, on motion of Mr. REED of Illinois, said Senate amendments were concurred in.

A motion to reconsider the vote whereby said Senate amendments were concurred in was, by unanimous consent, laid on the table.

Ordered, That the Clerk notify the Senate thereof.

### BUREAU OF RECLAMATION EMERGENCY FUND

On motion of Mr. WELCH, by unanimous consent, the bill (H. R. 3218) to authorize an emergency fund for the Bureau of Reclamation to assure the continuous operation of its irrigation and power systems, together with the following amendment of the Senate thereto, was taken from the Speaker's table.

After line 10, insert:

Sec. 2. The term "unusual or emergency conditions", as used in this Act, shall be construed to mean canal bank

cases; to the Committee on the Judiciary.

By Mr. HARNESS of Indiana:
H. Res. 691. Resolution authorizing the appointment of a select committee to conduct a study and investigation of the organization, personnel, and activities of the Federal Communications Commission; to the Committee on Rules.

By Mrs. ROGERS of Massachusetts:
H. Res. 693. Resolution providing for the consideration of H. R. 6958; to the Committee on Rules.

H. Res. 694. Resolution providing for the further expenses for conducting the study and inspection authorized by House Resolution 120 of the Eightieth Congress; to the Committee on House Administration.

### PRIVATE BILLS AND RESOLUTIONS

Under clause 1 of rule XXII, private bills and resolutions were introduced and severally referred as follows:

By Mr. BLAND:
H. R. 6991. A bill for the relief of Hampton Institute; to the Committee on the Judiciary.

By Mr. GAMBLE:
H. R. 6992. A bill for the relief of the estate of James J. Barnett, deceased; to the Committee on the Judiciary.

By Mr. KLEIN:
H. R. 6993. A bill for the relief of Leonid Zankowsky; to the Committee on the Judiciary.

H. R. 6994. A bill for the relief of Gron Vydaevich; to the Committee on the Judiciary.

H. R. 6995. A bill to authorize the admission of Mrs. Julia Balint to the United States; to the Committee on the Judiciary.

By Mr. MANSFIELD:
H. R. 6996. A bill for the relief of the Montana Engineering & Construction Co.; to the Committee on the Judiciary.

By Mr. REEVES:
H. R. 6997. A bill for the relief of Ferd Owen, Berdie Owen, Gilbert Good, Lela Jen Good, Audit Owen, Wayne Owen, Owen, Has Owen, Marvin Owen, and Gene Owen, doing business as Owen Co.; to the Committee on the Judiciary.

By Mrs. ST. GEORGE:
H. R. 6998. A bill for the relief of Janos Marianne Mero Somogyi; to the Committee on the Judiciary.

### PETITIONS, ETC.

Under clause 1 of rule XXII, petitions and papers were laid on the Clerk's desk and referred as follows:

2105. By the Speaker: Petition of New York Teachers Chapter, American Veterans Committee, petitioning consideration of their resolution with reference to endorsement of the Taft-Ellender-Wagner housing bill; to the Committee on Banking and Currency.

2106. By Mr. CASE of South Dakota: Petition of Mrs. Isaac De Haan, Corsica,

S. Dak., and 14 others, urging the defeat of any legislation proposing the establishing of a universal military training program; to the Committee on Armed Services.

2107. By Mr. GRAHAM: Petition of 17 members of the Winfield Township WCTU, of Butler County, Pa., opposing the Towe bill, H. R. 4278, or recommending prohibiting the sale of beer to trainees, especially those under the age of 21 years; to the Committee on Armed Services.

2108. By Mr. SMITH of Wisconsin: Resolution adopted at Twenty-third Annual Convention of Central Retail Feed Association, Milwaukee, Wis., favoring a change to the hundredweight system for grain; to the Committee on Agriculture.

2109. Also, resolution adopted by Upper Mississippi Valley Water Use Council at its meeting held in Dubuque on June 4, urging Congress to adequately support the United States Geological Survey's program of water investigations; to the Committee on Agriculture.

2110. Also, resolution adopted at Twenty-third Annual Convention of Central Retail Feed Association, Milwaukee, Wis., endorsing legislation to bring into the open all groups whose aim is to overthrow our constitutional form of government; to the Committee on Un-American Activities.

2111. Also, resolution adopted at Twenty-third Annual Convention of Central Retail Feed Association, Milwaukee, Wis., endorsing all legislation which is designed to keep the Commodity Credit Corporation from competing with private business; to the Committee on Banking and Currency.

2112. By Mr. SABBATH: Memorial of the City Council of the City of Chicago, memorializing Congress to provide appropriations for the operation of airtraffic control towers by the Civil Aeronautics Administration in cities throughout the United States; to the Committee on Appropriations.

2113. By the SPEAKER: Petition of New York Teachers Chapter, American Veterans Committee, petitioning consideration of their resolution with reference to endorsement of the Taft-Ellender-Wagner housing bill; to the Committee on Banking and Currency.

2114. By Mr. BUCK: Petition of Dr. and Mrs. Frank E. Becker, containing 1,215 signatures, including those of 223 residents of Staten Island, N. Y., urging the appropriation by the Congress of sufficient funds for the education and general rehabilitation of the Navajo Indians; to the Committee on Public Lands.

### SATURDAY, JUNE 19, 1948

The House was called to order by the Speaker.

The Journal of the legislative day of Thursday June 17, 1948, was read and approved.

### COMMUNICATION

A communication from the Acting Secretary of the Interior, pursuant to clause 2, rule XXIV, transmitting a draft of a proposed bill to promote the settlement and development of the public domain in the Territory of Alaska by facilitating the construction of necessary housing therein, and for other purposes, was taken from the Speaker's table and referred to the Committee on Banking and Currency.

### MESSAGE FROM THE SENATE

A message from the Senate, by Mr. Carrell, one of its clerks, announced that the Senate had passed, with amendments in which the concurrence of the House is requested, bills of the House of the following titles:

H. R. 4044. An act to amend the Trading With the Enemy Act, as amended; to create a commission to make an inquiry and report with respect to war claims; and to provide for relief for internees in certain cases.

H. R. 4816. An act to amend section 624 of the Public Health Service Act so as to provide a minimum allotment of $250,000 to each State for the construction of hospitals.

H. R. 5882. An act to authorize the Secretary of the Army, the Secretary of the Navy, and the Secretary of the Air Force to donate excess and surplus property for educational purposes.

H. R. 6039. An act to authorize the permanent appointment in the Regular Army of one officer in the grade of general and to authorize the permanent appointment in the Regular Air Force of one officer in the grade of general, and other purposes.

H. R. 6116. An act to amend the Trading With the Enemy Act.

H. R. 6527. An act to provide assistance to certain local school agencies overburdened with war-incurred, or postwar national-defense-incurred, enrollments.

H. R. 6641. An act to amend the Civil Service Retirement Act of May 29, 1930, to provide annuities for certain surviving spouses of annuitants retired prior to April 1, 1948.

H. R. 6707. An act to amend the Officer Personnel Act of 1947 (Public Law 381, 80th Cong.), and for other purposes.

The message also announced that the Senate had passed bills and joint resolutions of the following titles, in which the concurrence of the House is requested:

S. 411. An act for the relief of Chetel Pollak Kahan, Magdalena Linda Kahan (wife), and Susanna Kahan (daughter, 10 years old).

S. 2054. An act for the relief of Engebert Axer.

S. 2075. An act for the relief of Wisla Paryzenberg.

S. 2235. An act for the relief of Milo Jurisevic, Mrs. Jelena Jurisevic, Svetozar, Jurisevic, and Radmila Jurisevic,

# HOUSE OF REPRESENTATIVES

### ADJOURNMENT RESOLUTION

Mr. HALLECK submitted the following concurrent resolution (H. Con. Res. 218):

*Resolved,* That when the two Houses adjourn on Sunday, June 20, 1948, they stand adjourned until 12 o'clock meridian on Friday, December 31, 1948, or until 12 o'clock meridian on the third day after the respective Members are notified to reassemble in accordance with section 2 of this resolution, whichever event first occurs.

SEC. 2. The President pro tempore of the Senate, the Speaker of the House of Representatives, the acting majority leader of the Senate, and the majority leader of the House of Representatives, all acting jointly, shall notify the Members of the Senate and the House, respectively, to reassemble whenever, in their opinion, the public interest shall warrant it.

When said concurrent resolution was considered and agreed to.

A motion to reconsider the vote whereby said concurrent resolution was agreed to was, by unanimous consent, laid on the table.

*Ordered,* That the Clerk request the concurrence of the Senate in said concurrent resolution.

### AUTHORIZING THE SPEAKER AND THE PRESIDENT PRO TEMPORE TO SIGN ENROLLED BILLS AND JOINT RESOLUTIONS

Mr. HALLECK submitted the following concurrent resolution (H. Con. Res. 219):

*Resolved,* That notwithstanding the adjournment of the two Houses until December 31, 1948, the Speaker of the House of Representatives and the President pro tempore of the Senate be, and they are hereby, authorized to sign enrolled bills and joint resolutions duly passed by the two Houses and found truly enrolled.

When said concurrent resolution was considered and agreed to.

A motion to reconsider the vote whereby said resolution was considered and agreed to was, by unanimous consent, laid on the table.

*Ordered,* That the Clerk request the concurrence of the Senate in said concurrent resolution.

### AUTHORIZING THE SPEAKER TO APPOINT COMMISSIONS, BOARDS, AND COMMITTEES

On motion of Mr. HALLECK, by unanimous consent,

*Ordered,* That notwithstanding the adjournment of the House until December 31, 1948, the Speaker be authorized to appoint commissions, boards, and committees authorized by law or by the House.

### REPORTS OF INVESTIGATING COMMITTEES TO BE DOCUMENTS OF THE EIGHTIETH CONGRESS

On motion of Mr. HALLECK, by unanimous consent,

*Ordered,* That reports filed with the Clerk following the adjournment of the

House until Friday, December 31, 1948, by committees authorized by the House to conduct investigations may be printed by the Clerk as reports of the Eightieth Congress.

### GENERAL LEAVE TO EXTEND REMARKS

On motion of Mr. HALLECK, by unanimous consent, all Members were granted permission, until the last edition authorized by the Joint Committee on Printing is published, to extend and revise their own remarks in the Record on more than one subject, if they so desire, and also to include therein such short quotations as may be necessary to explain or complete such extension of remarks, but this order shall not apply to any subject matter which may have occurred or to any speech delivered subsequent to the adjournment of Congress until Friday, December 31, 1948.

### CLERK TO RECEIVE MESSAGES

On motion of Mr. HALLECK, by unanimous consent,

*Ordered,* That notwithstanding the adjournment of the House until December 31, 1948, the Clerk be authorized to receive messages from the Senate.

### REPORTS FROM THE OFFICE OF THE COMPTROLLER GENERAL

Mr. HALLECK submitted the following resolution, which was considered and agreed to (H. Res. 700):

*Resolved,* That the reports of the Comptroller General of the United States made to Congress, pursuant to section 5 of the act of February 24, 1945 (56 Stat. 6), and the Government Corporation Control Act (59 Stat. 597), after the adjournment of the House until December 31, 1948, shall be printed as House documents of the second session of the Eightieth Congress.

A motion to reconsider the vote whereby said resolution was agreed to was, by unanimous consent, laid on the table.

### DESIGNATION OF ACTING CLERK OF THE HOUSE OF REPRESENTATIVES

Mr. HALLECK submitted the following resolution, which was considered and agreed to (H. Res. 701):

*Resolved,* That in order that the duties of his office may be discharged in case of his absence or disability or in case his office should become vacant, the Clerk of the House of Representatives on or before June 19, 1948, shall designate a subordinate in his office to perform the duties thereof in any such contingencies until the commencement of the first session of the Eighty-first Congress. Such designee when acting under this authorization, shall subscribe himself as Acting Clerk of the House of Representatives.

The Clerk of the House shall promptly communicate to the Speaker the name of the employee designated hereunder for the information of the House.

A motion to reconsider the vote whereby said resolution was agreed to was, by unanimous consent, laid on the table.

The SPEAKER laid before the House the following communication from the Clerk, which was read:

OFFICE OF THE CLERK,
HOUSE OF REPRESENTATIVES,
*Washington, D. C., June 20, 1948.*
The honorable the SPEAKER,
*House of Representatives.*

SIR: Pursuant to the provisions of House Resolution 701 adopted by the House today, I have designated Mr. Harry Newlin Megill, an official in my office, to discharge the duties contemplated by said resolution.

Respectfully yours,
JOHN ANDREWS,
*Clerk of the House of Representatives.*

### EMPIRE PARLIAMENTARY ASSOCIATION

The SPEAKER announced that, pursuant to the provisions of House Concurrent Resolution 201, Eightieth Congress, he had appointed the following Members on the part of the House to attend the meeting of the Empire Parliamentary Association to be held in Bermuda beginning November 15, 1948: Mr. TALLE, of Iowa, chairman; Mr. CORBETT, of Pennsylvania; Mr. KEFAUVER, of Tennessee; Mr. WORLEY, of Texas.

### INVESTIGATIONS OF PACIFIC ISLANDS AND AREAS

The SPEAKER announced that, pursuant to the provisions of House Concurrent Resolution 129, Eightieth Congress, he had appointed as members of the joint committee to make a study and investigation of the islands and other areas of the Pacific subject to the authority of the United States the following members of the Committee on Public Lands of the House of Representatives: Mr. CRAWFORD, Mr. LEMKE, Mr. FERNANDEZ.

And the following Members of the Committee on Foreign Affairs of the House of Representatives: Mr. FULTON, Mr. JACKSON of California, Mr. PFEIFER.

### FURTHER MESSAGE FROM THE SENATE

A still further message from the Senate, by Mr. Burke, one of its clerks, announced that the Senate had passed without amendment a bill of the House of the following title:

H. R. 5356. An act authorizing a per capita payment of $50 each to the members of the Red Lake Band of Chippewa Indians from the proceeds of the sale of timber and lumber on the Red Lake Reservation.

The message also announced that the Senate agrees to the amendment of the House to the bill (S. 2877) entitled "An act to amend the Reconstruction Finance Corporation Act, as amended," with an amendment, as follows: Strike out, "$35,000,000" and insert in lieu thereof "$40,000,000."

The message also announced that the Senate agrees to the report of the committee of conference on the disagreeing votes of the two Houses on the amend-

772

## JOURNAL OF THE

ment of the House to the bill (S. 2242) entitled "An act to authorize for a limited period of time the admission into the United States of certain European displaced persons for permanent residence, and for other purposes."

The message also announced that the Senate agrees to the amendment of the House to a bill of the Senate of the following title:

S. 2730. An act to credit, in certain cases, military service and training preparatory thereto performed by employees of the postal service.

The message also announced that the Senate agrees to the report of the committee of conference on the disagreeing votes of the two Houses on the amendments of the House to the bill (S. 2830) entitled "An act to extend for 5 years the authority to provide for the maintenance of a domestic tin-smelting industry."

The message also announced that the Senate agrees to the report of the committee of conference on the disagreeing votes of the two Houses on the amendments of the Senate to the bill (H. R. 6771) entitled "An act making appropriations for military functions administered by the National Military Establishment for the fiscal year ending June 30, 1949, and for other purposes."

The message also announced that the Senate agrees to the amendments of the House to the amendments of the Senate Nos. 28 and 30 to the above-entitled bill.

The message also announced that the Senate agrees to the report of the committee of conference on the disagreeing votes of the two Houses on the amendment of the House to the bill (S. 2510) entitled "An act to provide for certain administrative expenses in the Post Office Department, including retainment of pneumatic-tube systems, and for other purposes."

The message also announced that the Senate agrees to the report of the committee of conference on the disagreeing votes of the two Houses on the amendments of the Senate to the bill (H. R. 6629) entitled "An act making supplemental appropriations for the Executive Office and sundry independent executive bureaus, boards, commissions, and offices, for the fiscal year ending June 30, 1949, and for other purposes."

The message also announced that the Senate had passed without amendment a joint resolution of the House of the following title:

H. J. Res. 433. Joint resolution permitting the free entry of certain articles imported to promote international good will, and for other purposes.

The message also announced that the Senate had passed without amendment concurrent resolutions of the House of the following titles:

H. Con. Res. 199. Concurrent resolution authorizing the printing of additional copies of the report (H. Rept. 1920) on the Communist Party of the United

States as an advocate of overthrow of Government by force and violence.

H. Con. Res. 213. Concurrent resolution authorizing the Committee on Expenditures in the Executive Departments, House of Representatives, to have printed for its use additional copies of the hearings held before a special subcommittee of said committee, current Congress, relative to investigation as to the manner in which the United States Board of Parole is operating and as to whether there is a necessity for a change in either the procedure or basic law.

The message also announced that the Senate agrees to the report of the committee of conference on the disagreeing votes of the two Houses on the amendments of the Senate to the bill (H. R. 6481) entitled "An act making appropriations for Government corporations and independent executive agencies for the fiscal year ending June 30, 1949, and for other purposes."

The message also announced that the Senate recedes from its amendments Nos. 1, 2, and 3 to the above-entitled bill; and that the Senate agrees to the amendments of the House to Senate amendments Nos. 7, 13, 16, 24, and 26 to said bill.

The message also announced that the Senate agrees to the amendment of the House to a bill of the Senate of the following title:

S. 1969. An act to amend the Philippine Rehabilitation Act of 1946 in connection with the training of Filipinos as provided for in title III.

The message also announced that the Senate agrees to the amendments of the House to bills of the Senate of the following titles:

S. 1243. An act to provide for the payment of revenues from certain lands into the tribal funds of the Confederated Tribes of the Warm Springs Reservation of Oregon, and for other purposes.

S. 1683. An act to confer jurisdiction on the State of New York with respect to offenses committed on Indian reservations within such State.

The message also announced that the Senate agrees to the report of the committee of conference on the disagreeing votes of the two Houses on the amendments of the Senate to the bill (H. R. 6935) entitled "An act making appropriations for the fiscal year ending June 30, 1948, and for other purposes."

The message also announced that the Senate recedes from its amendment numbered 25 to the above-entitled bill.

The message also announced that the Senate agrees to the report of the committee of conference on the disagreeing votes of the two Houses on the amendment of the House to the bill (S. 1322) entitled "An act to provide a Federal charter for the Commodity Credit Corporation."

The message also announced that the Senate agrees to the report of the com-

mittee of conference on the disagreeing votes of the two Houses on the amendments of the Senate to bills of the House of the following titles:

H. R. 5904. An act to incorporate the Virgin Islands Corporation, and for other purposes.

H. R. 6916. An act to provide for permanent postal rates and additional compensation for postmasters and employees of the field service in the Post Office Department.

H. R. 6801. An act making appropriations for foreign aid for the period beginning April 3, 1948, and ending June 30, 1949, and for other purposes.

The message also announced that the Senate had passed without amendment concurrent resolutions of the House of the following titles:

H. Con. Res. 218. Concurrent resolution providing for adjournment of the two Houses of Congress until December 31, 1948.

H. Con. Res. 219. Concurrent resolution authorizing the signing of enrolled bills following adjournment.

The message also announced that the Senate agrees to the report of the committee of conference on the disagreeing votes of the two Houses on the amendment of the House to the bill (H. R. 6248) entitled "An act to authorize the Secretary of Agriculture to stabilize prices of agricultural commodities; to amend section 22 of the Agricultural Adjustment Act, reenacted by the Agricultural Marketing Agreement Act of 1937; and for other purposes."

The message also announced that the Senate had passed without amendment joint resolutions of the House of the following titles:

H. J. Res. 305. Joint resolution authorizing the issuance of a special series of stamps commemorative of the fiftieth anniversary of the organization of the Rough Riders (First Volunteer United States Cavalry) of the Spanish-American War.

H. J. Res. 327. Joint resolution to authorize the issuance of a special series of stamps commemorative of Juliette Low, founder and organizer of Girl Scouting in the United States of America.

The message also announced that the Senate agrees to the amendments of the House to bills of the Senate of the following titles:

S. 2767. An act to provide assistance in the recruitment and distribution of farm labor for the increased production, harvesting, and preparation for market of agricultural commodities to meet domestic needs and foreign commitments.

S. 2790. An act to amend the Servicemen's Readjustment Act of 1944, as amended, and for other purposes.

ENROLLED BILLS AND JOINT RESOLUTIONS SIGNED

Mr. LeCOMPTE, from the Committee on House Administration, reported that that committee had examined and found truly enrolled bills and joint resolutions

1948                          HOUSE OF REPRESENTATIVES                          775

vice-connected disabilities who have dependents.

H. R. 2826. An act to increase the rates of service-connected death compensation payable to certain widows, children, and dependent parents of persons who served in the active military or naval service, and for other purposes.

H. J. Res. 37. Joint resolution requesting the President to proclaim February as National Freedom Day.

S. J. Res. 206. Joint resolution consenting to an interstate boundary compact by and between the States of Michigan, Minnesota, and Wisconsin.

And then,

### ADJOURNMENT

On motion of Mr. HALLECK, pursuant to House Concurrent Resolution 218, at 9 o'clock and 56 minutes a. m., June 20, 1948, the House adjourned until 12 o'clock meridian on Friday, December 31, 1948.

### REPORTS OF COMMITTEES OF PUBLIC BILLS AND RESOLUTIONS

Under clause 2 of rule XIII, reports of committees were delivered to the Clerk for printing and reference to the proper calendar, as follows:

Mr. WELCH: Committee on Public Lands. H. R. 6697. A bill to authorize the sale and grant to the city of Los Angeles, Calif., of certain interests in public lands, and repealing a certain act; with amendments (Rept. No. 2429). Referred to the Committee of the Whole House on the State of the Union.

Mr. WOLVERTON: Committee on Interstate and Foreign Commerce. Report of the activity of the Committee on Interstate and Foreign Commerce, Eightieth Congress; without amendment (Rept. No. 2433). Referred to the Committee of the Whole House on the State of the Union.

Mr. REES: Committee on Post Office and Civil Service. Report on the survey and study of the postal service; without amendment (Rept. No. 2434). Referred to the Committee of the Whole House on the State of the Union.

Mr. HOFFMAN: Committee on Expenditures in the Executive Departments. Seventeenth intermediate report on investigation as to the manner in which the United States Board of Parole is operating; without amendment (Rept. No. 2441). Referred to the Committee of the Whole House on the State of the Union.

Mr. WEICHEL: Committee on Merchant Marine and Fisheries. Senate Joint Resolution 219. Joint resolution to continue until March 1, 1949, the authority of the United States Maritime Commission to make provisions for certain ocean-transportation service to, from, and within Alaska; without amendment (Rept. No. 2447). Referred to the Committee of the Whole House on the State of the Union.

### CHANGE OF REFERENCE

Under clause 3 of rule XXII, the Committee on Ways and Means was dis-

charged from the consideration of the bill (H. R. 5849) to amend the Federal Alcohol Administration Act, and for other purposes, and the same was referred to the Committee on Interstate and Foreign Commerce.

### PUBLIC BILLS AND RESOLUTIONS

Under clause 3 of rule XXII, public bills and resolutions were introduced and severally referred as follows:

By Mr. HARDIE SCOTT:
H. R. 6999. A bill to provide for capital-gain treatment with respect to income received on the redemption of certain United States saving bonds; to the Committee on Ways and Means.

By Mr. BARTLETT:
H. R. 7000. A bill authorizing municipalities o the Territory of Alaska to enact transaction taxes; to the Committee on Public Lands.

By Mr. WELCH:
H. R. 7001. A bill to aid the settlement and development of Alaska; to the Committee on Public Lands.

H. R. 7002. A bill to settle and extinguish land claims to the public domain in the Territory of Alaska; to the Committee on Public Lands.

By Mr. WOLCOTT:
H. R. 7003. A bill to provide for a cash allowance for uniforms for employees of the United States Government; to the Committee on Post Office and Civil Service.

By Mr. MARCANTONIO:
H. R. 7004. A bill repealing section 202 (e) of the Sugar Act of 1948; to the Committee on Agriculture.

By Mr. FULTON:
H. R. 7005. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mr. WEICHEL:
H. R. 7006. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mr. KELLEY:
H. R. 7007. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis; to the Committee on Interstate and Foreign Commerce.

By Mr. McDOWELL:
H. R. 7008. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mr. MORGAN:
H. R. 7009. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of

multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mr. McMAHON:
H. R. 7010. A bill to provide for the admission to the United States of certain persons who served in the Polish Army, and for other purposes; to the Committee on the Judiciary.

By Mr. MEADE of Kentucky:
H. R. 7011. A bill to amend section 2 of the act entitled "An act to supplement existing laws against unlawful restraints and monopolies, and for other purposes," as amended; to the Committee on the Judiciary.

By Mr. SANBORN:
H. R. 7012. A bill to promote a sound monetary system; to the Committee on Banking and Currency.

By Mr. SMATHERS:
H. R. 7013. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mrs. BOLTON:
H. R. 7014. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis; to the Committee on Interstate and Foreign Commerce.

By Mr. CORBETT:
H. R. 7015. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mr. EATON:
H. R. 7016. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mr. McDONOUGH:
H. R. 7017. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mr. PFEIFER:
H. R. 7018. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mr. BARTLETT:
H. R. 7019. A bill to promote the settlement and development of the public domain in the Territory of Alaska by facilitating the construction of necessary housing therein, and for other purposes; to the Committee on Banking and Currency.

H. R. 7020. A bill to authorize a program of useful public works for the development of the Territory of Alaska; to the Committee on Public Lands.

By Mr. JENKINS of Pennsylvania:
H. R. 7021. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis; to the Committee on Interstate and Foreign Commerce.

By Mr. VAN ZANDT:
H. R. 7022. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mr. EBERHARTER:
H. R. 7023. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mr. KERSTEN of Wisconsin:
H. R. 7024. A bill to amend an act entitled "An act to supplement existing laws against unlawful restraints and monopolies, and for other purposes," approved October 15, 1914 (38 Stat. 730), as amended; to the Committee on the Judiciary.

By Mr. JAVITS:
H. R. 7025. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mr. BUCHANAN:
H. R. 7026. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mr. CHELF:
H. R. 7027. A bill to amend the Public Health Service Act to provide for research and investigation with respect to the cause, prevention, and treatment of multiple sclerosis, and for other purposes; to the Committee on Interstate and Foreign Commerce.

By Mr. McMAHON:
H J. Res. 435. Joint resolution to establish a commission to investigate and study the entire field of educational nursing; to the Committee on Interstate and Foreign Commerce.

By Mr. SOMERS:
H. Res. 695. Resolution authorizing an investigation of conditions in Palestine; to the Committee on Rules.

By Mr. MULTER:
H. Res. 696. Resolution authorizing an investigation of conditions in Palestine; to the Committee on Rules.

By Mr. LeCOMPTE:
H. Res. 697. Resolution providing expenses for conducting the investigation

incurred by the select committee authorized by House Resolution 691, which was referred to the Committee on House Administration.

By Mr. DONOHUE:
H. Res. 698. Resolution calling upon Congress to take effective action against the spread of inflation and the high cost of living; to the Committee on Banking and Currency.

PRIVATE BILLS AND RESOLUTIONS

Under clause 1 of rule XXII, private bills and resolutions were introduced and severally referred as follows:

By Mr. JENKINS of Pennsylvania:
H. R. 7028. A bill for the relief of Maria Forbes; to the Committee on the Judiciary.

By Mr. McCORMACK:
H. R. 7029. A bill for the relief of John J. O'Mara; to the Committee on the Judiciary.

By Mr. PHILBIN:
H. R. 7030. A bill for the relief of Adalbert (Bela) Juth; to the Committee on the Judiciary.

PETITIONS, ETC.

Under clause 1 of rule XXII, petitions and papers were laid on the Clerk's desk and referred as follows:

2115. By Mr. KEARNEY: Petition by the members of Otsego County (N. Y.) Pomona Grange, urging that the Congress of the United States take immediate steps to appropriate money to set up a laboratory for the study and research of the causes, remedies, and final eradication of the hoof-and-mouth disease; to the Committee on Appropriations.

2116. By Mrs. ROGERS of Massachusetts: Petition of the General Court of Massachusetts, relative to the recognition of the state of Israel and the lifting of the embargo on arms to Palestine; to the Committee on Foreign Affairs.

APPOINTMENTS BY THE SPEAKER SUBSEQUENT TO ADJOURNMENT

INVESTIGATION OF FEDERAL COMMUNICATIONS COMMISSION

The SPEAKER, pursuant to the authority conferred upon him by House Resolution 691, Eightieth Congress, and the order of the House of June 19, 1948, empowering him to appoint commissions, boards, and committees authorized by law or by the House, did on June 29, 1948, appoint as members of the select committee to conduct a study and investigation of the organization, personnel, and activities of the Federal Communications Commission the following Members of the House: Hon. FOREST A. HARNESS, Indiana, chairman; Hon. J EONARD W. HALL, New York; Hon. CHARLES H. ELSTON, Ohio; Hon. J. PERCY PRIEST, Tennessee; Hon. OREN HARRIS, Arkansas.

WASHINGTON AND LEE UNIVERSITY BICENTENNIAL COMMISSION

The SPEAKER, pursuant to the authority conferred upon him by Public Law 636, Eightieth Congress, and the order of the House of June 19, 1948, empowering him to appoint commissions,

boards and committees authorized by law or by the House, did on July 9, 1948, appoint as members of the United States Washington and Lee University Bicentennial Commission the following members on the part of the House to serve with himself: Hon. CLARENCE J. BROWN, Ohio; Hon. JAMES W. WADSWORTH, New York; Hon. JOHN W. FLANNAGAN, Jr., Virginia; Hon. FADJO CRAVENS, Arkansas.

A FURTHER MESSAGE FROM THE SENATE SUBSEQUENT TO ADJOURNMENT

A message from the Senate, received by the Clerk of the House on June 24, 1948, announced that the Senate had passed a concurrent resolution of the following title in which the concurrence of the House is requested:

S. Con. Res. 59. Concurrent resolution relative to negotiations with the Canadian Government concerning the construction of railroads in Alaska and the establishment of reciprocal tariff and immigration arrangements.

BILLS AND JOINT RESOLUTIONS ENROLLED SUBSEQUENT TO ADJOURNMENT

Mr. LeCOMPTE, from the Committee on House Administration, reported that that committee had examined and found truly enrolled bills and joint resolutions of the House of the following titles:

H. R. 333. An act for the relief of sundry residents of Alaska, the veterans of World War II.

H. R. 2009. An act for the relief of the estate of Vito Abarno.

H. R. 2269. An act for the relief of Frank A. Constable.

H. R. 2798. An act to amend section 5, Home Owners' Loan Act of 1933, and for other purposes.

H. R. 3190. An act to revise, codify, and enact into positive law title 18 of the United States Code, entitled "Crimes and Criminal Procedure."

H. R. 3416. An act to provide for the establishment of the Pensacola National Monument.

H. R. 4044. An act to amend the Trading with the Enemy Act, as amended; to create a commission to make an inquiry and report with respect to war claims; and to provide for relief for internees in certain cases.

H. R. 4917. An act to provide further benefits for certain employees of the United States who are veterans of World War II and lost opportunity for probational civil-service appointments by reason of their service in the armed forces of the United States, and who, due to service-connected disabilities, are unable to perform the duties of the positions for which examinations were taken.

H. R. 5416. An act to promote the interests of the Fort Hall Indian irrigation project, Idaho, and for other purposes.

H. R. 5882. An act to authorize the Secretary of the Army, the Secretary of the Navy, and the Secretary of the Air Force to donate excess and surplus property for educational purposes.

H. R. 5904. An act to continue the Virgin Islands Company as an agency of the United States.

H. R. 6248. An act to authorize the Secretary of Agriculture to stabilize prices of agricultural commodities; to amend section 22 of the Agricultural Adjustment Act, reenacted by the Agricultural Marketing Agreement Act of 1937; and for other purposes.

H. R. 6402. An act to provide for extension of the terms of office of the present members of the Atomic Energy Commission.

H. R. 6448. An act to authorize the Administrator of Veterans' Affairs to convey certain land in Tennessee to the city of Johnson City.

H. R. 6465. An act to amend and supplement section 2 of the act approved August 30, 1935, relating to the construction and financing of toll bridges over the Delaware River by the Delaware River Joint Toll Bridge Commission of the Commonwealth of Pennsylvania and the State of New Jersey.

H. R. 6481. An act making appropriations for Government corporations and independent executive agencies for the fiscal year ending June 30, 1949, and for other purposes.

H. R. 6527. An act to provide assistance to certain local school agencies overburdened with war-incurred or post-war national-defense-incurred enrollments.

H. R. 6641. An act to amend the Civil Service Retirement Act of May 29, 1930, to provide annuities for certain surviving spouses of annuitants retired prior to April 1, 1948.

H. R. 6771. An act making appropriations for military functions administered by the National Military Establishment for the fiscal year ending June 30, 1949, and for other purposes.

H. R. 6801. An act making appropriations for foreign aid, and for other purposes.

H. R. 6829. An act making supplemental appropriations for the Executive Office and sundry independent executive bureaus, boards, commissions, and offices for the fiscal year ending June 30, 1949, and for other purposes.

H. R. 6916. An act to provide for permanent postal rates and to provide pay increases for Government employees.

H. R. 6935. An act making appropriations to supply deficiencies in certain appropriations for the fiscal year ending June 30, 1948, and for other purposes.

H. R. 6808. An act to permit refund or credit to brewers of taxes paid on beer lost in bottling operations.

H. J. Res. 190. Joint resolution authorizing the printing and binding of Cannon's Procedure in the oHouse of Representatives and providing that the same shall be subject to copyright by the author.

H. J. Res. 305. Joint resolution authorizing the issuance of a special series of stamps commemorative of the fiftieth anniversary of the organization of the Rough Riders (First Volunteer U. S. Cavalry) of the Spanish-American War.

H. J. Res. 327. Joint resolution to authorize the issuance of a special series of stamps commemorative of Juliette Low, founder and organizer of Girl Scouting in the United States of America.

H. J. Res. 433. Joint resolution permitting the free entry of certain articles imported to promote international good will, and for other purposes.

ENROLLED BILLS AND JOINT RESOLUTION SIGNED SUBSEQUENT TO ADJOURNMENT

The SPEAKER, pursuant to the authority granted him by House Concurrent Resolution 219, second session of the Eightieth Congress, did on June 22, 1948, sign enrolled bills and joint resolutions of the House of the following titles:

H. R. 333. An act for the relief of sundry residents of Alaska, the veterans of World War II.

H. R. 2009. An act for the relief of the estate of Vito Abarnot.

H. R. 2268. An act for the relief of Frank A. Constable.

H. R. 2798. An act to amend section 5, Home Owners' Loan Act of 1933, and for other purposes.

H. R. 3190. An act to revise, codify, and enact into positive law title 18 of the United States Code, entitled "Crimes and Criminal Procedure."

H. R. 3416. An act to provide for the establishment of the Pensacola National Monument.

H. R. 4044. An act to amend the Trading With the Enemy Act, as amended; to create a commission to make an inquiry and report with respect to war claims; and to provide for relief for internees in certain cases.

H. R. 4917. An act to provide further benefits for certain employees of the United States who are veterans of World War II and lost opportunity for probational civil-service appointments by reason of their service in the armed forces of the United States, and who, due to service-connected disabilities, are unable to perform the duties of the positions for which examinations were taken.

H. R. 5416. An act to promote the interests of the Fort Hall Indian Irrigation Project, Idaho, and for other purposes.

H. R. 5882. An act to authorize the Secretary of the Army, the Secretary of the Navy, and the Secretary of the Air Force to donate excess and surplus property for educational purposes.

H. R. 5904. An act to continue the Virgin Islands Company as an agency of the United States.

H. R. 6248. An act to authorize the Secretary of Agriculture to stabilize prices of agricultural commodities; to amend section 22 of the Agricultural Adjustment Act, reenacted by the Agricultural Marketing Agreement Act of 1937; and for other purposes.

H. R. 6402. An act to provide for extension of the terms of office of the present members of the Atomic Energy Commission.

H. R. 6448. An act to authorize the Administrator of Veterans' Affairs to convey certain land in Tennessee to the city of Johnson City.

H. R. 6465. An act to amend and supplement section 2 of the act approved August 30, 1935, relating to the construction and financing of toll bridges over the Delaware River by the Delaware River Joint Toll Bridge Commission of the Commonwealth of Pennsylvania and the State of New Jersey.

H. R. 6481. An act making appropriations for Government corporations and independent executive agencies for the fiscal year ending June 30, 1949, and for other purposes.

H. R. 6527. An act to provide assistance to certain local school agencies overburdened with war-incurred or post-war national-defense-incurred enrollments.

H. R. 6641. An act to amend the Civil Service Retirement Act of May 29, 1930, to provide annuities for certain surviving spouses of annuitants retired prior to April 1, 1948.

H. R. 6771. An act making appropriations for military functions administered by the National Military Establishment for the fiscal year ending June 30, 1949, and for other purposes.

H. R. 6801. An act making appropriations for foreign aid, and for other purposes.

H. R. 6829. An act making supplemental appropriations for the Executive Office and sundry independent executive bureaus, boards, commissions, and offices for the fiscal year ending June 30, 1949, and for other purposes.

H. R. 6916. An act to provide for permanent postal rates and to provide pay increases for Government employees.

H. R. 6935. An act making appropriations to supply deficiencies in certain appropriations for the fiscal year ending June 30, 1948, and for other purposes.

H. R. 6808. An act to permit refund or credit to brewers of taxes paid on beer lost in bottling operations.

H. J. Res. 190. Joint resolution authorizing the printing and binding of Cannon's Procedure in the House of Representatives and providing that the same shall be subject to copyright by the author.

H. J. Res. 305. Joint resolution authorizing the issuance of a special series of stamps commemorative of the fiftieth anniversary of the organization of the Rough Riders (First Volunteer U. S. Cavalry) of the Spanish-American War.

H. J. Res. 327. Joint resolution to authorize the issuance of a special series of stamps commemorative of Juliette Low, founder and organizer of Girl Scouting in the United States of America.

H. J. Res. 433. Joint resolution permitting the free entry of certain articles imported to promote international good will, and for other purposes.

SENATE ENROLLED BILLS AND JOINT RESOLUTIONS SIGNED SUBSEQUENT TO ADJOURNMENT

The SPEAKER, pursuant to the authority granted him by House Concurrent Resolution 219, second session, Eightieth Congress, did, on the following—

dates, sign enrolled bills and joint resolutions of the Senate of the following titles:

On June 22, 1948:

S. 418. An act to provide for water-pollution-control activities in the Public Health Service of the Federal Security Agency and in the Federal Works Agency, and for other purposes.

S. 595. An act to provide that the rates of compensation for disabilities incurred in active military or naval service other than in a period of war service shall be equal to 80 percent of the rates payable for similar disabilities incurred during active service in time of war.

S. 1243. An act to provide for the payment of revenues from certain lands into the tribal funds of the Confederated Tribes of the Warm Springs Reservation of Oregon, and for other purposes.

S. 1260. An act to create a commission to hear and determine the claims of certain motor carriers.

S. 1322. An act to provide a Federal charter for the Commodity Credit Corporation.

S. 1683. An act to confer jurisdiction on the State of New York with respect to offenses committed on Indian reservations within such State.

S. 1715. An act for the relief of Archie Hamilton and Delbert Hamilton.

S. 1717. An act for the relief of the estate of William R. Stigall, deceased.

S. 1969. An act to amend the Philippine Rehabilitation Act of 1946 in connection with the training of Filipinos as provided for in title III.

S. 2217. An act conferring jurisdiction upon the Court of Claims of the United States to hear, determine, and render judgment upon the joint claims of Silas Mason Co., Inc.; Walsh Construction Co.; and Atkinson-Kier Co.

S. 2242. An act to authorize for a limited period of time the admission into the United States of certain European displaced persons for permanent residence, and for other purposes.

S. 2281. An act to provide for an air parcel-post service, and for other purposes.

S. 2371. An act validating certain conveyances of the Oregon Short Line Railroad Co. and the Union Pacific Railroad Co. and waiving, relinquishing, and disclaiming all title and all right of reverter and forfeiture of the United States of America to the lands described in said conveyance.

S. 2376. An act to provide a revolving fund for the purchase of agricultural commodities and raw materials to be processed in occupied areas and sold.

S. 2440. An act for the relief of Charles Duncan Montrieth.

S. 2554. An act to promote the common defense by providing for the retention and maintenance of a national reserve of industrial productive capacity, and for other purposes.

S. 2621. An act authorizing the extension of the functions and duties of Federal Prison Industries, Inc., to military disciplinary barracks.

S. 2655. An act to provide for the common defense by increasing the strength of the armed forces of the United States, including the Reserve components thereof, and for other purposes.

S. 2676. An act to authorize the Secretary of the Interior to convey a certain parcel of land in St. Louis County, Minn., to the University of Minnesota.

S. 2692. An act to terminate the retirement system of the Office of the Comptroller of the Currency, and to transfer that retirement fund to the Civil Service Retirement and Disability Fund.

S. 2698. An act to authorize the transfer of horses and equipment owned by the United States Army to the New Mexico Military Institution, a State institution, and for other purposes.

S. 2705. An act to reimburse the James & Phelps Construction Co.

S. 2709. An act for the relief of Stefan Magura and Michal Magura.

S. 2730. An act to include as allowable service under the act of July 6, 1945, service performed in the military forces and on war transfer by employees in the field service of the Post Office Department.

S. 2743. An act providing for the more expeditious determination of certain claims filed by Ute Indians.

S. 2747. An act to amend the Canal Zone Code for the purpose of incorporating the Panama Railroad Company.

S. 2767. An act to provide assistance in the recruitment and distribution of farm labor for the increased production, harvesting, and preparation for market of agricultural commodities to meet domestic needs and foreign commitment.

S. 2794. An act to authorize the Administrator of Veterans' Affairs to prescribe the rates of pay for certain positions at field installations.

S. 2830. An act to extend for 2 years the authority to provide for the maintenance of a domestic tin-smelting industry.

S. 2849. An act to authorize the Administrator of Veterans' Affairs to convey a certain tract of land in the State of Arkansas to Washington County, Ark.

S. 2861. An act to assist by grants-in-aid the Republic of the Philippines in providing medical care and treatment for certain veterans.

S. J. Res. 177. Joint resolution providing for participation by the Government of the United States in the Pan American Railway Congress, and authorizing an appropriation therefor.

S. J. Res. 219. Joint resolution to continue until March 1, 1949, the authority of the United States Maritime Commission to make provision for certain ocean transportation service to, from, and within Alaska.

On June 23, 1948:

S. 165. An act for the relief of Doris E. Snyder.

S. 2790. An act to amend the Servicemen's Readjustment Act of 1944, as amended, and for other purposes.

S. 2877. An act to amend the Reconstruction Finance Corporation Act, as amended.

BILLS AND JOINT RESOLUTIONS PRESENTED TO THE PRESIDENT SUBSEQUENT TO ADJOURNMENT

Mr. LeCOMPTE, from the Committee on House Administration, reported that that committee did on the following dates present to the President, for his approval, bills and joint resolutions of the House of the following titles:

On June 21, 1948:

H. R. 371. An act for the relief of Jenness C. Thomas.

H. R. 564. An act for the relief of Sarah Lee Cregg.

H. R. 700. An act for the relief of Anthony Arancio.

H. R. 703. An act for the relief of Leon Nikolaivich Volkov.

H. R. 851. An act for the relief of Adney W. Gray.

H. R. 911. An act for the relief of Kam Fong Chun, Mr. and Mrs. Jose Dias, Joseph de Souza, Mr. and Mrs. Kenneth Ayres, and Jose Oducado.

H. R. 912. An act for the relief of Hiro Higa and Kana Higa.

H. R. 915. An act to confer jurisdiction upon the District Court of the United States for the Territory of Hawaii to hear, determine, and render judgment on the claims of the executors and trustees of the estate of L. L. McCandless, deceased, as their interests may appear, against the United States of America.

H. R. 1076. An act for the relief of Chester O. Glenn.

H. R. 1220. An act for the relief of James D. Sigler and Frederick P. Vogelsand III.

H. R. 1409. An act for the relief of Frantisek Jiri Pavlik or Georg Pavlik.

H. R. 1490. An act for the relief of the United States Radiator Corp., of Detroit, Mich.

H. R. 1642. An act for the relief of Miss Rosella M. Kostenbader.

H. R. 1733. An act for the relief of G. C. Hedrick.

H. R. 1734. An act for the relief of Gabel Construction Co.

H. R. 1779. For the relief of the Winona Machine & Foundry Co., a corporation of Winona, Minn.

H. R. 1780. An act for the relief of the Cannon Valley Milling Co.

H. R. 1910. An act for the relief of the legal guardian of Robert Lee Threatt, a minor.

H. R. 1930. An act for the relief of the Growers Fertilizer Co., a Florida corporation.

H. R. 2096. An act to amend section 11 of the act approved June 5, 1942 (56 Stat. 317), relating to Mammoth Cave National Park in the State of Kentucky, and for other purposes.

H. R. 2192. An act for relief of the Massman Construction Co.

H. R. 2193. An act for the relief of Robert E. Graham.

mented liquors subject to the internal-revenue tax on fermented liquor.

H. R. 6184. An act for the relief of the East Coast Ship & Yacht Corp., of Noank, Conn.

H. R. 6186. An act for reimbursement of the Hawaiian Dredging Co., Ltd.

H. R. 6224. An act for the relief of John Watkins.

H. R. 6293. An act to amend the act of June 19, 1934, providing for the establishment of the National Archives, so as to provide that certain fees collected by the Archivist shall be available for disbursement in the interest of the National Archives.

H. R. 6318. An act to amend section 3 of the Standard Time Act of March 19, 1918, as amended, relating to the placing of a certain portion of the State of Idaho in the third time zone.

H. R. 6337. An act to provide for the issuance of a license to practice chiropractic in the District of Columbia to Samuel O. Burdette.

H. R. 6412. An act to codify and enact into law title 3 of the United States Code, entitled "The President."

H. R. 6419. An act authorizing the construction, repair, and preservation of certain public works on rivers and harbors for navigation, flood control, and for other purposes.

H. R. 6428. An act to reimburse the Luther Bros. Construction Co.

H. R. 6452. An act to amend section 7 of the act entitled "An act making appropriations to provide for the government of the District of Columbia for the fiscal year ending June 30, 1903, and for other purposes," approved July 1, 1902, as amended.

H. R. 6454. An act to amend the Civil Service Retirement Act of May 29, 1930, as amended, to provide annuities for certain Federal employees who have rendered at least 20 years' service in the investigation, apprehension, or detention of persons suspected or convicted of offenses against the United States.

H. R. 6507. An act to amend subsection 602 (f) of the National Service Life Insurance Act of 1940, as amended, to authorize renewal of level premium term insurance for a second 5-year period, and for other purposes.

H. R. 6598. To amend section 2 of the act entitled "An act to provide for insanity proceedings in the District of Columbia," approved August 9, 1939.

H. R. 6633. An act to authorize an exchange of lands and interests therein between the city of San Diego, Calif., and the United States, and for other purposes.

H. R. 6634. An act to authorize the issuance of a special series of stamps in honor and commemoration of Moina Michael, originator of Flanders Field memorial poppy idea.

H. R. 6638. An act to authorize the course of instruction at the United States Naval Academy to be given to not exceeding four persons at a time from the Republic of the Philippines.

H. R. 6705. An act making appropriations for the Department of the Interior for the fiscal year ending June 30, 1949, and for other purposes.

H. R. 6707. An act to amend the Office Personnel Act of 1947. (Public Law 381, 80th Cong.), and for other purposes.

H. R. 6772. An act making appropriations for the Department of the Navy and the naval service for the fiscal year ending June 30, 1949, and for other purposes.

H. R. 6818. An act to amend title X of the Social Security Act (relating to aid to the blind) so as to provide greater encouragement to blind recipients thereunder to become self-supporting.

H. R. 6822. An act to continue the authorization for the appointment of two additional Assistant Secretaries of State.

H. R. 6860. An act to amend the Federal Airport Act.

H. J. Res. 297. Joint resolution to increase the sum authorized to be appropriated for the presentation to Eire of a statute of Commodore John Barry.

H. J. Res. 421. Joint resolution to authorize and direct the Commissioners of the District of Columbia to investigate and study certain matters relating to parking lots in the District of Columbia.

H. J. Res. 427. Joint resolution correcting act establishing the Theodore Roosevelt National Memorial Park, as amended.

H. J. Res. 428. Joint resolution providing an extension of time for claiming credit or refund with respect to war losses.

H. J. Res. 429. Joint resolution relating to the marital deduction, for estate-tax purposes, in the case of life insurance or annuity payments.

On June 23, 1948:

H. R. 333. An act for the relief of sundry residents of Alaska, veterans of World War II.

H. R. 2009. An act for the relief of the estate of Vito Abarno.

H. R. 2269. An act for the relief of Frank A. Constable.

H. R. 2798. An act to amend section 5, Home Owners' Loan Act of 1933, and for other purposes.

H. R. 3190. An act to revise, codify, and enact into positive law, title 18 of the United States Code, entitled "Crimes and Criminal Procedure."

H. R. 3416. An act to provide for the establishment of the Pensacola National Monument.

H. R. 4044. An act to amend the Trading With the Enemy Act, as amended; to create a commission to make an inquiry and report with respect to war claims; and to provide for relief of internees in certain cases.

H. R. 4917. An act to provide further benefits for certain employees of the United States who are veterans of World War II and lost opportunity for probational civil-service appointments by reason of their service in the armed forces of the United States, and who, due to

service-connected disabilities, are unable to perform the duties of the positions for which examinations were taken.

H. R. 5416. An act to promote the interests of the Fort Hall Indian irrigation project, Idaho, and for other purposes.

H. R. 5882. An act to authorize the Secretary of the Army, the Secretary of the Navy, and the Secretary of the Air Force to donate excess and surplus property for educational purposes.

H. R. 5904. An act to continue the Virgin Islands Company as an agency of the United States.

H. R. 6248. An act to authorize the Secretary of Agriculture to stabilize prices of agricultural commodities; to amend section 22 of the Agricultural Adjustment Act, reenacted by the Agricultural Marketing Agreement Act of 1937; and for other purposes.

H. R. 6402. An act to provide for extension of the terms of office of the present members of the Atomic Energy Commission.

H. R. 6448. An act to authorize the Administrator of Veterans' Affairs to convey certain land in Tennessee to the city of Johnson City.

H. R. 6465. An act to amend and supplement section 2 of the act approved August 30, 1935, relating to the construction and financing of toll bridges over the Delaware River by the Delaware River Joint Toll Bridge Commission of the Commonwealth of Pennsylvania and the State of New Jersey.

H. R. 6481. An act making appropriations for Government corporations and independent executive agencies for the fiscal year ending June 30, 1949, and for other purposes.

H. R. 6527. An act to provide assistance to certain local school agencies overburdened with war-incurred, or postwar national-defense-incurred enrollments.

H. R. 6641. An act to amend the Civil Service Retirement Act of May 29, 1930, to provide annuities for certain surviving spouses of annuitants retired prior to April 1, 1948.

H. R. 6771. An act making appropriations for military functions administered by the National Military Establishment for the fiscal year ending June 30, 1949, and for other purposes.

H. R. 6801. An act making appropriations for foreign aid, and for other purposes.

H. R. 6808. An act to permit refund or credit to brewers of taxes paid on beer lost in bottling operations.

H. R. 6829. An act making supplemental appropriations for the Executive Office and sundry independent executive bureaus, boards, commissions, and offices, for the fiscal year ending June 30, 1949, and for other purposes.

H. R. 6916. An act to provide for permanent postal rates and to provide pay increases for Government employees.

H. R. 6935. An act making appropriations to supply deficiencies in certain appropriations for the fiscal year ending June 30, 1948, and for other purposes.

H. J. Res. 190. Joint resolution authorizing the printing and binding of Cannon's Procedure in the House of Representatives and providing that the same shall be subject to copyright by the author.

H. J. Res. 305. Joint resolution authorizing the issuance of a special series of stamps commemorative of the fiftieth anniversary of the organization of the Rough Riders (First Volunteer United States Cavalry) of the Spanish-American War.

H. J. Res. 327. Joint resolution to authorize the issuance of a special series of stamps commemorative of Juliette Low, founder and organizer of Girl Scouting in the United States of America.

H. J. Res. 433. Joint resolution permitting the free entry of certain articles imported to promote international good will, and for other purposes.

**BILLS AND JOINT RESOLUTIONS APPROVED SUBSEQUENT TO ADJOURNMENT**

The President of the United States, subsequent to adjournment, notified the Clerk of the House of Representatives that on the following dates he approved and signed bills and joint resolutions of the House bill of the following titles:

On June 19, 1948:

H. R. 238. An act for the extension of admiralty jurisdiction.

H. R. 636. An act for the relief of W. A. Knox, W. L. M. Knox, and Frank A. Morris, operating as Knox Lumber Sales Co., of Thomson, Ga.

H. R. 1222. An act for the relief of Mr. and Mrs. M. C. Lewis.

H. R. 1726. An act for the relief of Elsie L. Rosenow.

H. R. 1781. An act for the relief of Annie L. Taylor and William Benjamin Taylor.

H. R. 1855. An act for the relief of Elbert Spivey.

H. R. 2062. An act for the relief of Mrs. Carrie M. Lee.

H. R. 2273. An act to amend the act of May 29, 1944, providing for the recognition of the services of the civilian officials and employees, citizens of the United States, engaged in and about the construction of the Panama Canal.

H. R. 2479. An act for the relief of Hardy H. Bryant.

H. R. 2684. An act for the relief of sundry fruit growers of the State of Delaware who sustained losses as the result of the fumigation of apples with methyl bromide in order to comply with the requirements of the United States Department of Agriculture relating to the Japanese beetle quarantine.

H. R. 2721. An act to amend the act of March 10, 1934, entitled "an act to promote the conservation of wildlife, fish, and game, and for other purposes," as amended by the act approved August 14, 1946.

H. R. 2916. An act for the relief of Walter Vandahl and Esther S. Vandahl, Allabrada Adams, Mrs. Lucile L. Rice Talbot, Mrs. Gladys Webb, and John E. Webb.

H. R. 2922. An act for the relief of Charles B. Featherstone.

H. R. 3C07. An act for the relief of Ernest F. Lutzken.

H. R. 3114. An act for the relief of the estate of John Delman.

H. R. 3159. An act for the relief of Mrs. Mae H. Fitzgerald.

H. R. 3260. An act for the relief of Clarence S. Osika.

H. R. 3352. An act for the relief of Emeline Latigue.

H. R. 3402. An act to extend the authorized maturity date of certain bridge revenue bonds to be issued in connection with the refunding of the acquisition cost of the bridge across the Missouri River at Rulo, Nebr.

H. R. 3423. An act to amend the act entitled "An act to classify the officers and members of the Fire Department of the District of Columbia, and for other purposes," approved June 20, 1906, and for other purposes.

H. R. 3500. An act for the relief of Lester L. Elder and Mrs. Esther E. Elder.

H. R. 3641. An act for the relief of Mrs. Helen E. Scofield.

H. R. 3883. An act to authorize and direct the Secretary of the Army to transfer to the Territory of Alaska the title to the Army vessel *Hygiene*.

H. R. 3915. An act to increase the size of the Arkansas-Mississippi Bridge Commission, and for other purposes.

H. R. 4244. An act to authorize assistance to certain veterans in acquiring specially adapted housing which they require by reason of the nature of their service-connected disabilities.

H. R. 4455. An act to authorize the conveyance by the Secretary of the Interior to the Richmond, Fredericksburg & Potomac Railroad Co., of certain lands lying in the bed of Roaches Run, Arlington County, Va., and for other purposes.

H. R. 4663. An act to confer jurisdiction upon the District Court of the United States for the Middle District of Georgia to hear, determine, and render judgment on the claims of the owners of the fee-simple titles and leasehold interests in lands leased to the United States by the city of Macon, Ga., for use as a part of the site of Camp Wheeler, Ga.

H. R. 4688. An act to enlarge the Gettysburg National Cemetery.

H. R. 4830. An act for the relief of Cooperative for American Remittances to Europe, Inc.

H. R. 4874. An act to transfer Pelican Rock in Crescent City Harbor, Del Norte County, Calif., to that county.

H. R. 5065. An act to amend section 1700 (a) (1) of the Internal Revenue Code so as to exempt hospitalized servicemen and veterans from the admissions tax when admitted free.

H. R. 5112. An act to amend the Civil Service Retirement Act of May 29, 1930, as amended.

H. R. 5147. An act authorizing the Secretary of the Interior to issue a patent in fee to Florence A. W. Arens.

H. R. 5174. An act to authorize Commodity Credit Corporation to make adjustment payments to certain producers of raw cane sugar in Puerto Rico and Hawaii.

H. R. 5330. An act for the relief of W. W. DeLoach.

H. R. 5344. An act to prevent retroactive checkage of retired pay in the cases of certain enlisted men and warrant officers appointed or advanced to commissioned rank or grade under the act of July 24, 1941 (55 Stat. 603), as amended, and for other purposes.

H. R. 5655. An act confirming the claim of Juan Berrar to certain lands in the State of Louisiana, county of Attakapas, now parish of St. Martin, said claim being listed as No. B–690 in the report of the commissioners dated June 1811, so as to include section 2, township 11 south, range 6 east, Louisiana meridian, containing one hundred and thirty-nine and sixty-two one-hundredths acres.

H. R. 5758. An act to amend further the Armed Forces Leave Act of 1946, as amended, to permit certain payments to be made to surviving brothers and sisters, and nieces and nephews, of deceased members and former members of the armed forces.

H. R. 5808. An act to continue a system of nurseries and nursery schools for the day care of school-age and under-school-age children of the District of Columbia.

H. R. 5820. An act to aid in the development of improved prosthetic appliances, and for other purposes.

H. R. 5883. An act making appropriations for the Department of Agriculture (exclusive of the Farm Credit Administration) for the fiscal year ending June 30, 1949, and for other purposes.

H. R. 5889. An act to extend the provisions of title VI of the Public Health Service Act to the Virgin Islands.

H. R. 5891. An act to repeal an act approved August 24, 1894, entitled "An act to authorize the purchasers of the property and franchises of the Choctaw Coal & Railway Co. to organize a corporation, and to confer upon the same all the powers, privileges, and franchises vested in that company," and all acts amendatory thereof and supplemental thereto.

H. R. 5957. An act to provide for the establishment of the Fort Vancouver National Monument, in the State of Washington, to include the site of the old Hudson's Bay Co. stockade, and for other purposes.

H. R. 5983. An act to amend section 202 of title II of the Army-Navy Medical Services Corps Act of 1947, as amended, to remove the present restriction on appointments to the Navy Medical Service Corps.

H. R. 6073. An act to provide for the acquisition of lands for grazing and related purposes.

H. R. 6110. An act to permit the landing of halibut by Canadian fishing vessels to Alaskan ports, and for other purposes.

H. R. 6113. An act to transfer certain land in Langlade County, Wis., to the United States Forest Service.

H. R. 6114. An act to amend title I of the Bankhead-Jones Farm Tenant Act, as amended, so as to increase the interest rate on title I loans, to provide for the exemption of nondelinquent insured mortgages, to authorize advances for the preservation and protection of the insured loan security, and for other purposes.

H. R. 6229. An act to authorize the extension of leases of certain land in the Territory of Hawaii.

H. R. 6234. An act to authorize the establishment of internships in the Department of Medicine and Surgery of the Veterans' Administration.

H. R. 6252. An act to authorize the issuance of a land patent to certain public lands, situated in the county of Kauai, Territory of Hawaii, for school purposes.

H. R. 6339. An act to amend the provisions of title VI of the Public Health Service Act relating to standards of maintenance and operation for hospitals receiving aid under that title.

H. R. 6430. An act making appropriations for the government of the District of Columbia and other activities chargeable in whole or in part against the revenues of such District for the fiscal year ending June 30, 1949, and for other purposes.

H. R. 6489. An act to provide for the temporary free importation of lead.

H. R. 6716. An act to authorize the Administrator of Veterans' Affairs to transfer a portion of the Veterans' Administration center at Los Angeles, Calif., to the State of California for the use of the University of California.

H. R. 6758. An act making supplemental appropriations for the Treasury and Post Office Departments for the fiscal year ending June 30, 1949, and for other purposes.

On June 21, 1948:

H. R. 633. An act for the relief of Mrs. Myrtle Hovde.

H. R. 6368. An act to provide for the issuance of a special postage stamp in commemoration of the dedication of the Palomar Mountain Observatory.

On June 22, 1948:

H. R. 929. An act for the relief of Ernest L. Godfrey.

H. R. 4964. An act to preserve seniority rights of 10-point preference eligibles in the postal service transferring from the position of letter carrier to clerk or from the position of clerk to letter carrier.

H. R. 5071. An act to extend the public land laws of the United States to certain lands, consisting of islands, situated in the Red River in Oklahoma.

H. R. 5272. An act relating to the compensation of certain railway postal clerks.

H. R. 5822. An act to establish the Saratoga National Historical Park, in the State of New York, from the lands that have been acquired by the Federal Government for that purpose pursuant to the act of June 1, 1938 (52 Stat. 608), and for other purposes.

H. R. 6239. An act to provide for the suspension of annual assessment work on mining claims held by location in the Territory of Alaska.

H. R. 6246. An act to authorize the transfer of certain Federal lands within the Chopawamsic Park to the Secretary of the Navy, the addition of lands surplus to the Department of the Army to this park, the acquisition of additional lands needed to round out the boundaries of this park, to change the name of said park to Prince William Forest Park, and for other purposes.

H. R. 6289. An act to provide for the voluntary admission and treatment of mental patients at St. Elizabeths Hospital.

On June 23, 1948:

H. R. 2588. An act requiring all mails consigned to an airport from a post office or branch, or from an airport to a post office or branch, within a radius of 35 miles of a city in which there has been established a Government-owned vehicle service to be delivered by Government-owned motor vehicles.

H. R. 6766. An act to amend the Railroad Retirement Act of 1937, as amended, and the Railroad Unemployment Insurance Act, as amended, and for other purposes.

On June 24, 1948:

H. R. 239. An act to further perfect the consolidation of the Lighthouse Service with the Coast Guard.

H. R. 2867. An act to permit, subject to certain conditions, mining locations under the mining laws of the United States within that portion of the Navy National Forest, designated as a game sanctuary, and for other purposes.

H. R. 3889. An act to amend Veterans Regulation No. 1 (a), parts I and II, as amended, to establish a presumption of service connection for chronic and tropical diseases.

H. R. 4071. An act to amend sections 301 (k) and 304 (a) of the Federal Food, Drug, and Cosmetic Act, as amended.

H. R. 4047. An act for the relief of Edmund Huppler.

H. R. 4516. An act for the relief of the Moore Dry Dock Co., of Oakland, Calif.

H. R. 4962. An act to provide pensions for certain widows of veterans of the Spanish-American War, including the Boxer Rebellion and the Philippine Insurrection.

H. R. 5036. An act to authorize the attendance of the United States Marine Corps Band at the national assembly of the Marine Corps League to be held at Milwaukee, Wis., September 22 to September 25, inclusive, 1948.

H. R. 5275. An act to amend the Tariff Act of 1930 to provide for the free importation of limestone to be used in the manufacture of fertilizers.

H. R. 5936. An act to provide for the addition of certain surplus Government lands to the Chickamauga and Chattanooga National Military Park, in the States of Georgia and Tennessee, and for other purposes.

H. R. 6318. An act to amend section 3 of the Standard Time Act of March 19, 1918, as amended, relating to the placing of a certain portion of the State of Idaho in the third time zone.

H. R. 6771. An act making appropriations for military functions administered by the National Military Establishment for the fiscal year ending June 30, 1949, and for other purposes.

H. R. 6822. An act to continue the authorization for the appointment of two additional Assistant Secretaries of State.

H. R. 6188. An act to confer jurisdiction over the Fort Des Moines Veterans' Village upon the State of Iowa.

H. R. 6698. An act to authorize the course of instruction at the United States Naval Academy to be given to not exceeding four persons at a time from the Republic of the Philippines.

H. R. 6726. An act to amend the Public Health Service Act to provide for, foster, and aid in coordinating research relating to dental diseases and conditions, and for other purposes.

H. R. 6772. An act making appropriations for the Department of the Navy and the naval service for the fiscal year ending June 30, 1949, and for other purposes.

On June 25, 1948:

H. R. 564. An act for the relief of Sarah Lee Cregg.

H. R. 700. An act for the relief of Anthony Arancio.

H. R. 912. An act for the relief of Hiro Higa and Kana Higa.

H. R. 945. An act relating to the payment of fees, expenses, and costs of jurors.

H. R. 1409. An act for the relief of Frantisek Jiri Pavlik or Georg Pavlik.

H. R. 1642. An act for the relief of Miss Rosella M. Kostenbader.

H. R. 2009. An act for the relief of the estate of Vito Abarno.

H. R. 2193. An act for the relief of Robert E. Graham.

H. R. 2431. An act for the relief of the estate of David Jefferson Janow, deceased.

H. R. 2734. An act for the relief of Joseph M. Henry.

H. R. 2766. An act to amend section 2 of an act entitled, "An act to provide for the establishment of a probation system in the United States courts, except in the District of Columbia," approved March 4, 1925, as amended (18 U. S. C. 725).

H. R. 3190. An act to revise, codify, and enact into positive law, title 18 of the United States Code, entitled "Crimes and Criminal Procedure."

JOURNAL OF THE

Res. 219. Joint resolution to continue until March 1, 1949, the authority of the United States Maritime Commission to make provision for certain ocean transportation service to, from, and within Alaska.

On July 2, 1948:

S. 595. An act to provide that the rates of compensation for disabilities incurred in active military or naval service other than in a period of war service shall be equal to 80 percent of the rates payable for similar disabilities incurred during active service in time of war.

S. 1260. An act to create a commission to hear and determine the claims of certain motor carriers.

S. 1683. An act to confer jurisdiction on the State of New York with respect to offenses committed on Indian reservations within such State.

S. 1969. An act to amend the Philippine Rehabilitation Act of 1946 in connection with the training of Filipinos as provided for in title III.

S. 2554. An act to promote the common defense by providing for the retention and maintenance of a national reserve of industrial productive capacity, and for other purposes.

S. 2743. An act providing for the more expeditious determination of certain claims filed by Ute Indians.

S. 2821. An act to provide increases of compensation for certain veterans with service-connected disabilities who have dependents.

On July 3, 1948:

S. 1243. An act to provide for the payment of revenues from certain lands into the tribal funds of the Confederated Tribes of the Warm Springs Reservation of Oregon, and for other purposes.

S. 2217. An act conferring jurisdiction upon the Court of Claims of the United States to hear, determine, and render judgment upon the joint claims of Silas Mason Co., Inc.; Walsh Construction Co.; and Atkinson-Kier Co.

S. 2767. An act to provide assistance in the recruitment and distribution of farm labor for the increased production, harvesting, and preparation for market of agricultural commodities to meet domestic needs and foreign commitment.

The message also announced that the President of the United States had transmitted to the Secretary of the Senate a list of bills of the Senate disapproved, with his reason for such action, as follows:

On July 2, 1948:

ESTATE OF WILLIAM R. STIGALL, DECEASED

S. 1717. I have withheld my approval from S. 1717, an act for the relief of the estate of William R. Stigall, deceased.

The purpose of this bill is to compensate the estate of William R. Stigall, deceased, for his death from injuries sustained by him while in the military service.

It appears that on September 5, 1941, Pvt. William R. Stigall, a member of Headquarters Company, First Signal Armored Battalion, Fort Knox, Ky., which was en route from Fort Knox to Camp Polk, La., by Army convoy, was accidentally electrocuted when the antenna of the radio scout car in which he was riding touched a high-tension electric power line. The convoy had halted by the roadside for the noonday meal. The antenna of the radio scout car was released to permit the canvass top of the car to be rolled back, and as the antenna rose into the air it came into contact with a high-tension power line approximately 19 feet above the ground. Private Stigall dismounted from the car, with one hand on the door thereof, and as he stepped on the ground, completing the circuit, the current flowed through his body, causing his death almost instantly. It appears that the power line had not been recognized as such by any member of the military personnel, in view of the fact that it was composed of two light wires suspended comparatively close to the ground.

In view of the fact that at the time of his death Private Stigall was in line of duty as an enlisted man of the Army, any dependents left by him would be entitled to all of the benefits conferred by general law on dependents of members of the armed forces of the United States who die in line of duty. It appears, however, that Private Stigall left no one who was dependent upon him. His service record, under the heading "Government Insurance," bears the notation "No insurance desired." Had he chosen to take advantage of the opportunity afforded him to obtain national service life insurance, he could have been insured in the maximum amount of $10,000, and his beneficiary, or beneficiaries, would have been compensated in that amount for his death. However, his father, Dumont Stigall, received the statutory death gratuity benefit, in an amount equal to the decedent's Army pay for 6 months.

The approval of this bill awarding compensation for the death of Private Stigall would be discriminatory in that it would grant to his estate a special benefit denied to the estates of other members of the armed forces where the facts are similar and to the estates of military and naval personnel who are killed in action. There are no circumstances present in this case that would warrant singling out this estate for preferential treatment. On June 11, 1948, I withheld my approval from a similar bill, S. 252, "An act for the relief of the estate of Lee Jones Cardy." (Congressional Record, vol. 94, p. 8355, June 14, 1948). While deeply regretting the untimely death of Private Stigall, I am obliged to withhold my approval from this bill.

RATES OF PAY FOR CERTAIN VETERANS AFFAIRS FIELD INSTALLATION POSITIONS

S. 2794. I am withholding my approval from S. 2794, an act to authorize the Administrator of Veterans' Affairs to prescribe the rates of pay for certain positions at field installations.

This bill would authorize the Administrator to establish pay scales for some 60,000 field employees of the Veterans' Administration, including hospital attendants, dental mechanics, and others who work in veterans' hospitals. These employees are now paid under the provisions of the Classification Act of 1923.

It is argued that this authority is needed since the Administrator has had difficulty in recruiting and retaining personnel to staff veterans' hospitals. It is estimated that the increase to be given the employees affected by this bill would have been about $80 per year. Since I have just approved a bill increasing salaries for persons covered by the Classification Act by $330 per year, the authority granted by this bill should be unnecessary.

Furthermore, I do not believe that this bill represents a sound approach to the problem of recruiting and retaining Government employees. It would have affected only certain employees of one agency, whereas the same problem confronts many other agencies, and should be dealt with by general legislation. It would have set no standards or limits to guide the Administrator except the single provision that he could not set rates of pay lower than those prescribed by the Classification Act. This would have been a step toward uncoordinated and diverse pay scales for Government employees, when the need is for greater uniformity.

The message further announced that the President, on July 3, 1948, had pocket-vetoed the following bill and joint resolution:

S. 1639. An act authorizing the repair and rehabilitation of irrigation works damaged by flood and the prevention of flood damage in the Fort Sumner irrigation district, and for other purposes. (No statement.)

S. J. Res. 84. Joint resolution to provide for the restoration and preservation of the Francis Scott Key Mansion, to establish the Francis Scott Key National Memorial, and for other purposes. (No statement.)

## MONDAY, JULY 26, 1948

On which day, being the day fixed by the proclamation of the President of the United States, on the 15th day of July 1948 for the meeting of Congress, which proclamation is in the words following, to wit:

PRESIDENT'S PROCLAMATION

Whereas the public interest requires that the Congress of the United States should be convened at 12 o'clock noon, on Monday, the twenty-sixth day of July 1948, to receive such communication as may be made by the Executive;

Now, therefore, I, Harry S. Truman, President of the United States of America, do hereby proclaim and declare that an extraordinary occasion requires the

# HOUSE OF REPRESENTATIVES

Congress of the United States to convene at the Capitol in the city of Washington on Monday, the twenty-sixth day of July 1948, at 12 o'clock noon, of which all persons who shall at that time be entitled to act as Members thereof are hereby required to take notice.

In witness whereof I have hereunto set my hand and caused to be affixed the great seal of the United States.

Done at the city of Washington this sixteenth day of July, in the year of our Lord nineteen hundred and forty-eight, and of the Independence of the United States of America the one hundred and seventy-third.

[SEAL]

By the President:    HARRY S. TRUMAN.

G. C. MARSHALL,
Secretary of State.

In conformity with the foregoing proclamation of the President of the United States, the House of Representatives assembled in its Chamber in the city of Washington.

The House was called to order by Representative JOSEPH W. MARTIN, Jr., the Speaker (a Representative from the State of Massachusetts), by whose order the foregoing proclamation was read.

The Journal of the proceedings of Saturday, June 19, 1948, was read and approved.

## COMMUNICATIONS

Executive and other communications, pursuant to clause 2, rule XXIV, were referred as follows:

1668. A letter from the Under Secretary of Agriculture, transmitting a report on cooperation of the United States with Mexico in the control and eradication of foot-and-mouth disease; to the Committee on Agriculture.

1669. A letter from the Acting Secretary of the Navy, transmitting a report of a proposed transfer of a submarine chaser to the University of North Carolina Institute of Fisheries, State of North Carolina; to the Committee on Armed Services.

1670. A letter from the Acting Secretary of the Navy, transmitting a report of the number of professors and instructors and the amount of compensation for each employed at the United States Naval Postgraduate School; to the Committee on Armed Services.

1671. A letter from the Attorney General, transmitting a copy of a letter from the Secretary of Agriculture advising that he is withdrawing his request for the voluntary plan for the conservation of grain by the brewing industry; to the Committee on Banking and Currency.

1672. A letter from the Acting Attorney General, transmitting copies of the voluntary plan covering the allocation of steel products for the United States Atomic Energy Commission projects; to the Committee on Banking and Currency.

1673. A letter from the Acting Attorney General, transmitting copies of the vol-untary plan covering the allocation of steel products for warm-air heating equipment for residential housing and copies of the requests for compliance therewith which the Secretary of Commerce has issued to various steel producers and steel consumers; to the Committee on Banking and Currency.

1674. A letter from the Vice Chairman, Reconstruction Finance Corporation, transmitting a report on the Government-owned tin smelter at Texas City, Tex., and the program for purchase and sale of tin metal in the United States; to the Committee on Banking and Currency.

1675. A letter from the Commissioner, Federal Housing Administration, transmitting the Fourteenth Annual Report of the Federal Housing Administration, for the calendar year 1947; to the Committee on Banking and Currency.

1676. A letter from the Attorney General, transmitting a report showing the special assistants employed during the period from January 1, 1948, to June 30, 1948; to the Committee on Expenditures in the Executive Departments.

1677. A letter from the Chairman, Federal Communications Commission, transmitting a recommendation in the form of an amendment to section 4 (g) of the Communications Act; to the Committee on Interstate and Foreign Commerce.

1678. A letter from the Chairman, Federal Trade Commission, trnasmitting a report entitled "The Merger Movement: A Summary Report"; to the Committee on Interstate and Foreign Commerce.

1679. A letter from the Chairman, Federal Power Commission, transmitting one copy of the report "Production of Electric Energy and Capacity of Generating Plants in the United States" for the year 1946 and one copy of the report "Power Market Survey, Colorado River, Upper Basin, Part 1—Power Requirements"; to the Committee on Interstate and Foreign Commerce.

1680. A letter from the Chairman, Federal Trade Commission, transmitting a report on manufacture and distribution of farm implements; to the Committee on Interstate and Foreign Commerce.

1681. A letter from the Chairman, Federal Trade Commission, transmitting a report on international steel cartels; to the Committee on Interstate and Foreign Commerce.

1682. A letter from the Acting Chairman, Federal Trade Commission, transmitting the report of the Federal Trade Commission entitled "The International Electrical Equipment Cartel"; to the Committee on Interstate and Foreign Commerce.

1683. A letter from the Attorney General, transmitting a request that the case of Angele Charlotte Douthe, nee Rivis, or Simone Rivis, or Simone Douhte, be withdrawn from those now before Congress and returned to the jurisdiction of the Department; to the Committee on the Judiciary.

1684. A letter from the Attorney General, transmitting a request that the case of Viggo John Schmidt be withdrawn from those now before Congress and returned to the jurisdiction of the Department; to the Committee on the Judiciary.

1685. A letter from the Attorney General, transmitting a request that the case of Armando Pinto y Bisquerra be withdrawn from those now before Congress and returned to the jurisdiction of the Department; to the Committee on the Judiciary.

1686. A letter from the Acting Attorney General, transmitting a request that the case of Camilo Crestes Rafael Faneral y Bertini be withdrawn from those now before the Congress and returned to the Jurisdiction of the Department; to the Committee on the Judiciary.

1687. A letter from the Attorney General, transmitting a report reciting the facts and pertinent provisions of law in the cases of 10 individuals whose deportation has been suspended for more than 6 months under the authority vested in the Attorney General; to the Committee on the Judiciary.

1688. A letter from the Secretary, Department of Agriculture, transmitting a report of all claims paid under the Federal Tort Claims Act of August 2, 1946 (Public Law 601, 79th Cong.), for the period July 1, 1947, to the end of the fiscal year June 30, 1948; to the Committee on the Judiciary.

1689. A letter from the Postmaster General, transmitting a draft of a proposed bill for the relief of John I. Malarin, former Army mail clerk at APO 932, a branch of the San Francisco, Calif., post office relative to a shortage in his fixed credit account; to the Committee on the Judiciary.

1690. A letter from the Acting Postmaster General, transmitting a report of claims paid by the Post Office Department under the provisions of the Federal Tort Claims Act during the fiscal year 1947–48; to the Committee on the Judiciary.

1691. A letter from the chairman, United States Maritime Commission, transmitting Report No. 15 of action taken under section 217 of the Merchant Marine Act, 1936, as amended (Public Law 498, 77th Cong.); to the Committee on Merchant Marine and Fisheries.

1692. A letter from the Chairman, United States Maritime Commission, transmitting the quarterly report of the United States Maritime Commission on the activities and transactions of the Commission under the Merchant Ship Sales Act of 1946 from April 1, 1948, through June 30, 1948; to the Committee on Merchant Marine and Fisheries.

1693. A letter from the Assistant Secretary of the Interior, transmitting the Forty-seventh Annual Report of the Governor of Puerto Rico, for the fiscal year ended June 30, 1947; to the Committee on Public Lands.

1694. A letter from the Acting Secretary of the Interior, transmitting one

# HOUSE OF REPRESENTATIVES

...es of Labor; to the Committee on Banking and Currency.

2118. Also, petition of Adam Daniel Brothers, of New York City, petitioning consideration of their resolution with reference to making such necessary representations to England as will bring about the end of the partition of Ireland; to the Committee on Foreign Affairs.

2119. Also, petition of President Fernando Leon de Vivero, of Peru, petitioning consideration of his resolution with reference to expression of profound condolence of the passing of Gen. John J. Pershing; to the Committee on Foreign Affairs.

2120. Also, petition of Hector J. Cambora, President of the House of Deputies, Buenos Aires, Argentina, petitioning consideration of his resolution with reference to notifying the Speaker of the United States House of Representatives and hearty homage to the anniversary of the independence of their great brother country the United States; to the Committee on Foreign Affairs.

2121. Also, petition of Kaminskis V. & Ritums H., Esslingen a. N., Germany, United States zone, petitioning consideration of their resolution with reference to a booklet entitled "We Accuse the Eastern Power of Despotism—the Western Ones of Indifference," asking for support in the abolishment of the inhuman terror as is executed by the Communists; to the Committee on Foreign Affairs.

2122. Also, petition of Greek-American Parliamentary Group, of Athens, Greece, petitioning consideration of their resolution with reference to the one hundred and seventy-second anniversary of the Fourth of July; to the Committee on Foreign Affairs.

2123. Also, petition of Leroy Switzer, Illinois State Penitentiary, Menard, Ill., petitioning consideration of his petition for a writ of habeas corpus; to the Committee on the Judiciary.

2124. Also, petition of Nicholas J. Curtis, petitioning consideration of his resolution with reference to a redress of grievance according to the provisions of the decision of the board of review in the case of Nicholas J. Curtis against Phillip Forman, United States district judge, district of New Jersey, and Guy L. Fake, United States district judge, district of New Jersey, Newark, N. J.; to the Committee on the Judiciary.

2125. Also, petition of the Municipal Council of St. Croix, V. I., petitioning consideration of their resolution with reference to the Virgin Island Company, St. Croix, V. I.; to the Committee on Public Lands.

2126. Also, petition of the secretary, Lions International, petitioning consideration of his resolution with reference to favoring statehood for Hawaii; to the Committee on Public Lands.

2127. Also, petition of Manhattan Wallace Committee, New York 16, N. Y., petitioning consideration of their resolution with reference to demanding the abolition of the House Un-American Activities Committee; to the Committee on Rules.

2128. Also, petition of the Board of Supervisors of Milwaukee County, Wis., petitioning consideration of their resolution with reference to an amendment to the Wigglesworth bill, H. R. 6829; to the Committee on Veterans' Affairs.

2129. By Mr. EATON: Joint resolution of the Senate and General Assembly of the State of New Jersey, memorializing the Congress of the United States to proceed with all possible dispatch to the preparation and adoption of necessary legislation designed to encourage and make adequately effectual a comprehensive program of merchant shipbuilding in this country's shipyards and expanding our merchant marine; to the Committee on Merchant Marine and Fisheries.

## TUESDAY, JULY 27, 1948

The House was called to order by the Speaker.

The Journal of the proceedings of Monday, July 26, 1948, was read and approved.

### COMMUNICATION

A communication, pursuant to clause 2, rule XXIV, was referred as follows:

1702. A letter from the Chairman, Munitions Board, National Military Establishment, transmitting a report detailing the activities with respect to stock piling between January 1 and June 30, 1948, was taken from the Speaker's table and reffered to the Committee on Armed Services.

### ADJOURNMENT OVER

On motion of Mr. HALLECK, by unanimous consent,

Ordered, That when the House adjourns today it adjourn to meet on Thursday, July 29, 1948.

### CORRECTION OF RECORD—ROLL CALL NO. 127

On motion of Mr. RANKIN, by unanimous consent,

Ordered, That roll call No. 127, as printed in the Congressional Record of Monday, July 26, 1948, be corrected to show the names of the Members present and answering to their names.

### RECESS

At 12 o'clock and 4 minutes p. m. the House stood in recess, subject to the call of the Chair.

### AFTER RECESS 12:18

The SPEAKER called the House to order.

### MESSAGE FROM THE SENATE

A message from the Senate, by Mr. Carrell, one of its clerks, announced that the Senate had passed without amendment a concurrent resolution of the House of the following title:

H. Con Res. 220. Concurrent resolution providing for a joint session of Congress on July 27, 1948.

### JOINT SESSION TO RECEIVE THE PRESIDENT'S MESSAGE

The Doorkeeper announced the President pro tempore and Members of the Senate, who entered the Hall of the House and took seats assigned them.

Whereupon, pursuant to House Concurrent Resolution 220, the Speaker called the joint session of the two Houses to order.

The SPEAKER appointed Mr. HALLECK, Mr. ALLEN of Illinois, and Mr. McCORMACK members on the part of the House of the committee to escort the President into the Hall of the House.

The PRESIDENT pro tempore of the Senate appointed Mr. WHERRY, Mr. MILLIKIN, and Mr. BARKLEY members on the part of the Senate of the committee to escort the President into the Hall of the House.

The Doorkeeper announced ambassadors, ministers and chargés d'affaires of foreign governments, who entered the Hall of the House and took seats assigned them.

The Doorkeeper announced the members of the President's Cabinet, who entered the Hall of the House and took seats assigned them.

The President of the United States, at 12:30 p. m., escorted by the committee on the part of both Houses, entered the Hall of the House and, at the Clerk's desk, delivered the following message:

Mr. President, Mr. Speaker, Members of the Eightieth Congress, the urgent needs of the American people require our presence here today.

Our people demand legislative action by their Government to do two things: First, to check inflation and the rising cost of living; and, second, to help in meeting the acute housing shortage.

These are matters which affect every American family. They also affect the entire world, for world peace depends upon the strength of our economy.

The Communists, both here and abroad, are counting on our present prosperity turning into a depression. They do not believe that we can—or will—put the brake on high prices. They are counting on economic collapse in this country.

If we should bring on another great depression in the United States by failing to control high prices, the world's hope for lasting peace would vanish. A depression in the United States would cut the ground from under the free nations of Europe. Economic collapse in this country would prevent the recovery throughout the world which is essential to lasting peace. We would have only ourselves to blame for the tragedy that would follow.

In these tense days, when our strength is being tested all over the world, it would be reckless folly if we failed to act against inflation.

# NATIONAL ARCHIVES AND RECORDS ADMINISTRATION

## To all to whom these presents shall come. Greeting:

By virtue of the authority vested in me by the Archivist of the United States, I certify on his behalf, under the seal of the National Archives of the United States, that the attached reproduction(s) is a true and correct copy of documents in his custody.

| SIGNATURE | |
|---|---|
| NAME | |
| Richard H. Hunt | DATE 05/11/07 |
| TITLE Director | |
| Center for Legislative Archives | |
| NAME AND ADDRESS OF DEPOSITORY | |
| The National Archives Washington, D.C. 20408 | |

NA FORM APR 85 1407-A

App. 31

# JOURNAL OF THE SENATE

OF THE

## UNITED STATES OF AMERICA

———

## SECOND SESSION

OF THE

## EIGHTIETH CONGRESS

BEGUN AND HELD AT THE CITY OF WASHINGTON
JANUARY 6, 1948, IN THE ONE HUNDRED
AND SEVENTY-SECOND YEAR OF THE
INDEPENDENCE OF THE
UNITED STATES



UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1949

# JOURNAL OF THE SENATE OF THE UNITED STATES OF AMERICA

Eightieth Congress, Second Session   :   :   :   Beginning January 6, 1948

The SECOND SESSION of the EIGHTIETH CONGRESS commenced this day, conformably to the joint resolution fixing the date of meeting of the second regular session of the Eightieth Congress, approved August 4, 1947, and the Senate met in its Chamber at the city of Washington.

**TUESDAY, JANUARY 6, 1948**

The Honorable ARTHUR H. VANDENBERG, President pro tempore of the Senate, called the Senate to order, and the Chaplain, Rev. Peter Marshall, D. D., offered prayer.

#### QUESTION OF QUORUM

Mr. WHERRY raised a question as to the presence of a quorum;

Whereupon

The PRESIDENT pro tempore directed the roll to be called;

When

Sixty-eight Senators answered to their names, as follows:

*From the State of Alabama:*
Messrs. LISTER HILL and JOHN J. SPARKMAN.

*From the State of Arizona:*
Messrs. CARL HAYDEN and ERNEST W. McFARLAND.

*From the State of Arkansas:*
Mr. JOHN L. McCLELLAN.

*From the State of California:*
Mr. WILLIAM F. KNOWLAND.

*From the State of Colorado:*
Messrs. EDWIN C. JOHNSON and EUGENE D. MILLIKIN.

*From the State of Connecticut:*
Mr. RAYMOND E. BALDWIN.

*From the State of Delaware:*
Messrs. CLAYTON DOUGLASS BUCK and JOHN J. WILLIAMS.

*From the State of Florida:*
Mr. SPESSARD L. HOLLAND.

*From the State of Georgia:*
Messrs. WALTER F. GEORGE and RICHARD B. RUSSELL.

*From the State of Idaho:*
Messrs. GLEN H. TAYLOR and HENRY DWORSHAK.

*From the State of Illinois:*
Mr. SCOTT W. LUCAS.

*From the State of Indiana:*
Mr. WILLIAM E. JENNER.

*From the State of Iowa:*
Messrs. GEORGE A. WILSON and BOURKE B. HICKENLOOPER.

*From the State of Kansas:*
Messrs. ARTHUR CAPPER and CLYDE M. REED.

*From the State of Kentucky:*
Mr. ALBEN W. BARKLEY.

*From the State of Maine:*
Mr. OWEN BREWSTER.

*From the State of Maryland:*
Messrs. MILLARD E. TYDINGS and HERBERT R. O'CONOR.

*From the State of Massachusetts:*
Messrs. LEVERETT SALTONSTALL and HENRY CABOT LODGE, Jr.

*From the State of Michigan:*
Messrs. ARTHUR H. VANDENBERG and HOMER FERGUSON.

*From the State of Minnesota:*
Messrs. JOSEPH H. BALL and EDWARD J. THYE.

*From the State of Mississippi:*
Mr. JOHN C. STENNIS.

*From the State of Missouri:*
Mr. FORREST C. DONNELL.

*From the State of Montana:*
Messrs. JAMES E. MURRAY and ZALES N. ECTON.

*From the State of Nebraska:*
Mr. KENNETH S. WHERRY.

*From the State of Nevada:*
Mr. PAT McCARRAN.

*From the State of New Hampshire:*
Mr. CHARLES W. TOBEY.

*From the State of New Mexico:*
Messrs. CARL A. HATCH and DENNIS CHAVEZ.

*From the State of New York:*
Mr. IRVING M. IVES.

*From the State of North Carolina:*
Messrs. CLYDE R. HOEY and WILLIAM B. UMSTEAD.

*From the State of North Dakota:*
Messrs. WILLIAM LANGER and MILTON R. YOUNG.

*From the State of Ohio:*
Messrs. ROBERT A. TAFT and JOHN W. BRICKER.

*From the State of Oklahoma:*
Messrs. ELMER THOMAS and E. H. MOORE.

*From the State of Pennsylvania:*
Mr. EDWARD MARTIN.

*From the State of Rhode Island:*
Mr. THEODORE FRANCIS GREEN.

*From the State of South Carolina:*
Mr. OLIN D. JOHNSTON.

*From the State of South Dakota:*
Messrs. CHAN GURNEY and HARLAN J. BUSHFIELD.

*From the State of Tennessee:*
Messrs. KENNETH McKELLAR and TOM STEWART.

*From the State of Texas:*
Messrs. TOM CONNALLY and W. LEE O'DANIEL.

*From the State of Utah:*
Messrs. ELBERT D. THOMAS and ARTHUR V. WATKINS.

*From the State of Vermont:*
Messrs. GEORGE D. AIKEN and RALPH E. FLANDERS.

*From the State of Virginia:*
Mr. A. WILLIS ROBERTSON.

*From the State of Washington:*
Mr. HARRY P. CAIN.

*From the State of West Virginia:*
Mr. CHAPMAN REVERCOMB.

*From the State of Wisconsin:*
Mr. ALEXANDER WILEY.

*From the State of Wyoming:*
Mr. EDWARD V. ROBERTSON.

#### NOTIFICATION TO THE PRESIDENT

Mr. WHERRY submitted the following resolution (S. Res. 182), which was considered by unanimous consent and agreed to:

*Resolved,* That a committee consisting of two Senators be appointed to join such committee as may be appointed by the House of Representatives to wait upon the President of the United States and inform him that a quorum of each House is assembled and that the Congress is ready to receive any communication he may be pleased to make.

The PRESIDENT pro tempore appointed Mr. WHERRY and Mr. BARKLEY as the members of the committee on the part of the Senate.

#### NOTIFICATION TO THE HOUSE

Mr. BARKLEY submitted the following resolution (S. Res. 183), which was considered by unanimous consent and agreed to:

*Resolved,* That the Secretary inform the House of Representatives that a quorum of the Senate is assembled and that the Senate is ready to proceed to business.

#### HOUR OF DAILY MEETING

Mr. WHERRY submitted the following resolution (S. Res. 184).

## PETITIONS AND MEMORIALS

The PRESIDENT pro tempore laid before the Senate the following petitions, which were referred as indicated:

A resolution of the Maryland State District of Columbia Federation of Labor, Washington, D. C., remonstrating against the passage of any bill to control subversive and un-American activities;

A memorial of sundry citizens of the 6th Congressional District, State of Washington, remonstrating against the passage of legislation to control subversive and un-American activities; and

A petition of Laura B. Prisk, National Flag Day Association, New York, N. Y., praying the enactment of legislation to make June 14 a legal national holiday; to the Committee on the Judiciary.

The PRESIDENT pro tempore laid before the Senate a petition of the chairman of the municipal committee of St. Croix, V. I., praying the enactment of legislation to continue the Virgin Islands company; which was ordered to lie on the table.

## REPORTS OF COMMITTEES

Mr. BUTLER, by unanimous consent, from the Committee on Interior and Insular Affairs, to whom was referred the bill (H. R. 6090) authorizing the Secretary of the Interior to issue patents for lands held under color of title, reported it without amendment and submitted a report (No. 1618) thereon.

Mr. BUTLER, by unanimous consent, from the Committee on Interior and Insular Affairs, to whom was referred the bill (S. 2080) to provide for the establishment of the Philadelphia National Historical Park, and for other purposes, reported it with amendments and submitted a report (No. 1622) thereon.

Mr. COOPER, by unanimous consent, from the Committee on the Judiciary, to whom was referred the bill (S. 2764) to amend the Trading With the Enemy Act, reported it without amendment and submitted a report (No. 1619) thereon.

Mr. SALTONSTALL, by unanimous consent, from the Committee on Appropriations, to whom was referred the bill (H. R. 6772) making appropriations for the Department of the Navy for the fiscal year ending June 30, 1949, and for other purposes, reported it with amendments and submitted a report (No. 1621) thereon.

Mr. BYRD, by unanimous consent, from the Committee on Armed Services, to whom was referred the bill (S. 2698) to authorize the transfer of horses and equipment owned by the United States Army to the New Mexico Military Institute, a State institution, reported it with amendments and submitted a report (No. 1624) thereon.

Mr. WILEY, by unanimous consent, from the Committee on the Judiciary, to whom was referred the bill (H. R. 6412) to codify and enact into law title 3 of the United States Code, entitled "The President," reported it without amendment and submitted a report (No. 1623) thereon.

Mr. WILEY, by unanimous consent, from the Committee on the Judiciary, to whom was referred the bill (H. R. 3190) to revise, codify, and enact into positive law title 18 of the United States Code, entitled "Crimes and Criminal Procedure," reported it with amendments and submitted a report (No. 1620) thereon.

Mr. AIKEN, by unanimous consent, from the Committee on Expenditures in the Executive Departments, submitted a report (No. 1617) on survey of space leased by the Federal Government; which was ordered to be printed.

Mr. FERGUSON, by unanimous consent, from the Committee on the Judiciary, submitted a report (No. 1625) accompanied by a bill (S. 2860) to provide for the better assurance of the protection of persons within the several States from lynching, and for other purposes; which was read the first and second times by unanimous consent and placed on the calendar.

## INTRODUCTION OF BILLS

Bills were introduced by unanimous consent, severally read the first and second time, and referred as follows:

By Mr. CAIN:

S. 2858. A bill to establish a reclamation project fund; to provide for an orderly rate of construction of self-liquidating reclamation and irrigation projects; to provide for the issuance of revenue bonds to finance the cost of constructing, operating, and maintaining the self-liquidating portions of certain reclamation and irrigation projects; and for other purposes; to the Committee on Finance.

By Mr. BALDWIN:

S. 2859. A bill for the relief of Isiah Johnson; to the Committee on the Judiciary.

By Mr. TAFT:

S. 2861. A bill to assist by grants-in-aid the Republic of the Philippines in providing medical care and treatment for certain veterans; to the Committee on Labor and Public Welfare.

By Mr. JOHNSON of Colorado:

S. 2862. A bill to remove the restrictions upon the acquisition, possession, and ownership of gold, and to permit the sale of gold within the United States, its Territories, and possessions, including Alaska, and for other purposes; to the Committee on Banking and Currency.

## COMMITTEE AUTHORIZED TO SIT DURING THE SESSION OF THE SENATE

The Committee on Public Works was authorized to sit during the session of the Senate on today, on the request of Mr. WHERRY.

## EXTENSION OF RECIPROCAL TRADE AGREEMENTS ACT

The Senate resumed the consideration of the bill (H. R. 6556) to extend the authority of the President under section 350 of the Tariff Act of 1939, as amended, and for other purposes.

On motion by Mr. GEORGE, and by unanimous consent,

Ordered, That Mr. Barkley control the time for debate on the part of the opponents of the bill.

Mr. WHERRY raised a question as to the presence of a quorum;

Whereupon

The PRESIDENT pro tempore directed the roll to be called;

When

Ninety Senators answered to their names, as follows:

| | | |
|---|---|---|
| Aiken | Gurney | Myers |
| Baldwin | Hatch | O'Conor |
| Ball | Hawkes | O'Daniel |
| Barkley | Hayden | O'Mahoney |
| Brewster | Hickenlooper | Pepper |
| Bricker | Hill | Reed |
| Bridges | Hoey | Revercomb |
| Brooks | Holland | Robertson, Va. |
| Buck | Ives | Robertson, Wyo. |
| Butler | Jenner | Russell |
| Byrd | Johnson, Colo. | Saltonstall |
| Cain | Johnston, S. C. | Smith |
| Capehart | Kem | Sparkman |
| Capper | Kilgore | Stennis |
| Chaves | Knowland | Stewart |
| Connally | Langer | Taft |
| Cooper | Lodge | Taylor |
| Gordon | Lucas | Thomas, Okla. |
| Donnell | McCarthy | Thye |
| Downey | McClellan | Tobey |
| Dworshak | McFarland | Tydings |
| Eastland | McGrath | Umstead |
| Ecton | McKellar | Vandenberg |
| Ellender | McMahon | Watkins |
| Feazel | Magnuson | Wherry |
| Ferguson | Malone | White |
| Flanders | Martin | Wiley |
| Fulbright | Millikin | Williams |
| George | Morse | Wilson |
| Green | Murray | Young |

A quorum being present,

Pending debate,

Mr. HATCH raised a question as to the presence of a quorum;

Whereupon

The PRESIDING OFFICER (Mr. ECTON in the chair) directed the roll to be called;

When

Ninety Senators answered to their names, as follows:

| | | |
|---|---|---|
| Aiken | Gurney | Myers |
| Baldwin | Hatch | O'Conor |
| Ball | Hawkes | O'Daniel |
| Barkley | Hayden | O'Mahoney |
| Brewster | Hickenlooper | Pepper |
| Bricker | Hill | Reed |
| Bridges | Hoey | Revercomb |
| Brooks | Holland | Robertson, Va. |
| Buck | Ives | Robertson, Wyo. |
| Butler | Jenner | Russell |
| Byrd | Johnson, Colo. | Saltonstall |
| Cain | Johnston, S. C. | Smith |
| Capehart | Kem | Sparkman |
| Capper | Kilgore | Stennis |
| Chaves | Knowland | Stewart |
| Connally | Langer | Taft |
| Cooper | Lodge | Taylor |
| Gordon | Lucas | Thomas, Okla. |
| Donnell | McCarthy | Thye |
| Downey | McClellan | Tobey |
| Dworshak | McFarland | Tydings |
| Eastland | McGrath | Umstead |
| Ecton | McKellar | Vandenberg |
| Ellender | McMahon | Watkins |
| Feazel | Magnuson | Wherry |
| Ferguson | Malone | White |
| Flanders | Martin | Wiley |
| Fulbright | Millikin | Williams |
| George | Morse | Wilson |
| Green | Murray | Young |

A quorum being present,

Pending debate,

Mr. WHERRY raised a question as to the presence of a quorum;

Whereupon

The PRESIDING OFFICER (Mr. BALD-WIN in the chair) directed the roll to be called;

When

Seventy-seven Senators answered to their names, as follows:

| | | |
|---|---|---|
| Aiken | Hayden | O'Daniel |
| Baldwin | Hickenlooper | O'Mahoney |
| | Hill | Pepper |
| Barkley | Hoey | Robertson, Va. |
| Bricker | Holland | Robertson, Wyo. |
| Bridges | Jenner | Russell |
| | Johnson, Colo. | Saltonstall |
| Butler | Johnson, S.C. | Smith |
| Capehart | Kem | Sparkman |
| Connally | Kilgore | Stennis |
| Cooper | Knowland | Stewart |
| Cordon | Langer | Taft |
| Donnell | Lodge | Taylor |
| Dworshak | Lucas | Thomas, Okla. |
| Eastland | McCarthy | Thye |
| Ecton | McClellan | Tydings |
| Ellender | McFarland | Umstead |
| Ferguson | McGrath | Vandenberg |
| | McKellar | Watkins |
| Fulbright | McMahon | Wherry |
| Green | Magnuson | White |
| Gurney | Millikin | Wiley |
| Hatch | Morse | Williams |
| Hawkes | Myers | Wilson |
| | O'Conor | Young |

A quorum being present,

The question being taken, Shall the bill pass, the objections of the President of the United States to the contrary not-withstanding?

It was determined in  {Yeas_____ 65
the affirmative_____ {Nays_____ 12

The Senators who voted in the affirma-tive are—

| | | |
|---|---|---|
| Aiken | Hayden | Robertson, Va. |
| Baldwin | Hickenlooper | Robertson, Wyo. |
| | Hill | Russell |
| Bricker | Hoey | Saltonstall |
| Bridges | Holland | Smith |
| Buck | Jenner | Sparkman |
| Butler | Johnson, Colo. | Stennis |
| Capehart | Johnson, S.C. | Stewart |
| Connally | Kem | Taft |
| Cooper | Kilgore | Thomas, Okla. |
| Cordon | Knowland | Thye |
| Donnell | Lodge | Tydings |
| Gurney | McCarthy | Umstead |
| Dworshak | McClellan | Vandenberg |
| Eastland | McFarland | Watkins |
| Ecton | McKellar | Wherry |
| Ellender | Magnuson | White |
| | Martin | Wiley |
| Ferguson | Millikin | Williams |
| Fulbright | Myers | Wilson |
| Gurney | O'Conor | Young |
| Hawkes | O'Daniel | |

Senators who voted in the negative are—

| | | |
|---|---|---|
| Barkley | Langer | Morse |
| Byrd | Lucas | O'Mahoney |
| Green | McGrath | Pepper |
| Hatch | McMahon | Taylor |

So it was

Resolved, That the bill do pass, two-thirds of the Senators present having voted in the affirmative.

Ordered, That the Secretary notify the House of Representatives thereof.

The PRESIDENT pro tempore an-nounced the time of the passage of the said bill to be 7 o'clock and 19 minutes p.m.

AUTHORITY TO REPORT H. R. 6801

On motion by Mr. WHERRY, and by unanimous consent,

Ordered, That the Committee on Ap-propriations be authorized to report, dur-ing the adjournment of the Senate fol-lowing today's session, the bill (H. R. 6801) making appropriations for foreign aid for the period beginning April 3, 1948, and ending June 30, 1949, and for other purposes.

INTERIOR DEPARTMENT APPROPRIATIONS

The Senate resumed the consideration of the bill (H. R. 6705) making appro-priations for the Department of the In-terior for the fiscal year ending June 30, 1949, and for other purposes.

The reported amendments, in part, were agreed to, in part amended, and, as amended, agreed to, and the bill further amended on the motion of Mr. O'MAHONEY, on behalf of the Committee on Appropriations.

Ordered, That the amendments be en-grossed and the bill read a third time.

The said bill, as amended, was read the third time.

Resolved, That it pass.

On motion by Mr. WHERRY,

Resolved, That the Senate insist upon its amendments to the said bill and ask a conference with the House of Repre-sentatives thereon.

Ordered, That the conferees on the part of the Senate be appointed by the Presiding Officer; and

The PRESIDING OFFICER (Mr. BALD-WIN in the chair) appointed Mr. WHERRY, Mr. GURNEY, Mr. BALL, Mr. CORDON, Mr. HAYDEN, Mr. THOMAS of Oklahoma, and Mr. O'MAHONEY.

Ordered, That the Secretary notify the House of Representatives thereof.

MESSAGE FROM THE HOUSE

A message from the House of Repre-sentatives, by Mr. Maurer, one of its clerks:

Mr. President: The House of Repre-sentatives has passed without amend-ment the joint resolution (S. J. Res. 203) providing for the ratification by Con-gress of a contract for the purchase of certain lands and mineral deposits by the United States from the Choctaw and Chickasaw Nations of Indians.

The House has passed the bill (S. 2821) to provide increases of compensa-tion for certain veterans with service-connected disabilities who have depend-ents, with amendments, in which it re-quests the concurrence of the Senate.

The House has agreed to the amend-ments of the Senate to the bill (H. R. 2744) to provide for the elimination of Regular Army and Regular Air Force officers and for the retirement of officers, warrant officers, and enlisted men of the Regular Army and the Regular Air Force, and to provide retirement benefits for members of the Reserve components of the Army of the United States, the Air Force of the United States, United States Navy and Marine Corps, and Coast Guard.

The House has agreed to the amend-ment of the Senate to the bill (H. R. 6028) to authorize appropriations for the Bu-reau of Reclamation for payments to school districts on certain projects during their construction status.

The House has passed the following joint resolutions, in which it requests the concurrence of the Senate:

H. J. Res. 412. Joint resolution to amend the Merchant Marine Act, 1936, as amended, to strengthen the American merchant marine, to encourage invest-ment in the American merchant marine to build more ships, and to remove in-equities; and

H. J. Res. 413. Joint resolution to amend the Merchant Marine Act, 1936, as amended, to further promote the de-velopment and maintenance of the American merchant marine, and for other purposes.

JOINT RESOLUTIONS REFERRED

The joint resolutions H. J. Res. 412 and H. J. Res. 413, this day received from the House of Representatives for con-currence, were read the first and second times by unanimous consent and referred to the Committee on Interstate and For-eign Commerce.

ENROLLED BILL PRESENTED

The Secretary reported that on today he presented to the President of the United States the enrolled bill (S. 1675) to authorize the Secretary of the Navy to proceed with the construction of cer-tain public works, and for other pur-poses.

APPROPRIATIONS FOR GOVERNMENT CORPO-RATIONS AND INDEPENDENT EXECUTIVE AGENCIES

On motion by Mr. FERGUSON, and by unanimous consent,

The Senate proceeded to consider the bill (H. R. 6481) making appropriations for Government corporations and inde-pendent executive agencies for the fiscal year ending June 30, 1949, and for other purposes.

Pending debate,

EXECUTIVE BUSINESS

During legislative session, certain ex-ecutive business was transacted by unan-imous consent, as in executive session.

ADJOURNMENT

On motion by Mr. WHERRY, at 10 o'clock and 8 minutes p. m.,

The Senate adjourned until 11 o'clock a. m. tomorrow.

TUESDAY, JUNE 15, 1948

The PRESIDENT pro tempore called the Senate to order at 11 o'clock a. m., and Rev. Bernard Braskamp, D. D., of Washington, D. C., offered prayer.

THE JOURNAL

Mr. WHERRY submitted a request that the Journal of the proceedings of yesterday be approved without reading, to which Mr. RUSSELL objected.

On motion by Mr. TAFT, and by unanimous consent,

Ordered, That the calendar be called under the rule applicable to Calendar Monday, and that at 1 o'clock p. m., the

ate resume the consideration of its unfinished business, viz. the bill (S. 2318) to provide for a coordinated agricultural program.

The Journal of the proceedings of yesterday was then approved.

### MESSAGE FROM THE HOUSE

A message from the House of Representatives, by Mr. Chaffee, one of its clerks:

*Mr. President:* The House of Representatives has passed the bill (S. 418) to provide for water-pollution-control activities in the United States Public Health Service of the Federal Security Agency and the Federal Works Agency, and for other purposes, with an amendment, in which it requests the concurrence of the Senate.

The House has passed the joint resolution (S. J. Res. 117) providing for acceptance by the United States of America of the Constitution of the International Labor Organization Instrument of Amendment, and further authorizing an appropriation for payment of the United States share of the expenses of membership and for expenses of participation by the United States, with an amendment, in which it requests the concurrence of the Senate.

The House has agreed to the concurrent resolution (S. Con. Res. 56) welcoming the Inter-American Bar Association to the United States for its conference in Detroit, Mich., in May 1949.

The House has passed the following bills, in which it requests the concurrence of the Senate:

H. R. 4462. An act authorizing the conveyance of certain lands in Park County, Wyo., to the State of Wyoming;

H. R. 5053. An act to provide for the establishment of the Independence National Historical Park, and for other purposes;

H. R. 6247. An act to provide for the air security and defense of the United States, to establish the composition of the Air Force, and for other purposes; and

H. R. 6411. An act to provide for the issuance of a special postage stamp in furtherance of national safety against traffic and other accident hazards.

The Speaker having signed an enrolled bill, viz, S. 2642, and an enrolled joint resolution, viz, S. J. Res. 84, I am directed to bring the same to the Senate for the signature of its President.

### ENROLLED BILLS AND JOINT RESOLUTION SIGNED

The Secretary reported that he had examined and found truly enrolled the following bill and joint resolution:

S. 2642. An act to amend the District of Columbia Motor Vehicle Parking Facility Act of 1942, approved February 16, 1942; and

S. J. Res. 84. Joint resolution to provide for the restoration and preservation of the Francis Scott Key National Memorial, and for other purposes.

The PRESIDENT pro tempore thereupon signed the same.

### HOUSE BILLS REFERRED

The bills this day received from the House of Representatives were severally read the first and second times by unanimous consent.

*Ordered,* That the bill H. R. 6247 be referred to the Committee on Armed Services;

That the bill H. R. 6411 be referred to the Committee on Post Office and Civil Service; and

That the bills H. R. 4462 and H. R. 5053 be placed on the calendar.

### INCREASE IN PRODUCTION AND PROCUREMENT OF COPRA AND PALM OIL IN NETHERLANDS INDIES

The PRESIDENT pro tempore laid before the Senate a communication from the Secretary of Agriculture, transmitting, pursuant to law, a proposed agreement between the Netherlands Indies Government and the United States to stimulate and increase the production and procurement of copra and palm oil in the Netherlands Indies; which, with the accompanying paper, was referred to the Committee on Banking and Currency.

### USELESS PAPERS IN DEPARTMENTS AND AGENCIES

The PRESIDENT pro tempore laid before the Senate a communication from the Archivist of the United States, transmitting, pursuant to law, a list of records of various departments and agencies of the Government recommended for disposition, which appear to have no permanent value or historical interest; which, with the accompanying papers, was referred to the Joint Select Committee on the Disposition of Papers in the Executive Departments; and

The PRESIDENT pro tempore appointed Mr. LANGER and Mr. MCKELLAR as members of the committee on the part of the Senate.

*Ordered,* That the Secretary notify the House of Representatives thereof.

### PETITION AND MEMORIAL

The PRESIDENT pro tempore laid before the Senate a memorial of members of the Department Store Union, CIO, Local 3, of New York State, remonstrating against the enactment of legislation against subversive and un-American activities; which was referred to the Committee on the Judiciary.

Mr. BUTLER presented a resolution adopted by the Farwell, Nebr., irrigation district, favoring the enactment of legislation to bring about early construction and completion of the irrigation work in that district; which was referred to the Committee on Interior and Insular Affairs.

### REPORTS OF COMMITTEES

Under the authority of the order of yesterday, Mr. BRIDGES, from the Committee on Appropriations, to whom was referred the bill (H. R. 6801) making appropriations for foreign aid for the period beginning April 3, 1948, and ending June 30, 1949, and for other purposes, reported it on yesterday, with amendments, and submitted a report (No. 1626) thereon.

Mr. WILEY, from the Committee on the Judiciary, to whom were referred the following bills, reported them each without amendment and submitted reports thereon, as follows:

S. 617. A bill for the relief of Richard T. Charrett (Rept. No. 1688);

S. 1872. A bill for the relief of Jose Babace (Rept. No. 1631);

S. 2050. A bill for the relief of Gracy Marlluch (Rept. No. 1633);

S. 2054. A bill for the relief of Engebert Axer (Rept. No. 1634);

S. 2075. A bill for the relief of Wisia Paryzenberg (Rept. No. 1635);

S. 2235. A bill for the relief of Milo Jurisevic, Mrs. Jelena Jurisevic, Svetozar Jurisevic, and Radmila Jurisevic (Rept. No. 1636);

S. 2360. A bill for the relief of Dr. Chung Kwai Lui (Rept. No. 1637);

H. R. 333. An act for the relief of sundry residents of Alaska, veterans of World War II (Rept. No. 1649);

H. R. 371. An act for the relief of Jenness C. Thomas (Rept. No. 1658);

H. R. 564. An act for the relief of Sarah Lee Cregg (Rept. No. 1659);

H. R. 700. An act for the relief of Anthony Arancio (Rept. No. 1650);

H. R. 851. An act for the relief of Adney W. Gray (Rept. No. 1690);

H. R. 911. An act for the relief of Kam Fong Chun, Mr. and Mrs. Jose Dias, Joseph De Souza, Mr. and Mrs. Kenneth Ayres, and Jose Oducado (Rept. No. 1651);

H. R. 912. An act for the relief of Hiro Higa and Kana Higa (Rept. No. 1652);

H. R. 1220. An act for the relief of James D. Sigler and Frederick P. Vogelsand III (Rept. No. 1691);

H. R. 1409. An act for the relief of Frantisek Jiri Pavlik or Georg Pavlik (Rept. No. 1638);

H. R. 1642. An act for the relief of Miss Rosella M. Kostenbader (Rept. No. 1660);

H. R. 1779. An act for the relief of the Winona Machine & Foundry Co., a corporation of Winona, Minn. (Rept. No. 1692);

H. R. 1910. An act for the relief of the legal guardian of Robert Lee Threatt, a minor (Rept. No. 1693);

H. R. 1930. An act for the relief of the Growers Fertilizer Co., a Florida corporation (Rept. No. 1642);

H. R. 2269. An act for the relief of Frank A. Constable (Rept. No. 1694);

H. R. 2372. An act for the relief of George Cleve Williams (Rept. No. 1643);

H. R. 2431. An act for the relief of the estate of David Jefferson Janow, deceased (Rept. No. 1695);

H. R. 2489. An act for the relief of James W. Adkins and Mary Clark Adkins (Rept. No. 1654);

Case 3:07-cv-02431-JM    Document 1    Filed 12/28/2007    Page 75 of 75

The said bill, as amended, was read the third time.

*Resolved,* That it pass.

On motion by Mr. CAIN,

*Resolved,* That the Senate insist upon its amendment to the said bill and ask a conference with the House of Representatives thereon.

*Ordered,* That the conferees on the part of the Senate be appointed by the President pro tempore; and

The PRESIDENT pro tempore appointed Mr. CAIN, Mr. BUCK, and Mr. FULBRIGHT.

*Ordered,* That the Secretary notify the House of Representatives thereof.

*Ordered,* by unanimous consent, That the bill (S. 2736) to amend the act entitled "An act to expedite the provision of housing in connection with national defense, and for other purposes," approved October 14, 1940, as amended, and for other purposes, be postponed indefinitely.

The Senate proceeded to consider the following bills; and the reported amendments were agreed to:

H. R. 5882. An act to authorize the Secretary of the Army, the Secretary of the Navy, and the Secretary of the Air Force to donate excess and surplus property for educational purposes;

H. R. 6116. An act to amend the Trading With the Enemy Act;

H. R. 3190. An act to revise, codify, and enact into positive law title 18 of the United States Code, entitled "Crimes and Criminal Procedure";

H. R. 2729. An act for the relief of the legal guardian of Rose Mary Ammirato, a minor; and

H. R. 2009. An act for the relief of the estate of Vito Abarno.

*Ordered,* That the amendments be engrossed and the bills read a third time.

The said bills, as amended, were severally read the third time.

*Resolved,* That they pass.

*Ordered,* That the Secretary request the concurrence of the House of Representatives in the amendments.

The bill (S. 2820) to authorize the Administrator of Veterans' Affairs to convey to the city of Cheyenne, Wyo., for republic park and golf course purposes, certain land situated within the boundaries of the Veterans' Administration center at Cheyenne, Wyo., having been reached,

On motion by Mr. MILLIKIN, and by unanimous consent,

The Committee on Finance was discharged from the further consideration of the bill (H. R. 5734) to authorize the Administrator of Veterans' Affairs to convey to the city of Cheyenne, Wyo., for public-park and golf-course purposes, certain land situation within the boundaries of the Veterans' Administration center at Cheyenne, Wyo.

The Senate proceeded, by unanimous consent, to consider the said bill; and having been amended on the motion of Mr. MORSE,

*Ordered,* That the amendment be engrossed and the bill read a third time.

The said bill, as amended, was read the third time.

*Resolved,* That it pass.

*Ordered,* That the Secretary request the concurrence of the House of Representatives in the amendment.

*Ordered,* by unanimous consent, That the bill S. 2820 be postponed indefinitely.

The Senate proceeded to consider the bill (H. R. 2352) to provide for sale to the Crow Tribe of interests in the estates of deceased Crow Indian allottees; and the reported amendment having been agreed to,

*Ordered,* That the amendment be engrossed and the bill read a third time.

The said bill, as amended, was read the third time.

*Resolved,* That it pass, and that the title thereof be amended, as reported by the committee to read: "An act to provide for sale to the Crow Tribe of interests in the estates of deceased Crow Indian allottees, and to provide for the sale of certain lands to the Board of County Commissioners of Comanche County, Okla., and for other purposes."

*Ordered,* That the Secretary request the concurrence of the House of Representatives in the amendments.

The Senate proceeded to consider the following bills; and the reported amendments were agreed to:

S. 2551. A bill authorizing the Secretary of the Interior to issue a patent in fee to Mrs. Pearl Scott Loukes;

S. 1973. A bill for the relief of certain Basque aliens; and

S. 2861. A bill to assist by grants-in-aid the Republic of the Philippines in providing medical care and treatment for certain veterans.

*Ordered,* That the bills be engrossed and read a third time.

The said bills were severally read the third time.

*Resolved,* That they pass, and that the respective titles thereof be as aforesaid.

*Ordered,* That the Secretary request the concurrence of the House of Representatives therein.

The Senate proceeded to consider the bill (S. 2764) to amend the Trading With the Enemy Act; and having been amended on the motion of Mr. COOPER,

*Ordered,* That the bill be engrossed and read a third time.

The said bill was read the third time.

*Resolved,* That it pass, and that the title thereof be as aforesaid.

*Ordered,* That the Secretary request the concurrence of the House of Representatives therein.

The bill (S. 2080) to provide for the establishment of the Philadelphia National Historical Park, and for other purposes, having been reached,

The Senate proceeded, by unanimous consent, to consider the bill (H. R. 5053) to provide for the establishment of the Independence National Historical Park, and for other purposes; and no amendment being made,

*Ordered,* That it pass to a third reading.

The said bill was read the third time.

*Resolved,* That it pass.

*Ordered,* That the Secretary notify the House of Representatives thereof.

*Ordered,* by unanimous consent, That the bill S. 2080 be postponed indefinitely.

The Senate proceeded to consider the bill (S. 2698) to authorize the transfer of horses and equipment owned by the United States Army to the New Mexico Military Institute, a State institution; and the reported amendments having been agreed to,

*Ordered,* That the bill be engrossed and read a third time.

The said bill was read the third time.

*Resolved,* That it pass, and that the title thereof be amended, as reported by the committee, to read: "A bill to authorize the transfer of horses and equipment owned by the United States Army to the New Mexico Military Institute, a State institution, and for other purposes."

*Ordered,* That the Secretary request the concurrence of the House of Representatives therein.

The Senate proceeded to consider the bill (H. R. 4462) authorizing the conveyance of certain lands in Park County, Wyo., to the State of Wyoming; and no amendment being made,

*Ordered,* That it pass to a third reading.

The said bill was read the third time.

*Resolved,* That it pass.

*Ordered,* That the Secretary notify the House of Representatives thereof.

*Ordered,* by unanimous consent, That the bill (S. 1821) of an identical title be postponed indefinitely.

The bill (S. 2816) to direct the Secretary of Agriculture to convey certain land to the State of Oklahoma having been reached,

The Senate proceeded, by unanimous consent, to consider the bill (H. R. 5851) of an identical title; and no amendment being made,

*Ordered,* That it pass to a third reading.

The said bill was read the third time.

*Resolved,* That it pass.

*Ordered,* That the Secretary notify the House of Representatives thereof.

*Ordered,* by unanimous consent, That the bill S. 2816 be postponed indefinitely.

The Senate proceeded to consider the bill (S. 1301) for the relief of Alfonso Felice; and the reported amendments having been agreed to,

*Ordered,* That the bill be engrossed and read a third time.

The said bill was read the third time.

*Resolved,* That it pass, and that the title thereof be amended, as reported by the committee, to read: "A bill for the relief of Alfonso Felici."

*Ordered,* That the Secretary request the concurrence of the House of Representatives therein.

The Senate proceeded to consider the bill (H. R. 6295) to provide increased pensions for widows and children of de-